THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN, #160562
501 West Broadway, Suite 1490
San Diego, CA  92101
Telephone: (619) 501- 6550
andrewb@thebrownlawfirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUSSIF KAMAL, and GILLIAN NEELY, on their own behalf and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>EDEN CREAMERY, LLC, dba HALO TOP CREAMERY,<br><br>                              Defendant. | Case No. **'18CV1298 BAS AGS**<br><br>CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Plaintiffs identified below (collectively, "Plaintiffs"), individually, and on behalf of the Class defined below of similarly situated persons, file this Class Action Complaint. Plaintiffs file suit against Eden Creamery, LLC, dba Halo Top Creamery (hereinafter "Halo Top," the "Company" or "Defendant"). Plaintiffs bring this action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through undersigned counsel.

## I. NATURE OF THE ACTION

1. Halo Top underfills its "pints" of ice cream. Dramatically so at times, and as a course of business. Purchasers of the premium-priced ice cream simply have no idea how much ice cream they will get each and every time they buy a Halo Top "pint." And Halo Top has been doing this for years.

2. In spite of this practice, Halo Top has become the self-described "best-selling pint of ice cream in America." Halo Top has successfully marketed itself as a "guilt-free" ice cream with extremely low calories and containing other health benefits, such as protein. As one of the important selling points to consumers, the number of calories *per pint* is prominently displayed on the pint-container, generally 280 to 360 calories per pint.

3. As a result of its low-calorie content, claimed health benefits and clever social media marketing campaigns, Halo Top has developed a cult-like following among consumers over the past few years. According to media reports, by the end of 2017 Halo Top accounted for more than 5% of the ice cream market, selling more of its "pints" than Ben & Jerry's and Haagen-Dazs. And like these competitors, Halo Top charges a premium for its "pints" – as much as $6.99 each.

4. But because Halo Top routinely underfills its pint containers, Plaintiffs and the Class unknowingly paid for a full pint of Halo Top ice cream but did not receive a full pint of Halo Top ice cream. Halo Top knows it is short-changing its customers, but refuses to do anything about it. Defendant's misconduct continues to this day.

## II. THE PARTIES

5. Plaintiff Youssif Kamal is a California citizen and resides in Los Angeles, California. He has, from time-to-time and within the last three years, purchased pint containers of Halo Top ice cream and received less than a full pint of ice cream. Plaintiff Kamal intends to continue purchasing Halo Top ice cream pints in the future and wants to ensure every pint is a full pint.

CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

6. Plaintiff Gillian Neely is a California citizen and resides in San Diego, California. She has, from time-to-time and within the last three years, purchased pint containers of Halo Top ice cream and received less than a full pint of ice cream.

7. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have purchased pint containers of Halo Top ice cream and received less than a full pint of ice cream.

8. Defendant Eden Creamery LLC is a California limited liability corporation conducting business in California and throughout the United States as Halo Top Creamery (together, herein "Halo Top"). Defendant Eden Creamery LLC is the sole owner of Halo Top Creamery, and its principal business purpose is to operate as Halo Top Creamery. Eden Creamery is a corporation organized and existing under the laws of the State of California with its principal place of business and headquarters at 4470 West Sunset Blvd., Los Angeles, California.

9. Halo Top produces and sells low-calorie, protein-based, and low-sugar ice creams and retails related accessories. The company sells its ice cream pints through retail grocery stores and its online portal, www.halotop.com. It is engaged in continuous and significant business in the City and County of Los Angeles consisting of, among other things, retail operations, advertising, and marketing, activities.

### III. JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over the claims asserted herein on behalf of a nationwide class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act. Jurisdiction is proper because:

(a) The proposed class includes more than 100 members, and many of the class members are citizens of states that are diverse from the state of Defendant's citizenship, the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and,

(b) Defendant has purposefully availed itself of the privilege of conducting business activities within the State of California, where Halo Top is incorporated; has its principal place of business; where its officers direct, control, and coordinate Halo Top's activities, and where Halo Top engaged in the unlawful conduct alleged herein.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because a substantial part of the challenged conduct or omissions complained of herein occurred in this judicial district, and defendant caused harm to at least one of the named plaintiffs and numerous class members in this judicial district.

