THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN, #160562
501 West Broadway, Suite 1490
San Diego, CA  92101
Telephone: (619) 501- 6550
andrewb@thebrownlawfirm.com

*Attorneys for Plaintiffs Individually*
*and on Behalf All Others Similarly Situated*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUSSIF KAMAL, GILLIAN NEELY, RICHARD LICHTEN, SUSAN COX, NICK TOVAR, MICHELE KINMAN, RALPH JACOBSON, ASHLEY PETEFISH and TERI BROWN, on their own behalf and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>EDEN CREAMERY, LLC, dba HALO TOP CREAMERY, and JUSTIN T. WOOLVERTON,<br><br>　　　　　　Defendants. | Case No.  18-cv-1298 BAS AGS<br><br>Assigned to the Hon. Cynthia Bashant<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>Date:  December 17, 2018<br>Dept:  4B<br><br>Orig. Complaint Filed:  June 15, 2018<br>Trial Date:  None Set |

1

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 3

III. ARGUMENT ............................................................................................ 5

   A.  Halo Top is Subject to General Jurisdiction in This State for Its
       Conduct Nationwide .......................................................................... 5

   B.  Plaintiffs' Claims Are Not Preempted ............................................... 6

   C.  Named Plaintiffs Have Standing to Assert All Claims on Behalf
       of A Nationwide Class, or a Multi-State Class.................................. 8

       1.  Plaintiffs Have Standing for "Unpurchased Products" ............... 9

       2.  Plaintiffs Injury Is "Traceable" to Defendants........................ 10

   D.  Plaintiffs Properly Alleged Their State Law Claims....................... 11

       1.  Plaintiffs Allege "With Particularity the Circumstances
           Constituting the Fraud" in Satisfaction of Rule 9(b) ............. 11

       2.  Defendants Cannot Blame Unknown and Unidentified
           Third-Parties for Their Deceit................................................ 12

       3.  Plaintiffs' Reliance Is Well-Pled ............................................ 14

   E.  Plaintiffs' UCL and CLRA Claims Are Well-Pled .................... 16

       1.  Defendants Are Liable for Their Own Conduct ................. 16

       2.  The CLRA and UCL Fraud-Based Claims Are Well-Pled.............. 17

       3.  The Claims for Violation of the UCL "Unlawful" and "Unfair"
           Prongs Are Well-Pled ........................................................ 18

   F.  Defendants' Cannot Re-Cast Plaintiffs' Fraud, UCL and CLRA Claims as
       a "Breach of Warranty" Claim, or Rely on the "Economic Loss Rule"....19

   G.  Woolverton Is Liable for Torts Committed by Him, and by Halo Top
       at His Direction.............................................................................. 21

   H.  The Non-California State Law Causes of Action Are Well-Pled .............24

   I.  Leave to Amend .............................................................................. 25

IV.  CONCLUSION ...................................................................................... 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Alce v. Wise Foods, Inc.*,
   17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009
   (S.D.N.Y. Mar. 28, 2018) ...............................................................7

*Alvarez v. NBTY, Inc.*,
   Case No. 17-cv-00567-BAS-BGS, 2017 U.S. Dist. LEXIS 201159
   (S.D. Cal. Dec. 6, 2017)............................................9, 10, 18, 21, 24

*Anderson v. Jamba Juice Co.*,
   Case No. 12-CV-01213 YGR, 2012 U.S. Dist. LEXIS 120723
   (N.D. Cal. Aug. 25, 2012) ........................................................9, 10

*Ass'n for L.A. Deputy Sheriffs v. County of L.A.*,
   648 F.3d 986 (9th Cir. 2011) ........................................................5

*Astiana v. Dryer's Grand Ice Cream, Inc.*,
   No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371
   (N.D. Cal. July 20, 2012)...............................................................9

*Barnum Timber Co. v. U.S. EPA*,
   633 F.3d 894 (9th Cir. 2011) .......................................................10

*Bennett v. Forbes*,
   Case No. 17cv464-MMA(KSC), 2017 U.S. Dist. LEXIS 169149
   (S.D. Cal. Oct. 12, 2017) ...........................................................21

*Brazil v. Dole Packaged Foods, LLC*,
   Case No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234
   (N.D. Cal. May 30, 2014).............................................................13

*Bristol-Myers Squibb Co. V. Superior Court*,
   137 S. Ct. 1773 (2017) .................................................................5

*Brown v. Hain Celestial Group, Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012)...........................................9

*Cadlo v. Owens-Illinois, Inc.*,
        125 Cal. App. 4th 513 (2004) ..................................................... 15

*Camacho v. Automobile Club of Southern Cal.*,
        142 Cal. App. 4th 1394 (2006) ............................................. 18, 19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
        20 Cal. 4th 163 (1999) ............................................................. 18

*Childers v. Sagem Morpho, Inc.*,
        Case No. C06-0060RSM, 2006 U.S. Dist. Lexis 88425
        (W.D. Wash. Dec. 6, 2006) ....................................................... 20

*Consumerinfo.com, Inc. v. Chang*,
        No. CV 09-3783, 2009 WL 10673337 (C.D. Cal. Dec. 31, 2009) .............. 24

*Comm. for Idaho's High Desert, Inc. v. Yost*,
        92 F.3d 814 (9th Cir. 1996) ..................................................... 22

*Cousins v. Lockyer*,
        568 F.3d 1063 (9th Cir. 2009) .................................................... 5

*Daimler AG v. Bauman*,
        571 U.S. 117 (2014) ................................................................ 5

*Davis v. HSBC Bank*,
        691 F.3d 1152 (9th Cir. 2012) ................................................... 16

*Donohue v. Apple, Inc.*,
        871 F. Supp. 2d 913 (N.D. Cal. 2012) ......................................... 18

*Dufour v. Be LLC*,
        No. C 09-03770 CRB, 2010 U.S. Dist. LEXIS 62518
        (N.D. Cal. June 22, 2010) ........................................................ 23

*Durnford v. MusclePharm Corp.*,
        No. 16-15374, 2018 U.S. App. LEXIS 28771
        (October 12, 2018 9th Cir.) .................................................... 6, 21

*Eminence Capital, LLC v. Aspeon, Inc.*,
        316 F.3d 1048 (9th Cir. 2003) ................................................... 25

iii

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) .................................................... 6, 18, 21

*Hunter v. Citibank*,
    No. C 09-02079 JW, 2011 U.S. Dist. LEXIS 154102
    (N.D. Cal. May 5, 2011) ........................................................................ 23, 24

*In re Gupta Corp. Sec Litig.*,
    900 F. Supp. 1217 (N.D. Cal. 1994) ......................................................... 5, 12

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................................... 16

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................... 10, 11, 15

*Ivie v. Kraft Foods Global, Inc.*,
    Case No. C-12-02554-RMW, 2013 U.S. LEXIS 25615
    (N.D. Cal. Feb. 25, 2013) ........................................................................ 7, 10

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ..................................................................... 19

*Knox v. Ameriquest Mortg. Co.*,
    No. C-05-00240 SC, 2005 U.S. Dist. Lexis 40709
    (N.D. Cal. Aug. 10, 2005) ............................................................................ 20

*Kwikset Corp v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................... 2

*McDougal v. County of Imperial*,
    942 F.2d 668 (9th Cir. 1991) .......................................................................... 5

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ........................................................ 16

*Morgan v. Wallaby Yogurt Co., Inc.*,
    Case No. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548
    (N.D. Cal. Mar. 13, 2014) ............................................. 10, 15, 18, 21

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 171813
   (N.D. Cal. Dec. 5, 2013)................................................................23