## IV.   SUBSTANTIVE ALLEGATIONS

12. Eden Creamery LLC doing business as Halo Top Creamery was founded in 2011 and produces, markets and sells ice cream in the U.S. and abroad. Halo Top's popularity (in part) comes from the fact that it has created various flavors of self-proclaimed "lifestyle" ice cream – ice cream that contains fewer calories than "full fat" ice cream, less sugar, and Halo Top adds protein to many of its flavors.

13. In the past few years Halo Top has grown extremely rapidly. According to Inc. magazine, the company took in "revenue of $49 million in 2016, up almost 21,000 percent over a three-year period." A related December 2017 Inc. magazine story estimates annual revenue for the Company at $100 million. And Halo Top now is also expanding internationally.

14. According to that same article, "Halo Top has found its way into every major grocery chain in the U.S., more than 19,000 stores nationwide. Since the start of this year (2017), the company has sold 50 million pints, making it the best-selling pint of ice cream in the U.S., surpassing long-time industry leaders like Haagen-Dazs and Ben & Jerry's."

15. Like those competitors, Halo Top also charges customers a premium price. According to a March 2017 article on AdAge.com Halo Top ice cream retails between $3.99 and $6.99 per pint, with an average price of $4.89.

16. Halo Top sells the vast majority of its ice cream to retail customers in an opaque pint container. That the container is a pint is prominently displayed on the container. Moreover, much of the company's marketing and advertising focuses on the pint itself:

- 4 -
CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION



17. For example, one of the main selling points of the ice cream is the low-calorie count. The carton label itself prominently displays that calorie count in a large font in the center of the carton, and measures those calories "per pint". Thus, on the front of virtually every pint container of ice cream the consumer is told the number of calories in the ice cream, as supposedly measured by that pint.

18. According to an August 2017 article in Food magazine, "[i]f you look at the nutrition label on each pint of Halo Top, the serving size is still the typical half-cup, but the brand plays up the 'go ahead and eat a whole pint' idea. Each pint's label lists its total calorie count in big, central type – bigger type than even is used for the flavor's name or the Halo Top logo.'"

19. Much of Halo Top's marketing to consumers also focuses on the "pint." For example, on the first page of the Company website www.halotop.com the Company offers a link to help the

1 consumer "find our pints" and contains links with pictures of the pint containers, encouraging the
2 consumer to "select your favorite pints." *See* www.halotop.com.  And in an August 2, 2017 Time
3 Magazine article, the Company's CEO Justin Woolverton stated, "Halo Top is something where people
4 can eat the whole pint, or a lot more than a quarter of a cup of ice cream.  It can fit into their diet
5 without breaking the calorie bank."

6       20. Halo Top pursues an aggressive social media marketing campaign on sites like
7 Facebook, Instagram and Twitter.  These marketing efforts also focus on the Halo Top pint.  According
8 to an August 2017 article in Fortune, "Halo Top's advertising leans heavily on the idea that consumers
9 can eat an entire pint without feeling guilty (its lids are emblazoned with the command to 'stop when
10 you get to the bottom.')."

11       21. The retail ice cream pint container used by Halo Top itself has become an easily
12 recognizable standard measure of ice cream for consumers.  Halo Top's tapered cylinder pint containers
13 are virtually identical is shape and size to those of its main competitors, including Haagen-Dazs and
14 Ben & Jerry's.  Consumers readily understand these containers to hold a pint of ice cream.

15       22. And what constitutes a "pint" is not up for debate.  It is a standardized measurement of
16 volume in the United States, and is commonly understood as such by consumers.