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ...............................................2, 6, 21

*Resnick v. Hyundai Motor Am., Inc.*,
   CV 16-00593-BRO (PJWg), 2017 U.S. Dist. LEXIS 67525
   (C.D. Cal. Apr. 13, 2017) ........................................................20

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) .......................................................19, 21

*Rodriguez v. SGLC, Inc.*,
   No. 2:08-cv-01971-MCE-KJN, 2012 U.S. Dist. LEXIS 163723,
   (E.D. Cal. Nov. 15, 2012) ........................................................23

*Standard Furniture Mfg. Co. v. LF Products PTE. LTD.*,
   Case No.: SAVC 16-002097-CJC(Kesx), 2017 U.S. Dist. LEXIS 222180
   (C.D. Cal. Aug. 30, 2017)........................................................14

*Stransky v. Cummins Engine Co.*,
   51 F.3d 1329 (7th Cir. 1995) .....................................................13

*Swearingen v. Santa Cruz Natural, Inc.*,
   Case No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432
   (N.D. Cal. Aug. 17, 2016) ........................................................20

*Takano v. P&G*,
   No. 2:17-cv-00385-TLN-AC, 2018 U.S. Dist. LEXIS 182777
   (E.D. Cal. Oct. 23, 2018) ....................................................19, 21

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234 (9th Cir. 2012) .....................................................24

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
   1 Cal. 3d 586 (1970) ..............................................................22

*Valles v. Ivy Hill Corp.*,
   410 F.3d 1071 (9th Cir. 2004) ....................................................20

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...........................................5, 11, 12

*Victor v. R.C. Bigelow, Inc.*,
   Case No. 13-c-02976-WHO, 2014 U.S. Dist. LEXIS 34550
   (N.D. Cal. Mar. 14, 2014) ...........................................................18

*Washington v. Baenziger*,
   673 F. Supp. 1478 (N.D. Cal. 1987) ...........................................5

*Williams v. Gerber Products Co.*,
   522 F.3d 934 (9th Cir. 2008) ....................................................16

**Federal Statutes, Rules & Regulations**                    **Page**

21 C.F.R. § 100.100 ......................................................................6

Fed. R. Civ. Proc. 9(b) .................................................................2

21 U.S.C. §301 *et seq.* ............................................................. 18

21 U.S.C. §343(3) .......................................................................2

**California Statutes**                                      **Page**

Cal. Civ. Code §1770(a)(5)..........................................................17

Cal. Civ. Code §1770(a)(7)..........................................................17

Cal. Civ. Code §1770(a)(9)..........................................................17

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, by and through their counsel, hereby oppose Defendants Eden Creamery, LLC dba Halo Top Creamery's ("Halo Top" or the "Company") and Justin T. Woolverton's ("Woolverton") (collectively "Defendants") Motion to Dismiss.

## I.   INTRODUCTION

Defendants are scamming consumers.  They advertise, market and sell Halo Top ice cream by the pint, but do not deliver to consumers a pint of ice cream.  Halo Top's pints are underfilled, sometimes ***by more than half***.  Depending on whom you ask, Halo Top underfills "most" of its pints (Plaintiff Kamal, ¶50), or "more than 50% of the time" (Plaintiff Jacobson, ¶60)[1]. And Defendants admit it frequently happens with entire "batches" or "shipments" of ice cream. ¶¶58, 72, 76.  It is no surprise to Defendants that consumers have experiences like Plaintiff Cox in August 2017, when she purchased 4 pints at once and three of them were underfilled.  ¶¶ 73 – 75.  They even created a special form called the "Low Fill Form Response" for consumers who complain.  ¶54.  Defendants have been cheating consumers like this for years.

When consumers complained, Defendants provided a boilerplate response designed to continue the fraud and encourage consumers to keep buying Halo Top.  In order to keep the scam going, Defendants lied to Plaintiffs about the cause of the underfilling, promised that finding a solution was their "number one priority" that they were "actively working" on, and offered a coupon.  But like the "pint" containers themselves, these reassurances were demonstrably and knowingly false.

Ignoring all of this, Defendants move to dismiss this case by repeating their false statements as if they are the truth, and otherwise ignoring the allegations.  For example, several of Defendants' arguments rely specifically on the claim – without any citation to the record – that their ice cream pints "are full at the time of manufacture."  Defs' Mem. at 1.  But the FAC's factual allegations contradict this bald assertion.  The pint

---

[1] All "¶" citations are references to paragraphs of the "First Amended Class Action Complaint For Damages, Injunctive Relief and Restitution" filed on September 6, 2018 (Dkt. No. 8) (hereinafter the "FAC").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

containers are closed and sealed.  ¶16.  Consumers do not receive a pint of ice cream at the point of purchase because "Halo Top routinely underfills its pint containers." ¶¶3, 4.  And although Defendants blame unnamed and unknown third parties, that vague assertion is simply a deceit created by Defendants and repeated to consumers in order to support their scheme.  They adopt it now as truth in their Motion to Dismiss. It is a myth and it is flatly contradicted by the allegations in the FAC.

Defendants' legal arguments fare no better.  Plaintiffs' state law claims are not expressly preempted by any federal statute.  In fact, the FDCA itself states that a product is "misbranded" if the label does not bear "an accurate statement of the quantity of the contents. . . ."  21 U.S.C. §343(3).  That is what Plaintiffs allege here, rendering Plaintiffs' state law claims entirely ***consistent with***, and therefore not preempted by, the FDCA.  *Reid v. Johnson & Johnson* 780 F.3d 952, 959 (9th Cir. 2015).

Defendants also contend the allegations in the FAC do not satisfy Fed. R. Civ. Proc. 9(b) or establish "fraudulent" conduct" under the UCL or CLRA.  This argument simply ignores the Complaint.  Plaintiffs alleged Defendants engaged in an intentional, knowing series of false statements, omissions, and deceitful conduct that Plaintiffs and the Class relied upon to their detriment.  That is fraud, and the allegations are substantial, specific and compelling. Nothing more is required at this stage.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)

Nor does Defendant Woolverton get a free pass for ***his conduct*** just because Plaintiffs can also sue the Company.  Contrary to Defendants' spin, Plaintiffs are not seeking to hold him liable "vicariously," or for the misconduct of others.  Halo Top is his company – founded, owned and run by him.  Nobody tells him what to do.  He developed, implemented and approved the Company's production, labels, marketing, and statements to consumers.  He is liable for his role in the fraudulent scheme.

Apparently hoping something – ***anything*** – sticks, Defendants raise numerous other arguments but spend little time on any of them.  They will be addressed in kind,

but they are all meritless.  Defendants' meandering "everything but the kitchen sink" motion should be denied in its entirety.[2]

## II.   STATEMENT OF FACTS

Halo Top is a California limited liability corporation.  Halo Top's headquarters and principal place of business is in Los Angeles, California.   ¶¶18 – 19.  Woolverton started Halo Top in 2011 or 2012 while he was working as an attorney at Latham & Watkins in Los Angeles.  Woolverton is the founder, CEO and owner of Halo Top.  He grew the company without requiring Wall Street financing, so he "doesn't have suits telling hm what to do."  He maintains authority over the entire company and personally oversees its production, labeling, marketing, and distribution.   He is "intimately involved in the day-to-day operations" of the Company. He has authority over and controls the Company's communications with consumers and he personally creates and implements Company marketing strategies.   He also reviewed and approved those boilerplate emails to Plaintiffs to keep the scheme going.  See, ¶¶21 – 26.