17       23. According to the United States Department of Commerce's National Institute of
18 Standards and Technology, a pint is a U.S. Customary Unit of Measurement.  It is a unit of Liquid
19 Volume equal to 28.875 cubic inches.  Four gills equal a pint, and two pints equal a quart.  Eight pints
20 equal a gallon, or 231 cubic inches by volume.

21       24. Moreover, it is the primary measure of volume for retail sales of ice cream.  Halo Top
22 and its competitors Ben & Jerry's and Haagen-Dazs (and others) all sell ice cream in the recognizable
23 pint container, and monitor their sales on that basis.  This allows consumers to compare by price, calorie
24 content, fat content, and other metrics when selecting an ice cream.

25       25. But just as consumers expect to be paying the advertised price for a full gallon of
26 gasoline, so too they expect to be paying the advertised price for a full pint of ice cream.  But when
27 purchasing a pint of Halo Top ice cream, consumers frequently do not get a full pint.

28

26. Instead, although Halo Top markets and sells its ice cream in pints, it does not actually deliver a pint of ice cream to its customers. Its containers are routinely underfilled, delivering less than a pint and oftentimes dramatically so. The amount of underfilling appears to be random to consumers, it can vary in amount of underfilling and appears to be unrelated to flavor of ice cream or the location of purchase. In short, it is difficult (if not impossible) for any consumer to know – until after purchase and upon opening the container – whether or not they will receive a full pint.

27. Halo Top's underfilling of its pint containers is known to the Company, and has been ongoing for years. Indeed, demonstrating the Company's awareness, Halo Top has created a "low fill form response" form on its website specifically for consumers to report underfilled pint containers to Halo Top. *See, e.g.*, https://halotopcreamery.formstack.com/forms/product_issue_response. Yet it has not changed its practices, and still knowingly sells huge amounts of underfilled pints to this very day.

28. As consumers of Halo Top ice cream, each of the plaintiffs named herein has purchased several pints of Halo Top ice cream in the last three years, and during the class period. And for the retail price paid, each of them has received, to varying degrees and in different amounts, underfilled Halo Top pints. Had they known their pints were underfilled at the time of purchase, they would not have paid as much to purchase them, or would not have purchased them at all.

## V.   CLASS ACTION ALLEGATIONS

29. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and(b)(3), Plaintiffs bring this class action on their own behalf and as representatives of the class.

30. Plaintiffs seek certification of a class defined as:

> All persons who purchased one or more pint-containers of Halo Top ice cream and who received less than a full pint in any of the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and possessions.

31. Alternatively, Plaintiffs allege a multi-state Class or single state Classes defined as:

> All persons who purchased one or more pint-containers of Halo Top ice cream and who received less than a full pint in California, and other states with similar laws.

32. Excluded from the above Class(es) are: (a) Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and

1  assigns of Defendant, and any members of their immediate families; (b) Plaintiffs' counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and, (d) persons or entities who or which timely and properly exclude themselves from the Class. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

33. The Class likely consists of hundreds of thousands, if not millions of people. According to published reports, Halo Top sold more than 50 million pints in 2017. Due to the small amount of damages on an individual basis, the geographic dispersity of class members, and the large number of class members, it is impracticable to bring all class members before the Court.

34. The claims of the class representatives are typical of the claims of the members of the class because the class representatives and all other members of the class were damaged by the same wrongful conduct committed by Defendant – delivering to consumers underfilled pints of ice cream. Plaintiffs advance the same legal theories and claims on behalf of themselves and all other Class members, and no defense is available to Defendant that is unique to any Plaintiff.

35. Plaintiffs and their counsel will fairly and adequately protect the interests of the class. The interests of the class representatives are coincident with, and not antagonistic to, the interests of the other members of the class.

36. The class representatives have retained counsel competent and experienced in the prosecution of class action litigation such as this.