Defendants market and sell Halo Top ice cream nationwide.  The Halo Top label, website, advertising and marketing all promise to deliver to the consumer a pint of ice cream at the point of purchase.  ¶¶33 – 39.  The Halo Top container itself is recognized by consumers as the ubiquitous ice cream pint container.  ¶¶38, 40 – 42.  But contrary to its labels, its containers, its website, and its advertising and marketing campaigns, more often than not Defendants do not provide consumers with a full pint of ice cream.

At the point of purchase, there simply is no way for a consumer to know whether or not he or she is purchasing a full pint. ¶¶33, 44.   The containers are closed and sealed.  ¶¶16,  98. The labels say they are a pint, consumers recognize the containers as a pint, Defendants advertise them as a pint, and Defendants know consumers are expecting and paying for a full pint.   Over a period of years, one Plaintiff who

---

[2] Defendants pollute their brief with more than 100 different cases, plus statutes and regulations.  Plaintiffs will not endeavor to address them all – most are unpublished and many are irrelevant or duplicative – but Plaintiffs will address the relevant ones.

1  frequently purchases Halo Top received an underfilled pint "most of the [time]."  ¶50.

2  Another estimates his pints were underfilled "more than 50% of the time." ¶60.

3         If a consumer complains to Halo Top that he or she did not receive a full pint,

4  Halo Top provides that consumer with a misleading response, approved by Woolverton

5  and designed to encourage the consumer to continue purchasing Halo Top ice cream.

6  See, e.g. ¶¶53, 57, 62, 67, 79. Halo Top's "explanation" speculates that the shortage

7  was caused by unknown "third parties" in the shipping process, who must have allowed

8  the ice cream to "slightly thaw" and refreeze.  In addition, the Company promises the

9  consumer that Halo Top is "actively working" to make sure the "issue" does not recur

10 in the future. *Id.*  Halo Top then offers the complaining consumer a coupon for another

11 pint, if the consumer is willing to jump through certain hoops by filling out a "Low Fill

12 Form Response" and providing various pictures of the underfilled pint(s)[3].  See, e.g.

13 ¶¶54, 62, 68, 80.

14        Defendants' "explanation" is a lie.  Defendants are responsible for underfilling

15 their pints.  See, e.g. ¶¶3, 88, 100.  In truth, Halo Top did not investigate why any

16 consumer's pint was underfilled and Defendants were doing nothing to remedy the

17 problem of underfilled pints. ¶¶101 – 108.  Instead, Defendants freely admit that

18 ***Defendants know there are entire shipments of underfilled pints on store shelves***.

19 ¶72 ("Unfortunately, given the nature of the reason behind why this happens, if one

20 pint was affected, it's very likely that the entire batch or shipment was affected as

21 well."); ¶76 ("Looks like this was a case of 'if one pint was affected it's more than

22 likely the rest of the batch was affected too.'").  Defendants have known for years that

23 consumers are purchasing entire batches and shipments of Halo Top ice cream pints

24 that are underfilled. ¶¶101 – 108.

25

26

---

27 [3] Even after jumping through those hoops, the coupons Halo Top offers do not always
   work.  See, ¶80 (link to the coupon did not work); ¶71 (store would not accept the

28 coupon).

## III.   ARGUMENT

A Rule 12(b)(6) motion is "viewed with disfavor." *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991). The Court accepts all allegations in the FAC as true, considers them as a whole, and draws all reasonable inferences in Plaintiffs' favor. *Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). The FAC need not "contain detailed factual allegations," but only "enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).

For claims that sound in fraud, under Rule 9(b) the fraud allegations must "be specific enough to give defendants notice of the particular misconduct . . ." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Knowledge and state of mind "may be alleged generally." Fed. R. Civ. P. 9(b). As to facts exclusively within Defendants' knowledge, Rule 9(b) standards are "relaxed" prior to discovery. *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994)). Similarly, for fraudulent omission claims, Rule 9(b) is relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).

### A. Halo Top Is Subject to General Jurisdiction in This State for Its Conduct Nationwide

Halo Top is incorporated in, and its principal place of business is in, California. ¶¶18 – 19.   "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).   Halo Top meets both tests in California, and defendants do not contend otherwise.   As a result, everyone in the country can sue Halo Top in California.   "A court with general jurisdiction may hear ***any*** claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

## B. Plaintiffs' Claims Are Not Preempted

The FDCA, as amended by the NLEA preempts only those state laws that are **expressly** preempted by the statute. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("The NLEA also provides, however, that it does not preempt any state law unless the law is 'expressly preempted.'"). The FDCA "does not preempt state law-based causes of action that are identical to the federal labeling requirements." *Id*. Moreover, there is a presumption **against** preemption if the FDCA is used to "displace state law in an area of traditional state police power, and consumer protection is such an area of traditional state police power." *Durnford v. MusclePharm Corp*., No. 16-15374, 2018 U.S. App. LEXIS 28771, *12 (October 12, 2018 9th Cir.).

Defendants do not specifically say how plaintiffs' claims are expressly preempted, thereby failing to meet **their** burden of demonstrating express preemption. There is no preemption of plaintiffs' state law claims here, because Plaintiffs are not seeking to enforce a label requirement that conflicts with the FDCA. To the contrary, Plaintiffs theory of liability is exactly consistent with the FDCA. See, e.g. 21 C.F.R. § 100.100 (a "container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill."); 21 U.S.C. §343(3) (a product is "misbranded" if it does not bear "an accurate statement of the quantity of the contents…"). And it is well-settled that "state-law claim(s) relying on a standard consistent with the FDCA standard may not be preempted." *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014).[4]

In an effort to hide behind preemption case law, Defendants misconstrue the allegations. The container size and volume measurement on the label (a pint) was

---

[4] Defendants assert without authority that "a mass-produced product sold nationwide cannot plausibly be randomly *underfilled*." Defs' Mem. at 5, n.3. **First**, this misstates the allegation that the underfilling "appears to be random" to consumers. ¶44. **Second**, it is patently false. See, e.g. *Hendricks v. StarKist Co*., 30 F. Supp. 3d at 922 – 923 ("testing revealed StarKist's 5-ounce cans were 'cheating' purchasers by providing anywhere from 1.1% to 17.3% less tuna, on average, depending upon the variety of canned tuna, than purchasers were paying for . . ..").

chosen by Defendants, not the FDA.   The contents within the container are also exclusively controlled by Defendants.   But they are not the same, thus rendering Defendants' containers, labels, marketing and advertising false and misleading.   In order to remedy the underfilling, the ***label*** does not have to change at all.   See, *Id*. at 928 ("Plaintiff's claims are not expressly preempted since they do not seek to impose requirements different from or additional to FDA regulations.")

Defendants contend Plaintiffs rely on "conclusory" allegations that the underfilled pints constitute "non-functional slack-fill."   Defs' Mem at 6 – 8.   This simply ignores the FAC.   ***First***, there are specific, detailed descriptions of the underfilled pints including numerous photos.   ¶¶48 – 87.   ***Second***, Plaintiffs allege Halo Top Defendants – not a third party – knowingly underfill their pints. See, e.g. ¶¶3 – 4, 44 – 45, 102 ("In truth, Defendants know they are underfilling their pints but have no intention of changing their business practices.").   And ***Third***, Plaintiffs specifically allege the so-called "slack-fill" is ***non-functional*** slack-fill, Defendants know it, and they lied about it to consumers.   See, e.g. ¶¶88 – 108.   There is nothing "conclusory" here. See, *Ivie v. Kraft Foods Global, Inc.*, Case No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, *34 (N.D. Cal. Feb. 25, 2013) (The allegation "Defendants routinely employed slack filled packaging to mislead consumers" and "lacked any lawful justification for doing so" sufficiently alleges non-functional slack-fill).[5]

Nor may Defendants hide behind the excuse of "reasonable variations."   Defs' Mem at 8 – 9.   While the frequency and amount of underfilling may vary, it is nevertheless frequent and dramatic – well beyond a reasonable consumer's

---

[5] Defendants' contention that Plaintiffs do not allege "Eden Creamery could 'increase the level of fill' of its products when they are manufactured" is pure fantasy. Defs' Mem. at 7 – 8. ***As Plaintiffs allege and Defendants concede, sometimes they do give the consumer a full pint.*** See, e.g. ¶¶90, 92 ("Like its competitors, Halo Top clearly has machines that can deliver a full pint container, as it has successfully done so with many of its pints."). Defendants' single unpublished New York case *Alce v. Wise Foods, Inc*., 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 (S.D.N.Y.Mar. 28, 2018) is distinguishable, as the allegations in this case far exceed what the plaintiffs alleged there.  See, *Id*. at *18 – 19.