37. Questions of law and fact common to the members of the class are central here and predominate over questions that may affect only individual members. Among the questions of law and fact common to the class are:

   (a) Whether Halo Top sells underfilled pints of ice cream to consumers;

   (b) Whether Halo Top violated California Business & Professions Code §17200 by engaging in an "unlawful" business practice as alleged herein;

   (c) Whether Halo Top violated California Business & Professions Code §17200 by engaging in a "unfair" business practice as alleged herein;

(d) Whether Halo Top violated California Business & Professions Code §17200 by engaging in a "fraudulent" business practice as alleged herein;

(e) Whether Halo Top violated California Business & Professions Code §17500, *et seq.*, through false and misleading advertising regarding the contents of its ice cream pints; and

(f) Whether Halo Top's conduct violated the other provisions of statutory and common law outlined in this complaint.

38. Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

39. The State of California has a special interest in regulating the affairs of corporations established under California law, that do business here, as well as persons who live here. Defendant is incorporated in California and based in Los Angeles, California. Defendant designed and implemented the unlawful and deceptive conduct described in this Complaint from their headquarters in California. Additionally, Defendant likely has more Halo Top consumers in California than in any other state. Accordingly, there is a substantial nexus between Defendant's unlawful behavior and California such that the California courts should take cognizance of this action on behalf of a class of individuals who reside in California and the United States.

### FIRST CAUSE OF ACTION
**Unlawful, Fraudulent, and Unfair Business Practices  
in Violation of California's Unfair Competition Law**

40. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

41. By committing the acts and practices alleged herein, Halo Top has engaged in unlawful, fraudulent, and unfair business practices in violation of the UCL:

(a) Unlawful Conduct: As a result of engaging in the conduct alleged in this Complaint, Halo Top has violated the UCL's proscription against engaging in unlawful conduct by virtue of: (i) its fraudulent and deceitful conduct in violation of California Civil Code §§1709 through 1711; (ii) its violations of the Consumers Legal Remedies Act, California Civil Code §§1770(a)(5),

(a)(7), and (a)(9); and (iii) its engagement in false advertising and marketing in violation of California Business and Professions Code §17500 *et seq.*;

   (b) Fraudulent Conduct: Halo Top has violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct alleged herein throughout this Complaint; and

   (c) Unfair Conduct: Halo Top has violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged in this Complaint, which violates legislatively-declared policies articulated in, inter alia, California Civil Code §§1710, 1711, and 1770(a)(5), (a)(7), and (a)(9).

42. Halo Top's violations of the UCL continue to this day. As a direct and proximate result of Halo Top's violations of the UCL, Plaintiffs have suffered actual damage in that, inter alia, they paid more for their ice creams than they would have paid if Halo Top had not concealed the true volume of its ice cream, or they would not have purchased the ice cream at all.

43. Pursuant to §17203 of the UCL, Plaintiffs and the class seek an order that requires Halo Top: (a) to stop underfilling its pint containers of ice creams or, in the alternative, to stop selling underfilled pints, and immediately remove any such underfilled pints from store shelves; (b) to properly label the amounts contained in its ice cream containers; (c) to reimburse purchasers of ice creams with the purchase price they paid for those pints that Halo Top failed to disclose were defective and underfilled; (d) to make full restitution of all moneys wrongfully obtained from its violations of the UCL, as alleged in this Complaint; and (f) requires Halo Top to pay the attorney fees and costs incurred by counsel for Plaintiffs and the proposed class in accordance with California Code of Civil Procedure §1021.5.

## SECOND CAUSE OF ACTION
### Unfair and Deceptive Acts and Practices in Violation of California's Consumers Legal Remedies Act

44. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

45. This claim for relief is brought pursuant to the CLRA. Plaintiffs and members of the class are "consumers," as that term is defined by California Civil Code §1761(d) because they bought ice cream for personal, family, or household purposes.

46. Defendant is a "person" under California Civil Code §1761(c).

47. Plaintiffs and Class Members have engaged in a "transaction" with Halo Top, as that term is defined by California Civil Code §1761(e), by purchasing Halo Top ice cream.

48. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and was undertaken by Halo Top in transactions intended to result in, and which resulted in, the sale of goods to consumers; namely, to sell pints of ice cream.

49. By engaging in the conduct described herein, Halo Top has violated California Civil Code §1770(a)(5), (a)(7), and (a)(9) by, *inter alia*, misrepresenting and concealing the true nature, contents and volume of its pints of ice cream.

50. By concealing the true volumes to Plaintiffs and members of the proposed class, Halo Top has represented, and continues to represent, that ice creams have characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular standard, quality, or amount, when they are not, in violation of California Civil Code §1770(a)(5) and (a)(7).

51. By engaging in the conduct alleged herein, above, Halo Top has also advertised, and continues to advertise, goods with the intent not to sell them as advertised, in violation of California Civil Code §1770(a)(9).

52. Pursuant to §1782 of the CLRA, Plaintiffs have sent written notice to Halo Top by certified mail regarding its violations of the CLRA, thereby providing Halo Top with an opportunity to correct or otherwise rectify the problems alleged herein within 30 days of receipt of that notice.

53. Unless Halo Top agrees to correct, replace, or otherwise rectify the problems created by Halo Top's conduct as alleged herein, Plaintiffs will seek an order awarding actual damages and, because Halo Top engaged in the conduct alleged herein deliberately and with willful and malicious intent, punitive damages.

54. Under this cause of action, Plaintiff now seeks an order requiring Halo Top to: (a) cease violating the CLRA by ensuring that each and every pint of ice cream is in fact a true pint by volume at the point of purchase, or (b) ensure that if a pint is not a full pint by volume at the point of purchase, the true volume measure is prominently displayed on the outside of the carton; (c) remove all underfilled and/or improperly labelled pints of ice cream from store shelves across the country; (d) initiate a corrective advertising campaign to re-educate consumers concerning the true contents of its ice cream pints; and (e) awarding plaintiffs and the class their attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### Breach of Implied Contract

55. Plaintiffs incorporate the substantive allegations contained in each and every paragraph of this Complaint.

56. Defendant solicited and invited Plaintiffs and the members of the Class to buy pints of ice cream. Plaintiffs and Class Members accepted Defendant's offers and bought ice cream pints from Defendant.

57. When Plaintiffs and Class Members bought ice cream from Defendant, they paid for a pint of ice cream. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant to which Defendants agreed to provide defect-free pints of ice cream.

58. Plaintiffs and Class Members would not have bought ice cream from Defendants in the absence of the implied contract between them and Defendant, and would not have paid the prices they did pay.

59. Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

60. Defendant breached the implied contracts it made with Plaintiffs and Class Members by purposefully selling them less than a pint of ice cream, and by failing to properly disclose that at the time of that the parties entered into an agreement.

61. As a direct and proximate result of Defendants' breaches of the implied contracts between Defendant and Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in this Complaint as follows:

A.     For an order certifying that the action may be maintained as a class action, on behalf of the proposed class and any other subclass(es) the Court may deem appropriate and appointing Plaintiffs as class representatives and their counsel as class counsel;

B.     Finding that Defendant engaged in the unlawful conduct as alleged herein;

C.     Awarding Plaintiffs and the other class members injunctive relief;

D.     For an award of monetary damages, including but not limited to, compensatory, incidental and consequential damages commensurate with proof at trial for the acts complained of herein;

E.     For an award of punitive damages in an amount consistent with applicable statutes and precedent for those causes of action that permit such recovery;

F.     For an order awarding attorney fees and costs;

G.     For equitable relief requiring restitution to plaintiffs and the class and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

H.     For an award of pre- and post-judgment interest on any amounts awarded; and

I.     For any and all other relief the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Based on the foregoing, Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

DATED:  June 15, 2018                              LAW OFFICES OF ANDREW J. BROWN

*s/ Andrew J. Brown*
ANDREW J. BROWN

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel:  (619) 501-6650
andrewb@thebrownlawfirm.com

Attorney for Plaintiffs