1  understanding of what is "reasonable" and contrary to what Defendants' competitors'

2  experience.[6]

3      The photos are stunning, and the experiences of the Plaintiffs are no less

4  shocking.  See, ¶59 (Lichten purchased 2 pints and they were both approximately ½

5  full); ¶70 (Cox purchased 10 pints and every pint was at most ½ full); ¶83 (Brown

6  purchased a pint that was less than ½ full).  And it happens all the time. See, ¶50 ("most

7  of the pints he has ever bought appeared at least a little bit short"); ¶51 ("stopped buying

8  it because she was repeatedly disappointed with the underfilled pints."); ¶60 ("received

9  underfilled pints, in varying amounts, more than 50% of the time.").  A half pint of ice

10  cream is not a "reasonable" variation of a pint, any more than a half gallon of gasoline

11  is a reasonable variation of a gallon.  ¶43. And it cannot be said as a matter of law that

12  *dramatically underfilling entire shipments* is "reasonable".  ¶72.

13  **C. Named Plaintiffs Have Standing to Assert All Claims on Behalf of a Nationwide Class, or a Multi-State Class**

14  

15      Named Plaintiffs have purchased Halo Top ice cream in seven different states,

16  and various geographic regions including the West Coast, the Midwest, the Southwest,

17  and the East Coast.  Plaintiffs purchased these products over the course of almost 3

18  years in different climates, altitudes, and during different seasons.  Without regard to

19  any of these variants, they have received underfilled pints in more than 13 different

20  Halo Top ice cream flavors.  According to one Named Plaintiff (Kamal), "[r]egardless

21  of the flavor or location of purchase, most of the pints he has ever bought appeared to

22  be at least a little bit short."  ¶50.

23  

24  _____

[6] Defendants hypocritically complain *now* that the FAC compares the slack fill in their products to that of competitors.  Defs' Mem. at 8.  But these allegations are supported

25  by Plaintiffs' personal experiences.  See, e.g. ¶50.  More importantly, ***Defendants themselves did exactly the same when they thought they could use the comparisons***

26  ***to support their fraudulent scheme.***  See, e.g. ¶103 ("Since the big ice cream companies use their own trucks and can control the entire process from factory to store,

27  this tends to happen a bit more often to smaller companies like us."); ¶ 53 ("these things can lead to the same issues and unfortunately happen to even the bigger ice cream

28  brands."); ¶57 (same); ¶62 (same); ¶ 67 (same); ¶70 (same); ¶ 79 (same); ¶86 (same).

### 1. Plaintiffs Have Standing for "Unpurchased Products"

Defendants' own statements admit the underfilling is in no way related to flavor of any particular ice cream, or its ingredients.  Instead, they (misleadingly) tell consumers that the underfilling is caused by the distribution process ***and that it occurs to all flavors and all containers in a given "batch" or "shipment."***  See, e.g. ¶72 ("[I]f one pint was affected, it's very likely that the entire batch or shipment was affected as well."); ¶76 ("Looks like this was a case of 'if one pint was affected it's more than likely the rest of the batch was affected too.'").

Ignoring this, Defendants argue Plaintiffs do not have standing to bring claims on behalf of purchasers of flavors of ice cream not specifically purchased by Named Plaintiffs as alleged in the FAC.  Defs' Mem. at 22.  Defendants are wrong.

> The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase ***so long as the products and alleged misrepresentations are substantially similar***.

*Brown v. Hain Celestial Group, Inc*., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).

In a case on all fours with the instant case, Judge Chen in the Northern District of California upheld the very same state law claims against an ice cream company for flavors the Plaintiffs did not purchase.  See, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371, *39 (N.D. Cal. July 20, 2012). In *Astiana*, the court found sufficient similarity where the plaintiffs challenged:

> the same kind of food products (i.e., ice cream) as well as the same labels for all of the products. . .. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors.

*Id.* at *37.[7]  Consistent with the overwhelming majority view, this Court had it exactly right in *Alvarez v. NBTY, Inc.*, No. 17-cv-00567 BAS-BGS, 2017 U.S. Dist. LEXIS

---

[7] See also, *Anderson v. Jamba Juice Co*., Case. No.: 12-CV-01213 YGR, 2012 U.S. Dist. LEXIS 120723, at *15 (N.D. Cal. Aug. 25, 2012) (plaintiff who purchased certain

201159 (S.D. Cal. Dec. 6, 2017) (Bashant, J.) ("[A] plaintiff has standing when the products and alleged misrepresentations are substantially similar.").[8]

This case is about the *amount* of ice cream in the containers, not the flavors, and the labels, marketing, and correspondence with consumers are all identically false and misleading *in every flavor*.  See, e.g ¶39 ("[I]n all material respects regarding the amount of ice cream in the container, every Halo Top pint label is the same.  The container states that it is a pint, Defendants advertise, market and sell it nationwide as a pint, and the media and consumers all understand the container to contain a pint of ice cream – regardless of flavor of ice cream or colors used on the label.").

### 2.  Plaintiffs' Injury Is "Traceable" to Defendants

Defendants also contend Plaintiffs do not have standing *even for pints they did purchase*, because they cannot directly "trace" their injury to Defendants. Defs' Mem. at 11 – 12. This argument is a variation on Defendants' "third-party" defense – ignoring numerous allegations in the FAC and relying on the lie that anonymous third parties are somehow *solely* responsible for Defendants' underfilled pints, misleading labels, and subsequent false statements to consumers.  It is absurd.  See, *infra* §D.2.

Plaintiffs injury will be "traceable" if Defendants' conduct was a contributing cause in creating that injury.  *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894, 901 (9th Cir. 2011) ("[Plaintiff] need not eliminate any other contributing causes to establish its standing."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[P]laintiff is not required to allege that [the challenged] misrepresentations were the sole or even the

---

flavors of at-home smoothie kits had standing to bring claims on behalf of purchasers of other flavors because the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor. . . ."); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548, (N.D. Cal. Mar. 13, 2014) (Standing requirements met when purchased and unpurchased products were different flavors of yogurt and the challenged labeling practice was the same across all products.)

[8] Defendants' authorities are easily distinguished for this reason.  See, e.g. *Ivie v. Kraft Food Glob., Inc.*, Case No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, *7 – 8 (N.D. Cal. Feb. 25, 2013) (Plaintiffs alleged misleading labels on disparate products, including cookies, cough drops, and gum).

decisive cause of the injury-producing conduct.")  Here, Plaintiffs allege they were damaged by Defendants' conduct, not unidentified third parties.  See, e.g. ¶3 ("Halo Top routinely underfills its pint containers of ice cream.  Dramatically so at times, and as a course of business."); ¶88 ("Halo Top underfills and mislabels its pints in a way that is misleading to consumers and serves no legitimate or legally cognizable function. . .").  Defendants knowingly underfilled their pints, chose the container and label, and marketed and sold the containers to Plaintiffs and the Class, to Plaintiffs' detriment.

Similarly, certain Plaintiffs were harmed by Defendants' misrepresentations in their emails, when those Plaintiffs purchased more underfilled Halo Top ice cream pints *after* receiving Defendants false and misleading assurances that Defendants were "actively working" to fix the "issue."  See, e.g. ¶¶56 – 59 (Plaintiff Lichten), ¶¶70 – 76 (Plaintiff Cox), ¶¶78 – 81 (Plaintiff Kinman).  These allegations demonstrate that the harm – paying full price for underfilled pints – resulted *directly* from Defendants' fraudulent scheme.  "Traceability" is not an issue here.[9]

### D. Plaintiffs Properly Alleged Their State Law Claims

#### 1. Plaintiffs Alleged "With Particularity the Circumstances Constituting the Fraud" in Satisfaction of Rule 9(b).

Fraud claims must allege "with particularity the circumstances constituting the fraud" to comply with Rule 9(b).  Fed. R. Civ. Proc. 9(b).  This holds true for certain UCL claims and CLRA claims that are also fraud-based.  This means Plaintiffs must allege the "who, what, where, when and how" of the fraudulent scheme.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiffs satisfy that standard.

The detailed allegations in the FAC thoroughly describe the circumstances constituting the fraud.  Each Plaintiff provides their individual history and experiences

---

[9] Although Defendants offer numerous cases on the pleading standard, their argument is simply that "Plaintiffs' claims *appear to be connected to* alleged handling by third parties, such as distributors, retailers or consumers."  Defs' Mem. at pp.11 – 12.  Such speculation – and blatant misstatement of Plaintiffs' claims – does not destroy causation, and is no basis for dismissal.  See, *infra* §D.2.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

purchasing Halo Top ice cream, including dates and locations of purchase, specific ice creams purchased, and each of their general practices regarding frequency of purchase. ¶¶48 – 87.  In most cases they include pictures.  These allegations provide stark detail of the who, what, where, when and how, thereby satisfying Rule 9(b).

And for those Plaintiffs who have corresponded with the Company, each Plaintiff has given the dates of correspondence, quoted the exact false statements verbatim, and identified the persons who made them. See, e.g. ¶¶52 – 53; 56 – 58; 62; 66 – 67; 70 – 76; 78 – 79. These statements are all available to defendants on the Company servers.  In light of all of this, Defendants cannot argue with a straight face that they are at an unfair disadvantage because they cannot tell which statements are alleged to be false, or why, or when or by whom they were made.

These allegations are more than sufficient to state a claim that is "specific enough to give defendants notice of the particular misconduct . . ." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Especially so in this instance, where the methods of production, packaging and shipping are all in the exclusive control of Defendants, and Rule 9(b) pleading standards are "relaxed" prior to discovery. *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994)).

### 2. Defendants Cannot Blame Unknown and Unidentified Third-Parties for Their Deceit

Perhaps in light of the specificity of these allegations, Defendants instead focus entirely upon the pint container label.  Ignoring the FAC, Defendants contend the statement that the container holds a pint of ice cream was true at the time the container was filled (because Halo Top would never underfill its containers), and therefore only became a false statement later (when anonymous "third parties" let the ice cream thaw during shipping), and at the point of purchase. See, Defs' Mem. at pp. 12 – 14.[10]  This

---

[10] Defendants also conveniently ignore (and therefore concede on this motion) that their statements and pictures on their website and various social media marketing all repeat the labels' false and misleading statements – that the containers hold a pint of ice cream when in fact they do not.  See, e.g. ¶¶36 – 38.  As Plaintiffs discuss below, regardless

is a non-starter, because it is contradicted by the allegations (accepted as true) that it is Defendants who underfilled Halo Top pints, not third parties. ¶¶3 – 4; 45, 100, 104.

**Second**, even if their lie were true and the underfilling was the fault of third parties and only occurs during shipment, Defendants are still liable for their deceit. The actual container and label are not seen by the consumer until the point of purchase, and that is the point at which that particular misrepresentation occurs. See, e.g. *Brazil v. Dole Packaged Foods, LLC*, Case No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, * 47 – 48 (N.D. Cal May 30, 2014).[11]

**Third**, even if Defendants believed the containers were full at production (they did not), once they learned that entire shipments of underfilled pints were on store shelves, at that point in time their labels and advertisements were knowingly false and misleading, and yet they did nothing to correct it.  ¶¶56 – 58 (admitting in early January 2017 that "it's possible" an entire shipment was underfilled); See also ¶¶72, 76. See, e.g. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329,1336 (7th Cir. 1995) (recognizing a "duty to correct"). Instead, Defendants waited for a customer complaint, assured the customer that they were "fixing" the "issue", and offered a coupon – thereby perpetrating an admittedly known fraud on future purchasers of those shipments.

Nor do the fraud-based claims fail for lack of "fraudulent intent." Defs' Mem. at 14, 19 – 20. Rule 9(b) allows knowledge and intent "may be alleged generally." Fed. R. Civ. Proc. 9(b). In any event, Plaintiffs have alleged that defendants knew their

---

of the timing of **when** the containers become underfilled, Defendants undeniably know **at the point of purchase** consumers are receiving less than a pint "most of the time." This renders Defendants' advertising and marketing false and misleading, even if the label was accurate at the time of production as Defendants claim (it was not).

[11] A "container that does not allow **the consumer** to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100.  Here, "[e]ach of the containers was opaque, closed and sealed." ¶¶16, 33.  It is only by purchasing and opening the container that "any of these plaintiffs or any other reasonable consumer could have known the true volume of ice cream contained therein at the time of purchase." ¶16. Thus, defendants ice cream pints are misleading to the extent they are underfilled at the time of purchase **by the consumer**.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

statements were false when made. See, e.g. ¶¶ 3 – 4 (***Defendants know*** their pints are underfilled and are cheating consumers); ¶100 ("Defendants' conduct harms consumers nationwide by ***intentionally and fraudulently underfilling*** its pint containers."); ¶ 102 (statements to consumers are "***knowingly false and misleading***.").

In fact, Defendants' own statements admit they know they are sending consumers underfilled pints.  They tell consumers that they know their competitors ("the big ice cream companies") don't sell underfilled pints like they do.  ¶¶ 53, 57, 62, 67, 70, 79 ("this tends to happen a bit more often to smaller companies like us.").  And they admit to consumers ***they know entire shipments are underfilled***. ¶¶ 58, 72, 76. Defendants even created a form for consumers to fill out on the Halo Top website called a "***Low Fill*** Form Response."  ¶54.[12]

### 3.  Plaintiffs' Reliance Is Well-Pled

Defendants also challenge Plaintiffs' "reliance" on their false statements. As to the pint containers, each plaintiff alleges that he or she purchased at least one clearly marked and easily identifiable pint of Halo Top ice cream that was underfilled. Because of the construction and shape of the container, and the label itself, it would be unreasonable for a consumer to think he or she is getting ***anything but*** a pint of ice cream.  ¶¶33 – 42.  In any event, Plaintiffs explicitly allege reliance:

> At the time of purchase, each of them looked at the label and container, and relied upon the representation and common understanding that the container would contain a pint of Halo Top ice cream.  Had each of them known their pints were underfilled at the time of purchase, they would not have paid as much to purchase them, or would not have purchased them at all. ¶47.

Even if not specifically alleged, Plaintiffs are entitled to an inference of reliance if the misrepresentation is "material" to the consumer decision to purchase the product.

---

[12] The single unpublished case Defendants rely upon in support does not address "fraudulent intent," but instead deals with "promissory fraud," or fraudulently inducing of another to enter into a contract.  See, *Standard Furniture Mfg. Co., v. LF Products PTE. Ltd*, No. SACV1602097, 2017 U.S. Dist. LEXIS 222180, *8 – 9 (C.D. Cal. Aug. 30, 2017).

That is, a "'material' misrepresentation – one to which 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' – creates the inference of reliance." *Morgan v. Wallaby Yogurt Co.*, Case No. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548, *13 (N.D. Cal. March 13, 2014) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).

Defendants nowhere contend that the misrepresentations are not material to a reasonable consumer. Instead, they ignore the applicable standard and argue Plaintiffs must allege "specific facts" that they relied on the pint label, citing securities fraud cases that are governed by the strict pleading standards of the PSLRA. Defs' Mem. at 14. Those cases have no applicability here, and Defendants simply misstate the law.[13] Applying the correct standard, Plaintiffs allege it is a material fact to consumers that the container is a pint of ice cream. Indeed, it is central to Defendants' marketing strategy. See, ¶¶3 – 4 (Plaintiffs relied on the carton and label by paying for a full pint of ice cream but did not receive a full pint); ¶¶7, 9, 13 (Plaintiffs who continue to purchase Halo Top want to ensure they get a full pint when they purchase); ¶¶33 – 39 (Defendants marketing to consumers focuses on the "pint"); ¶43 (Consumers expect to be paying for a full pint but do not receive it); ¶¶53, 57 – 59, 62, 67, 70, 72, 76, 79, 86 (Plaintiffs repeatedly complained to Halo Top that they did not receive a full pint.).

The same holds true for Defendants' communications with consumers. Defendants repeated the lie for years that they were fixing the problem, in order to induce Plaintiffs to continue purchasing Halo Top ice cream. ¶¶5 – 6; 101 – 108. And after receiving these emails, certain Named Plaintiffs purchased more ice cream and

---

[13] The one non-PSLRA case Defendants cite is *Cadlo v. Owens-Illinois, Inc.* 125 Cal. App. 4th 513 (2004). But that case pre-dates *In re Tobacco II*, and in any event is hopelessly off-point. *Cadlo* was an asbestos liability/personal injury case, where the original manufacturer sold production of the asbestos product to a successor company several years before the Plaintiff came into contact with it, Plaintiff could not allege he relied on the false statements of the original manufacturer *because he admitted he never saw the original manufacturer's statements*. Id. at 520.

received underfilled pints. ¶¶ 58 – 59, 63, 72 – 74, 81, 87.  See also, ¶108 ("For if Defendants were to tell them the truth, consumers would stop buying the ice cream.")

### E. Plaintiffs' UCL and CLRA Claims Are Well-Pled

A plaintiff has stated a claim under the UCL and CLRA by alleging the Defendants' misrepresentations are likely to deceive a reasonable consumer. See. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1161-62 (9th Cir. 2012). See also*, In re Sony Gaming Networks and Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012).  Here, Defendants do ***not*** contend that their containers, labels and other misrepresentation were not likely to deceive a reasonable consumer.  Nor could they.  See, ¶¶33 – 44; 101 – 108.

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams,* 552 F.3d at 938; see also *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 873 (N.D. Cal. 2012) ("Generally the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion to dismiss.").  Here Plaintiffs allege facts demonstrating that Halo Top's packaging, labeling, marketing, and statements to consumers may (and did) mislead a reasonable consumer. Accordingly, "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939.

### 1. Defendants Are Liable for Their Own Conduct

As if they had not read the FAC at all, Defendants astonishingly claim "Plaintiffs allege no facts that it was Eden Creamery that engaged in unfair or deceptive conduct". Defs' Mem. at 17. This simply blinks reality, again asserting that the "third party" lie is the truth.  Defendants exclusively control: the Halo Top label, Halo Top marketing and advertising, production of the ice cream, shipping, and their post-purchase

1   communications with consumers.  In fact, there is no part of this process – other than
2   the consumer's decision to purchase – that defendants ***do not*** control.

3       Defendants' lying emails to consumers, which blame unidentified third parties
4   for Halo Top's underfilling of their pint containers, do not absolve them of liability.
5   And Defendants' authorities do not support that position.  See Defs' Mem at 17 – 18.
6   Instead, those cases stand for the unremarkable proposition that there is no vicarious
7   liability under the UCL or CLRA.  Plaintiffs do not dispute that general proposition,
8   but it has no application here.  In this case, there can be no question that Defendants
9   have "unbridled control" over Halo Top's manufacturing, packaging, labeling,
10  advertising and emails to consumers. *Id*. at n.12.  They are liable for their own conduct
11  under the UCL and CLRA.

### 2.  The CLRA and UCL Fraud-Based Claims Are Well-Pled

13      Defendants contend the claims for violation of the CLRA and the UCL "fraud
14  prong" should be dismissed for the same reasons as Plaintiffs' claim for common law
15  fraud.  Defs' Mem. at 19 – 20.  Breaking no new ground, they repeat that Plaintiffs
16  failed to allege Defendants' knew their statements were "false when made," and that
17  Plaintiffs' failed to allege "reliance" or causation.  Each of these issues has been
18  addressed above, concerning the fraud cause of action.  See § D. 1. *supra*.  The
19  additional cases relied upon do not help Defendants, for they do little more than state
20  the rule.

21      For their CLRA claim, Plaintiffs allege three distinct violations.  See ¶¶129 –
22  131.  Defendants' underfilling of their pints, and their advertising, marketing, and
23  statements to consumers all represent that the pint containers have qualities and are of
24  a specific amount, when in fact they do not and are not. It is a textbook violation of
25  Cal. Civ. Code §§1770(a)(5) and 1770(a)(7). Additionally, the allegations demonstrate
26  Defendants advertised their pints with an intent not to sell them as advertised, in clear
27  violation of Cal. Civ. Code §1770(a)(9).  And the same conduct that supports the fraud

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  claim also supports a violation of these CLRA provisions, as well as the UCL "fraud-
2  prong".  ¶121(b).

3      Courts generally analyze these claims together. See, e.g. *Hendricks v. StarKist*
4  *Co.*, 30 F. Supp. 3d at 934 (analyzing together "the fraud claim, and all of the fraud-
5  based claims").  In cases like this one, where common law fraud is properly pled, courts
6  uphold the CLRA and UCL claims as well.  See, *Id.* at 932 (upholding claims for
7  violations of the FAL, UCL, and CLRA for underfilled tuna cans).  This case is no
8  different.

9      **3. The Claims for Violation of the UCL "Unlawful" and "Unfair"**
10        **Prongs Are Well-Pled**

11      To state a claim under the UCL's "unfair" and "unlawful" prongs, Plaintiffs must
12  allege conduct that offends an established public policy ("unfair") or that violates any
13  underlying law ("unlawful"). *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*
14  *Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) ("By proscribing any unlawful business practice,
15  [the UCL] borrows violations of other laws and treats them as unlawful practices that
16  the unfair competition law makes independently actionable.").  These are "non-fraud"
17  UCL claims governed by Rule 8(a).  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927
18  (N.D. Cal 2012). Where, as here, Plaintiffs have alleged a violation of other statutes in
19  addition to common law fraud, the "unlawful" prong of the UCL is satisfied.[14]

20      Defendants' conduct also "threatens or harms competition," thereby violating
21  the "unfair" prong of the UCL.  *Cel-Tech*, 20 Cal. 4th at 187. Generally, courts utilize
22  a three-part test.  See, *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 48
23  Cal. Rptr. 3d 770, 777 (2006). Under this test, courts consider (1) whether the consumer

24

25  ─────────────────────
26  [14] Defendants' conduct violates multiple state and federal laws, including the claims
   alleged plus California's False Advertising Law (B&P §17500), the FDCA (21 U.S.C.
   §301 *et seq.*), and the California Sherman Act (Health & Safety Code §110100) which
27  is coextensive with the FDCA. *Victor v. R.C. Bigelow, Inc.*, Case No. 13-cv-02976-
   WHO, 2014 U.S. Dist. LEXIS 34550, *33 (N.D. Cal Mar. 14, 2014).  Any and all of
28  these violations satisfy the requirement of a predicate "unlawful" act.  See, ¶121.

injury is substantial; (2) whether the injury is outweighed by any countervailing interests; and (3) whether the injury is one that consumers themselves could not reasonably have avoided. See *id*. Notably, "[w]hether a practice is . . . unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1376 (2012).

Defendants' only argument for dismissal of both of these UCL claims is the same as their argument regarding Plaintiffs' other claims – that Plaintiffs failed to allege fraud, and therefore Plaintiffs failed to allege these claims as well.  Defs' Mem. at pp. 20 – 21.  But Plaintiffs have properly alleged common law fraud, and therefore these "prongs" of the UCL are satisfied.   Moreover, applying the appropriate standards to each of these "prongs" of the UCL demonstrates that Plaintiffs satisfy their pleading burden.  For example, applying the *Camacho* factors, the consumer injury on a class-wide basis is substantial, there is no "countervailing interest" in support of Defendants' deceit, and for consumers the injury is unavoidable because they never know if the pint is full.  Thus, the "unfair" prong of the UCL is also satisfied.

### F. Defendants' Cannot Re-Cast Plaintiffs' Fraud, UCL and CLRA Claims as a "Breach of Warranty" Claim, or Rely on the "Economic Loss Rule"

Citing the "economic loss rule," Defendants assert they are permitted to intentionally lie and cheat consumers as a business practice yet only be sued for "breach of warranty."  Defs' Mem. at 15 – 18.  Defendants are wrong.  See, e.g. *Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 991 n.7 (2004) ("[T]he economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk").  As a result, in California an intentional misrepresentation claim generally will not be barred by the "economic loss rule," nor will the related UCL and CLRA claims.  See, e.g. *Takano v. P&G*, No. 2:17-cv-00385-TLN-AC, 2018 U.S. Dist. LEXIS 182777, *31 – 33 (E.D. Cal. Oct. 23, 2018).

Apparently forgetting themselves, defendants now argue the "economic loss rule" applies because it serves "to prevent every breach of contract from giving rise to tort liability and the threat of punitive damages." Defs' Mem. at 15.  While the quoted language is true enough in the abstract, it has no application here because there is no contract.  In fact, in this case Plaintiffs originally sued Halo Top for breach of implied contract, and Halo Top moved to dismiss that claim ***"because there is no contract between Plaintiffs (who are end-consumers) and Eden Creamery (which is a product manufacturer)."*** See, Doc. 7-1 at p. 18.[15]

Defendants' forgetfulness aside, they contend the economic loss rule applies because Plaintiffs' fraud, UCL and CLRA claims are really "breach of warranty" claims in disguise. See, Defs' Mem. at 15 – 16 (fraud claim), 18 – 19 (UCL and CLRA claims). But Defendants do not get to choose which causes of action they want to defend.  It is axiomatic that "a plaintiff is 'master of his complaint'" and may choose which claims he pursues.  *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2004); see also, *Childers v. Sagem Morpho, Inc.*, Case No. C06-0060RSM, 2006 U.S. Dist. LEXIS 88425, *17 – 18 (W.D. Wash. Dec. 6, 2006) ("Plaintiff is the master of his own Complaint and defendants cannot characterize his action in a manner he categorically rejects."): *Knox v. Ameriquest Mortg. Co.*, No. C-05-00240 SC, 2005 U.S. Dist. LEXIS 40709, *11 (N.D. Cal. Aug. 10, 2005) ("A plaintiff is master of his complaint and may choose which causes of action to bring from the relevant possibilities.").

Plaintiffs here alleged specific state law causes of action, which are specifically supported by the factual allegations.  While there may be other viable causes of action

---

[15] This point renders irrelevant most of Defendants' cited cases.  See, e.g. *Swearingen v. Santa Cruz Nat'l, Inc.*, Case No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432, *30 (N.D. Cal Aug. 17, 2016 (dismissing negligence claims because Plaintiffs failed to show they could not recover contract damages for their loss); *Resnick v. Hyundai Motor Am., Inc.,*, CV 16-00593-BRO (PJWg),2017 U.S. Dist. LEXIS 67525,*29 – 31 (C.D. Cal. Apr. 13, 2017) (Dismissing negligent misrepresentation claim for defective car paint where car-buyer plaintiffs' breach of warranty claims were viable and the warranties had expired.)

1    for Defendants' malfeasance, Plaintiffs are not required to pursue them. *Bennett v.*

2    *Forbes*, Case No. 17cv464-MMA(KSC), 2017 U.S. Dist. LEXIS 169149, *22-23 (S.D.

3    Cal. Oct. 12, 2017) ("Plaintiff is master of his Complaint, and the Court will not require

4    Plaintiff to litigate claims he no longer wishes to litigate in this Court.").

5           In cases alleging fraud and deceit like this one, there is a strong public policy in

6    favor of allowing those claims to proceed.  *Robinson Helicopter Co. v. Dana Corp.*, 34

7    Cal. 4th at 991 – 992.  Thus, in false-labeling cases the fraud, UCL and CLRA claims

8    are frequently upheld ***whether or not*** there is also a valid "breach of warranty" claim.

9    See, e.g. *Durnford v. MusclePharm Corp.*, No. 16-15374, 2018 U.S. App. LEXIS

10   28771, *18 (October 12, 2018 9th Cir.) (upholding fraud, UCL, CLRA ***and breach of***

11   ***warranty*** claims for mislabeled diet supplements); *Takano v. P&G*, No. 2:17-cv-

12   00385-TLN-AC, 2018 U.S. Dist. LEXIS 182777 (E.D. Cal. Oct. 23, 2018) (upholding

13   fraud, UCL, CLRA ***and breach of warranty*** claims for mislabeled consumer hair

14   products); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 – 933 (N.D. Cal. 2014)

15   (Upholding fraud, UCL and CLRA ***and breach of warranty*** claims for underfilled tuna

16   cans).   See also, *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015)

17   (Upholding UCL and CLRA claims ***without breach of warranty claim***, for mislabeled

18   consumer product); *Morgan v. Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548

19   (same); *Alvarez*, 2017 U.S. Dist. LEXIS 201159 (same).[16]

20   **G. Woolverton Is Liable for Torts Committed by Him, and by Halo Top at**
21        **His Direction**

22          "A corporate officer or director is, in general, personally liable for all torts which

23   he authorizes or directs or in which he participates, notwithstanding that he acted as an

24   _____

25   [16]   Defendants cite two cases specific to the UCL and CLRA claims, neither of which
     is meaningful here.  See, Defs' Mem. at 18 – 19.  Both unpublished cases stand for the
26   proposition that, if the UCL and CLRA claims rely solely on other conduct, and that
     underlying conduct is barred by the economic loss rule, then so are the UCL and CLRA
27   claims.  But here a) the underlying fraudulent conduct is not barred by the economic
     loss rule, and b) certain of Plaintiffs' UCL claims here can stand on their own.  See §
28   E. 3., *supra*.

agent of the corporation and not on his own behalf." *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). A corporate officer will be liable if he "participate[s] in the wrong or authorize[s] or direct[s] that it be done." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970).

Halo Top is Defendant Woolverton's company.  He created it and since its founding has been the owner and CEO.  He grew the company without Wall Street financing and publicly claims he doesn't have others "telling him what to do."  Halo Top has been in existence for only 6 or 7 years, and during that time Woolverton has always maintained authority over the entire company and has been "intimately involved in the day-to-day operations." ¶¶21 – 22.

Woolverton "participated in" and "authorized" Halo Top's misconduct. Woolverton "has control over, took part in, and gave final approval to, the design of and language found on each of each of the Halo Top container labels." ¶23.  Moreover, he specifically takes part in (and exercises control over) the Company's marketing and advertising strategy – marketing and advertising that focuses on the "pint" container. ¶¶33 – 37.  By way of example, in a recent interview he even boasted of a "really big marketing strategy" on social media that *he personally created* for the Company.  ¶24.

Like the marketing and advertising, Woolverton personally reviewed and approved the false statements to consumers.  ¶26.  In fact, the exact same statement to consumers was repeated over a period of years and to all consumers who complained, regardless of which individual was actually sending the statement on behalf of the Company.  See, ¶¶53 and 79 (sent by "Joe"); ¶¶57 and 70 (sent by "Joshua Wu"); ¶62 (sent by "Sophia").  Thus, these false and misleading statements did not originate with "Joe," "Joshua" or "Sophia" – they came from Woolverton.

This is more than sufficient to allege Woolverton "participate[d] in the wrong or authorize[d] or direct[ed] that it be done.  *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d at 595 (1970).  Indeed, Woolverton's conduct is more egregious

that other instances where courts have upheld claims against individual executives. See, e.g. *Dufour v. Be LLC*, No. C 09-03770 CRB, 2010 U.S. Dist. LEXIS 62518, *18 (Upholding complaint where Plaintiff alleged the executive was "personally involved in the management of Be's business operations" and he "formulated the policies and procedures alleged [in the complaint], directly ordered, [and]. . . authorized or participated in Be's acts alleged herein."); *Rodriguez v. SGLC, Inc*., No. 2:08-cv-01971-MCE-KJN, 2012 U.S. Dist. LEXIS 16372 at *36 (E.D. Cal. Nov. 15, 2012) (denying summary judgment for defendant-executive on UCL claim because "a corporate officer who participates in conduct that violates the UCL can be held personally liable.")

Woolverton now attempts to distance himself from his Company's conduct and his own decisions, claiming individuals cannot be liable for the Company's tortious conduct.  Defs' Mem. at 9 – 11. But the cases Defendants rely on do not support such a sweeping generalization, and Defendants ignore the clear allegations in the FAC.

For example, in *O'Connor v. Uber Techs., Inc*., No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 171813 (N.D. Cal. Dec. 5, 2013), plaintiffs did not allege any role in the misconduct by the two executives who were named as defendants.  Instead, the court dismissed the President and Vice President of Uber because Plaintiffs there conceded their allegations were insufficient, and contended "the specifics of [defendants'] involvement will have to await the discovery process and that the allegation that they were responsible for the policies leading to the alleged liability is sufficient at this stage." *Id*. at 60.  The FAC does not seek to hold Woolverton liable for "company policies," but rather for specific conduct.

And Defendants misstate the holding in *Hunter v. Citibank*., NO. C 09-02079 JW, 2011 U.S. Dist. LEXIS 154102 (N.D. Cal. May 5, 2011), Through selective quotation, Defendants contend the court dismissed the individual defendant even though he "was 'intimately involved in' alleged fraudulent activities."  Defs. Mem at 10.  Not quite. The plaintiffs' problem in *Hunter* was precisely that "Defendant

- 23 -

Rodriguez may have allegedly approved loans in the course of his duties as principal, **_but the allegations do not state that Defendant Rodriguez was personally aware_** that the monies were being used to perpetuate the "Ponzi" scheme."   In other words, Plaintiffs in _Hunter_ (unlike here) did not allege the executive was "intimately involved in alleged fraudulent activities."[17] See, e.g. ¶3 ("Defendants know they are short-changing Halo-Top's customers…"); ¶22 (Woolverton is "intimately involved in the day-to-day operations…"); ¶104 ("Defendants know they are selling mislabeled, underfilled pints of ice cream and have no intention of stopping.").

### H. The Non-California State Law Causes of Action Are Well-Pled

Defendants offer a paragraph's worth of analysis for why each claim based on non-California state law must be dismissed.[18]   The crux of each of them is the same as Plaintiffs' California state law claims – that there is some element of fraud missing from the FAC, and that element is also required under each of the various state statutes. See, Defs' Mem. at 23 – 25.   But as set forth above, Plaintiffs have properly alleged each of the elements for asserting those state law claims.

Defendants also contend a one-year Arizona statute of limitations bars the Arizona claim, but ignore the allegation in the complaint that the Arizona plaintiff bought underfilled pints with regularity in the "Fall of 2017" and specifically bought one in April 2018.   See ¶¶64 – 67.   Defendants' also argue the New Jersey claim must be dismissed because the Company offers coupons.   First, that misstates the law.   New

---

[17] Defendants repeated citation to _Consumerinfo.com Inc., v. Chang_, No. CV 09-3783, 2009 WL 10675737 (C.D. Ca. Dec. 31, 20019 is problematic as well, insofar as the analysis and ruling they rely upon is clearly "tentative" and of no precedential value. See, Id. at *3 ("Tentative Ruling Re: Motion to Dismiss…").   In any event, in that case the executive was dismissed because although the Plaintiffs had alleged certain conduct in detail, it was not conduct related to the patent infringement for which he was being sued. Id. at *8. But that is not the situation here.

[18] Defendants also argue in a single paragraph, without analysis that no state law can be applied "extraterritorially." Defs' Mem. at 21.   This is an issue for class certification, not a basis for dismissing any particular claim. _**Alvarez,**_ 2017 U.S. Dist. LEXIS 201159 at *20 – 22.

Jersey law holds that a plaintiff does not suffer damages if the Company warranties and repairs the product at no cost to the plaintiff. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 254 (2005). Here, Defendants do not provide a warranty on their ice cream. And they only offered coupons to a very few plaintiffs as part of their fraudulent scheme (those who complained to the company, and only after filling out a form and submitting photos). Moreover, ***the coupons did not always work, or resulted in the Plaintiff receiving more underfilled pints.*** See, ¶¶ 54, 58, 71, 80.

## I. Leave to Amend

To the extent the Court finds any of Defendants' arguments have merit and dismisses any of the claims asserted, Plaintiffs respectfully request an opportunity to amend the FAC to remedy the pleading defect. See, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (the rule that leave to amend shall be "freely given" is "to be applied with extreme liberality").

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court deny Defendants Eden Creamery's and Justin T. Woolverton's Motions to Dismiss in their entirety.

DATED: December 3, 2018
LAW OFFICES OF ANDREW J. BROWN

*s/ Andrew J. Brown*
ANDREW J. BROWN

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: (619) 501-6650
andrewb@thebrownlawfirm.com

*Attorneys for Plaintiffs Individually and on Behalf of All Others Similarly Situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December 2018, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on the 3rd day of December, 2018 at San Diego, California.

*/s/  Andrew J. Brown*

Andrew J. Brown
Attorney for Plaintiffs