# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

YOUSSIF KAMAL, *et al*., on their own behalf and on behalf of all others similarly situated,

                              Plaintiffs,

        v.

EDEN CREAMERY, LLC dba HALO TOP CREAMERY, JAMES WOOLVERTON,

                              Defendants.

Case No. 18-cv-01298-BAS-AGS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**[ECF No. 14]**

At the bottom of this case are allegations of underfilled Halo Top ice cream pints. Plaintiffs Youssif Kamal, Gillian Neely, Richard Lichten, Susan Cox, Nick Tovar, Michele Kinman, Ralph Jacobson, Ashley Petefish and Teri Brown (collectively, "Plaintiffs") contend that what looks like a full pint of Halo Top ice cream to consumers on the outside is, for some consumers, less than a full pint— sometimes "dramatically" so. According to Plaintiffs, Defendant Eden Creamery, LLC d/b/a Halo Top ("Eden Creamery"), the company that produces, markets, and advertises, and sells Halo Top, "routinely underfills its pint containers of ice cream."

Plaintiffs bring this action against Eden Creamery and its founder and Chief Executive Officer, Defendant James Woolverton, alleging that the labeling, advertising, and marketing of Halo Top ice cream pints—all of which allegedly

focuses on the Halo Top pint's pint-size—is misleading, deceptive, and fraudulent due to Eden Creamery's alleged underfilling. On the basis of this alleged conduct, Plaintiffs raise claims against Defendants for common law fraud under California law and statutory claims for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.; various provisions of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9); the Arizona Consumer Fraud Act, ARS § 44-1521 e*t seq*., (FAC ¶¶ 141–49); the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*., (FAC ¶¶ 150–59); the Illinois Consumer Protection Fraud and Deceptive Business Practices Act, 815 ILCS § 505 *et seq*., (FAC ¶¶ 160–70); the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0903, *et seq*., (FAC ¶¶ 171–79); the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56.8-1, *et seq*., (FAC ¶¶ 180–88); and the New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq*., (FAC ¶¶ 189–95). Plaintiffs seek to represent a nationwide class of consumers who purchased one or more Halo Top ice cream pints and who received less than a pint or, alternatively, a multi-state class based on where one of the named Plaintiffs purchased an underfilled pint.

Defendants Eden Creamery and Woolverton move to dismiss all claims in the operative First Amended Complaint ("FAC"). (ECF Nos. 14, 16.) Plaintiffs oppose. (ECF No. 15.) The motion is suitable for determination on the papers, without oral argument. S.D. Cal. Civ. L.R. 7.1(d). For the reasons herein, the Court grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

Tracing its origins to Defendant Woolverton's home ice cream business started in 2011, Defendant Eden Creamery is a California limited liability corporation with

its principal place of business and headquarters in Los Angeles, California. (FAC ¶¶ 18, 21.) Eden Creamery produces, markets, and sells a popular low-calorie, protein-based, and low-sugar ice cream, which has allowed Halo Top to develop "a cult-like following among consumers" and to take in tens of millions of dollars in revenue. (*Id.* ¶¶ 2, 29–30.)

Like their competitors, Defendants sell Halo Top ice cream in pints, the "recognizable standard measure of ice cream for consumers." (*Id.* ¶ 38.) Eden Creamery charges a "premium" price for its pints of Halo Top ice cream, ranging from $3.99 to $6.99 per pint. (*Id.* ¶¶ 2, 29, 32, 38.) The pint-sized container in which Defendants allegedly sell most Halo Top ice cream to retail customers is opaque, closed and sealed, as reflected in the following photograph:



(*Id.* ¶ 33.) According to Plaintiffs, "one of the most important selling points to consumers" is "the number of calories *per pint*," as is prominently displayed on "virtually every pint container of ice cream" that Eden Creamery sells. (*Id.* ¶¶ 1, 33–34 (emphasis in complaint).) Defendants' alleged advertising and marketing also "focuses on the pint," as reflected in Defendants' "aggressive nationwide social media marketing," and on Eden Creamery's website, which directs consumers to "find our pints" and encourages consumers to "select your favorite pints." (*Id.* ¶¶ 36–37.) Plaintiffs allege that consumers of Halo Top ice cream pints "understand the

container to contain a pint of ice cream—regardless of flavor of ice cream or colors used on the label." (*Id*. ¶ 39.) And consumers "expect to be paying the advertised price for a full pint of ice cream." (*Id*. ¶ 43.)

Yet, despite the labeling of the Halo Top pint, Defendants' advertising and marketing, and contrary to consumers' expectations, Eden Creamery "routinely underfills its pint containers," "[d]ramatically so at times, and as a course of business." (*Id*. ¶¶ 3–4, 43.) The "amount of underfilling appears to be random to consumers, it can vary in amount . . . and appears to be unrelated to flavor of ice cream or the location of purchase." (*Id*. ¶ 44.)

Plaintiffs allege that, in reliance on the label and pint-size container, they have purchased various Halo Top pints in the last three years, but "each of them has received, to varying degrees and in different amounts, underfilled Halo Top pints." (*Id*. ¶ 46.) Plaintiffs provide photographs of some of the allegedly underfilled Halo Top pints that they purchased. (*Id*. ¶¶ 52, 56, 59, 61, 66, 75, 78, 81, 83, 85.) Some examples are as follows:

 

(*Id*. ¶¶ 52, 78.)[1]

---

[1] (Left photograph: FAC ¶ 52 (Plaintiff Neely's April 2018 "Peanut Butter Cup" purchase); Right photograph: FAC ¶ 78 (Plaintiff Kinman's May 2018

 

(*Id.* ¶¶ 75, 85.)[2]

Plaintiffs would not have paid as much as they did for the Halo Top pints or would not have purchased them at all if they had known of the alleged underfilling. (*Id.* ¶ 47.)

Plaintiffs allege that the underfilling of Halo Top ice cream pints "is known to Eden Creamery and its executives, and it has been going on for years." (*Id.* ¶ 45.) Eden Creamery "has created a 'low fill form response' form on its website specifically for consumers to report underfilled pint containers to Halo Top." (*Id.* (citation omitted).) Defendants allegedly send customers who complain about underfilled pints a "boilerplate form response that blames everyone else in the distribution process" for the low fill. (*Id.* ¶ 5.) Defendants have allegedly told consumers since at least 2016 that they are working on addressing the low fill, but "have done nothing over the past two years . . . to stop the underfilling of Halo Top pint containers, or otherwise ensure that their containers are properly labelled." (*Id.* ¶¶ 6, 45.) Several Plaintiffs allege that they received standardized form responses

_____

presumably "Chocolate" purchase).)

[2] (Left photograph: FAC ¶ 75 (Plaintiff Cox alleges that three of the four "Chocolate Chip Mint" pints she purchased in August 2017 were underfilled); Right photograph: FAC ¶ 85 (Plaintiff Tovar's January 2018 "Peanut Butter Cup" purchase).)

from Halo Top customer representatives when they complained about allegedly underfilled Halo Top pints and provide allegations that quote from the statements verbatim. (FAC ¶¶ 53–54, 57–58, 62, 67–68, 70–72, 76, 79–80, 86, 105–06.)

## PROCEDURAL HISTORY

Plaintiffs Kamal and Neely filed the thirteen-page original complaint against Eden Creamery on June 15, 2018. (ECF No. 1.) These original plaintiffs sought to represent a putative nationwide class or, alternatively, a single-state California class for a breach of implied contract claim and claims asserted under the UCL, FAL, CLRA, for Eden Creamery's allegedly underfilled Halo Top pints. After Eden Creamery moved to dismiss the original complaint, (ECF No. 7), Plaintiffs filed the FAC, (ECF No. 8). The forty-five-page FAC adds seven new plaintiffs and names Woolverton as a defendant. The FAC discards the original complaint's breach of implied contract claim and, instead, asserts a common law fraud claim for intentional misrepresentation and omission. (FAC ¶¶ 134–40.) With the presence of new plaintiffs who allegedly purchased Halo Top pints in states other than California, the FAC includes a swath of state consumer law claims under the laws of Arizona, Colorado, Illinois, Nevada, New Jersey, and New York. The Court now turns to the merits of Defendants' motion to dismiss.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A defendant may move to dismiss a complaint under Rule 12 for any one of several specified grounds, including lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon

1    which relief may be granted, Fed. R. Civ. P. 12(b)(6).

2

3         A Rule 12(b)(1) tests whether the plaintiffs have met their burden to show that
4    the court possesses subject matter jurisdiction over the action such that it may
5    adjudicate the claims pressed in the action.  *See Kokkonen v. Guardian Life Ins. Co.*,
6    511 U.S. 375 (1994); *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770,
7    778–79 (9th Cir. 2000).  A request to dismiss for lack of Article III standing is
8    properly raised as Rule 12(b)(1) challenge to a court's subject matter jurisdiction.
9    *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A party may seek a Rule 12(b)(1)
10   dismissal based "either on the face of the pleadings or by presenting evidence."
11   *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  When
12   a party asserts a facial challenge to subject matter jurisdiction, as Defendants do here,
13   the court limits its inquiry to the allegations set forth in the complaint.  *Safe Air for*
14   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

15

16        A Rule 12(b)(6) motion tests the sufficiency of a complaint's allegations.  *N.*
17   *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a
18   Rule 12(b)(6) motion, a plaintiff is required to set forth "enough facts to state a claim
19   for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial
20   plausibility when the plaintiff pleads factual content that allows the court to draw
21   reasonable inferences that the defendant is liable for the misconduct alleged."
22   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Factual allegations
23   must be enough to raise a right to relief above the speculative level.  *Twombly*, 550
24   U.S. at 556.  In assessing the legal sufficiency of a complaint, a court accepts as true
25   the complaint's factual allegations and construes them in the light most favorable to
26   the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Yet, the court need
27   not accept as true legal conclusions pled in the guise of factual allegations.  *Clegg v.*
28   *Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).  A pleading is

insufficient if it offers only "labels and conclusion" or "a formulaic recitation of the elements of a cause of action," without adequate factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 676.

When an action alleges fraud, Rule 9(b) imposes additional pleading requirements. A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This requirement means that the plaintiff must identify the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged 'so that they can defend against the charge and not just deny that they have done anything wrong.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (citation omitted).

## DISCUSSION

Defendants' motion to dismiss advances seven overarching arguments: (1) Plaintiffs lack standing, (2) Plaintiffs' claims are preempted under federal law, (3) Plaintiffs fail to state California common law fraud claims, (4) Plaintiffs fail to state claims under the California UCL, CLRA, and FAL, (5) Woolverton is improperly sued simply because he is a corporate executive of Eden Creamery, (6) the various non-California Plaintiffs fail to state claims under the applicable state consumer protection statute, and (7) Plaintiffs may not assert any of the state consumer protection statutory claims on behalf of a nationwide class.[3] The Court concludes

---

[3] Defendants assert some additional arguments in footnotes throughout their opening and reply brief. (ECF No. 14-1 n.1–17, ECF No. 16 n.1–13.) The Court is troubled by Defendants' use of paragraph-length single-space footnotes, which raise the concern that Defendants seek to circumvent the standard page limits and

that the majority of Defendants' arguments do not warrant dismissal of Plaintiffs' claims at this stage because central to Defendants' motion are factual contentions not appropriate for resolution at the motion to dismiss stage.

**A.     Standing**

Defendants contend that Plaintiffs lack standing under Article III, the UCL, and the CLRA to challenge Defendants' alleged misleading and deceptive labeling, advertising, and marketing for the allegedly underfilled Halo Top pints that Plaintiffs purchased.  (ECF No. 14-1 at 11–12.)  Defendants further argue that Plaintiffs lack standing to challenge Defendants' conduct with respect to Halo Top pints that Plaintiffs did not purchase.  (*Id.*)  The Court rejects both arguments.

**1.     Standing to Assert Claims for Purchased Pints**

In a class action, at least one of the named plaintiffs must meet the Article III standing requirements.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  To establish Article III standing, a plaintiff must allege the irreducible constitutional minimum of: (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, *i.e.* the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability, *i.e.* it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  "Each element of standing must be supported with the manner and degree of evidence required at the successive stage of litigation."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  At the pleading stage, a trial court must accept as true all material allegations of the

formatting requirements applicable to a motion and reply brief in this Court.  The Court cautions Defendants not to use footnotes in this manner in future briefing before this Court.

complaint and construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

"To establish standing to bring a claim under [California's UCL and CLRA], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)). The requisite economic injury under the UCL is: (1) an expenditure of money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) a denial of money to which the plaintiff has a cognizable claim. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 3d 1111, 1125 (N.D. Cal. 2010). Under the CLRA, an action may be brought by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770. . . ." Cal. Civ. Code § 1780(a). A plaintiff must allege that he or she was damaged by an alleged unlawful practice. *Dorfman v. Nutramax Labs., Inc.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *6 (S.D. Cal. Sept. 23, 2013).

Plaintiffs allege that they purchased multiple pints of Halo Top ice cream that were underfilled. (FAC ¶¶ 48–52, 55–56, 58–61, 63–66, 70, 72–75 77–78, 81–83, 85.) Plaintiffs collectively allege that they relied on "the representation and common understanding that the container would contain a pint of Halo Top ice cream" when purchasing the ice cream and they "would not have paid as much to purchase [the Halo Top ice cream containers], or would not have purchased them at all" if they had known the containers were underfilled. (*Id*. ¶¶ 46–47.) These allegations suffice to establish Plaintiffs' Article III standing as well as the standing of Plaintiffs Kamal,

Neely and Lichten to sue under California's UCL, FAL, and CLRA.[4]  *Reid*, 780 F.3d at 958 (concluding that consumer had standing when he alleged that he paid more for a product than he otherwise would have paid by relying on an alleged misrepresentation on a product label); *Ivie v. Kraft Foods Global, Inc*., No. C-12-02554-RMW, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2013).

Defendants, however, contend that Plaintiffs lack standing because "they fail to allege facts suggesting that Defendants caused any products to be under-filled" and, instead, the FAC "indicates that the alleged under-filling, if any, is caused by third parties." (ECF No. 16 at 5.)  In other words, Defendants contend that Plaintiffs fail the Article III requirement that an alleged injury be "fairly traceable" to the defendant.  *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141–42 (9th Cir. 2013).  The UCL and CLRA similarly require a causal connection between a plaintiff's alleged economic injury and the defendant's alleged conduct.  *See Antman v. Uber Techs., Inc*., No. 3:15-CV-01175, 2015 WL6123054, *11 (N.D. Cal. Oct. 19, 2015) (UCL claim requires causation); *Hale v. Sharp Healthcare*, 108 Cal. Rptr. 3d 669, 680 (Cal. Ct. App. 2010) (CLRA requires causation as well).  The Court readily rejects Defendants' causation challenge.

Plaintiffs allege that Eden Creamery—not third parties—allegedly underfills its pints and that Defendants are the source of the allegedly deceptive and misleading pint representations.  (FAC ¶¶ 1, 3–4, 33–34, 36–37, 43, 45, 88, 90–92, 95.)  The Court must treat these factual allegations as true.  For reasons the Court discusses in its analysis of the pleadings, Plaintiffs have also plausibly alleged deceptive and

---

[4] All Plaintiffs are subject to Defendants' Article III standing challenge. However, only Plaintiffs Kamal, Neely and Lichten expressly assert claims under the California UCL and CLRA and thus Defendants' standing challenge for these statutes is limited to these Plaintiffs.

misleading representations. Defendants' causation challenge otherwise repackages under the label of standing Defendants' merits argument that Eden Creamery makes only full pints of Halo Top ice cream. This argument is premised on factual matter that is both not alleged in and contradicts the FAC's express allegations. As such, Defendants' argument is not proper at the motion to dismiss stage. Accordingly, the Court concludes that Plaintiffs have standing under Article III, the UCL, and CLRA to challenge Defendants' conduct for the allegedly underfilled pints Plaintiffs purchased.

### 2. Standing to Assert Claims for Unpurchased Pints

Defendants also argue that Plaintiffs lack standing to assert claims relating to Halo Top "ice cream products" that Plaintiffs did not purchase. (ECF No. 14-1 at 22; ECF No. 16 at 9.) The Court rejects Defendants' argument.

Whether a plaintiff has standing to sue for products the plaintiff did not purchase turns on the nature of the differences between the purchased and unpurchased products as well as the conduct challenged. A plaintiff lacks standing to assert claims related to products he or she did not purchase when there are "significant differences" between the products the plaintiff alleges he or she purchased and the unpurchased products. *Dysthe v. Basic Res. LLC*, No. CV 09-8013 AG (SSx), 2011 WL 5868307, at *4–5 (C.D. Cal. June 13, 2011). But "[a] plaintiff has standing for claims relating to products that she did not purchase if the 'products are the same kind, . . . comprised of largely the same ingredients, and . . . bear[ ] the same alleged mislabeling.'" *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGS, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017) (quoting *Hunter v. Nature's Way Prods., LLC*, No. 16-cv-532-WQH-BLM, 2016 WL 4262188, at *14 (S.D. Cal. Aug. 12, 2016)); *Holt v. Foodstate, Inc.*, No. 15-cv-78 L (JMA), 2015 WL 9592534, at *3 (S.D. Cal. Dec. 31, 2015); *Dorfman*, 2013 WL 5353043, at *6. Even products with

some variation in the constituent ingredients may be deemed "substantially similar" for standing purposes when the same wrongful conduct by the defendant embraces both products. *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1044 (S.D. Cal. 2016).

Plaintiffs readily fall within the circumstances in which a plaintiff has standing for unpurchased products. Plaintiffs allege that "in all material aspects regarding the amount of ice cream in the container, every Halo Top pint label is the same" and everyone "understand[s] the container to contain a pint of ice cream." (FAC ¶ 39.) And Plaintiffs' allegations of allegedly underfilled pints encompass Halo Top pints that cut across multiple flavors and locations. (*Id.* ¶¶ 48–52, 55–56, 58–61, 63–66, 70, 72–75 77–78, 81–83, 85.) At this stage, the Court can discern no reason why allegedly underfilled Halo Top pints Plaintiffs did not purchase fall outside the scope of Plaintiffs' claims regarding allegedly deceptive and misleading labeling, advertising, and marketing of the Halo Top pint. To the extent Defendants' true concern is about non-pint Halo Top ice cream products, such a concern is unwarranted because, by definition, Plaintiffs' claims concern Halo Top ice cream pint products. Accordingly, at this stage, Plaintiffs have adequately shown their standing to assert claims for allegedly underfilled Halo Top ice cream pints they did not purchase.

**B.      FDCA Preemption of Plaintiffs' State Law Claims**

Defendants argue that Plaintiffs' claims are preempted because Eden Creamery's products comply with a Food and Drug Administration ("FDA") regulation that implements the Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as amended by the Nutrition, Labeling, and Education Act in 1990. (ECF No. 14-1 at 5–9.) Preemption is an affirmative defense on which Defendants bear the burden. *See Holt*, 2015 WL 9592534, at *3; *Trazo v. Nestle USA, Inc.*, No.

5:12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013). Because Defendants bear the burden on their preemption defense, the Court will not undertake a searching inquiry to find that Plaintiffs' claims are preempted based on arguments Defendants have not raised. At this stage, Defendants have failed to meet their burden to show that the FDCA preempts Plaintiffs' state law claims.

### 1.     FDCA Preemption Framework

Congress possesses the constitutional power to preempt state law. *See* U.S. Const. art. IV, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citations omitted). Relevant to Defendants' argument, Congress has enacted an express preemption provision in the FDCA.

Pursuant to the FDCA's express preemption provision, no state may establish a requirement for food that is not identical to an FDA-established standard of identity. 21 U.S.C. § 343-1(a)(1)–(5). Under this provision, a state law or state law claims seeking to establish standards that differ from the FDCA's standards are expressly preempted. *See Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012) (statements that product was "fruit flavored" and "naturally flavored" expressly permitted by FDA regulations, preempting state law claims that the labels were deceptive); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118–21, 1122–23 (N.D. Cal. 2010) (finding express preemption where plaintiff's claims attacked package labeling that was permissible under FDA regulations, and therefore sought to establish a different standard). However, the FDCA "does not preempt a state-law

claim for violating a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel v. Medtronic, Inc*., 704 F.3d 1224, 1228 (9th Cir. 2013) (en banc). This "narrow gap" in FDCA's express preemption permits a plaintiff to challenge alleged conduct that violates the FDCA so long as the plaintiff does not sue simply because the conduct violates the FDCA. *See Perez v. Nidek Co., Ltd*., 711 F.3d 1109, 1118 (9th Cir. 2013); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 927–28 (N.D. Cal. 2014); *Trazo*, 2013 WL 4083218, at *5 ("To avoid preemption under Section 343-1(a), the plaintiff must be suing for conduct that violates the FDCA.").

### 2. Plaintiffs' Claims of Alleged Underfilling are Not Preempted

Plaintiffs' claims are premised on the allegations that the labeling and pint-sized containers of Halo Top pints are misleading and deceptive due to alleged underfilling. The FDA has promulgated a regulation which establishes a federal standard for slack-fill. *See* 21 C.F.R. § 100.100. In recognition of this federal standard, Plaintiffs allege that the alleged underfilling of Halo Top pints does not comport with the federal slack-fill standard. (FAC ¶¶ 88–100.) Relying on the same standard, Defendants move to dismiss on the ground that Plaintiffs "fail to allege facts reflecting that defendant's products violate federal law." (ECF No. 14-1 at 7.) The Court outlines the relevant federal slack-fill standard and then considers whether Plaintiffs' claims rely on the same standard and are thus not preempted or, instead, seek to add new or different requirements that the FDCA preempts.

### a. The Federal Slack-Fill Standard

The FDCA prohibits the "adulteration or misbranding of any food . . . in interstate commerce." 21 U.S.C. § 331(b). Section 343(d) of the FDCA in turn provides that "[a] food shall be deemed to be misbranded—[i]f its container is so made, formed, *or filled as to be misleading*." 21 U.S.C. § 343(d) (emphasis added). The FDCA's express preemption provision incorporates Section 343(d). *See* 21

U.S.C. § 343-1(a)(3). Like Section 343(d), the slack-fill regulation on which both sides rely provides that "a food shall be deemed to be misbranded if its container is so . . . filled as to be misleading." 21 C.F.R. § 100.100.

The regulation, however, further describes when and what type of slack-fill violates the FDCA's relevant prohibition. Specifically, "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading *if it contains nonfunctional slack-fill*." 21 C.F.R. § 100.100(a) (emphasis added). As a general matter, "slack-fill" is defined as "the difference between the actual capacity of a container and the volume of product contained therein." *Id*. "Nonfunctional slack-fill" is defined as "the empty space in a package that is filled to less than its capacity for reasons other than" (1) protection of the contents of the package; (2) requirements of the machines used to enclose the contents in the package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the food is packaged in a reusable container with empty space as part of the presentation of the food; and/or (6) the inability to increase the fill level or reduce the package size. *Id*. § 100.100(a)(1)–(6).

In view of the federal slack-fill regulation, a plaintiff whose claims rest on the contention that a defendant has misleadingly filled "a container" must plausibly allege that the slack-fill is nonfunctional. Thin allegations that merely recite the elements of the regulation will not suffice. *See Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541 (NRB), 2018 WL 3650015, at *9–10 (S.D.N.Y. Aug. 1, 2018); *Alce v. WiseFoods, Inc.*, 2018 WL 1737750, *7 (S.D.N.Y. Mar. 27, 2018); *Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *4 5 (N.D. Ill. Feb. 28, 2018); *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 190 (S.D.N.Y. 2016). As one court has explained, the "'doors of discovery' are not unlocked 'for a plaintiff armed with nothing more than conclusions'" about

nonfunctional slack-fill.  *Daniel*, 2018 WL 3650015, at *9 (citation omitted).  To be clear, this inquiry whether a plaintiff's allegations plausibly show a violation of the federal slack-fill regulation is a result of Congress's decision to establish uniform standards for food labeling, including with respect to allegedly misleading fill—not from a purported judicial "disfavor" of slack-fill claims, as Defendants argue in reply without any support.  (ECF No. 16 at 4.)

### b.  Plaintiffs' Claims Plausibly Show Nonfunctional Slack-fill

Pointing to several cases in which federal courts found "bare bones" and "formulaic" recitations of the regulation insufficient to show a violation of the federal slack-fill standard, Defendants contend that all Plaintiffs' claims must be dismissed because Plaintiffs fail to offer factual allegations which show that the alleged underfilling—*i.e.*, slack-fill—is "nonfunctional."  (ECF No. 14-1 at 7.)  More specifically, Defendants argue that Plaintiffs have not provided factual allegations which show that the slack-fill is not the result of unavoidable product settling and an inability to increase the fill level and thus Plaintiffs' state law claims are preempted.  (*Id.*)  However, Plaintiffs offer far more than the boilerplate or formulaic allegations about "nonfunctional slack-fill" in the Halo Top pints at issue for each provision of the regulation Defendants identify.

### i.  Inability to Increase Level of Fill

Irrespective of any comparison Plaintiffs make to the alleged adequate filling of pints produced and sold by other major ice cream makers, the FAC contains sufficient allegations which plausibly show that the alleged slack-fill in Halo Top pints is not due to Defendants' alleged inability to increase the fill level.  For one, the FAC alleges that Eden Creamery has machines that are capable of providing full pints of ice cream and Eden Creamery has in fact provided full pints of ice cream on other occasions, including to some Plaintiffs.  (FAC ¶¶ 88, 90–92, 95.)  Second, the FAC

includes photographs of allegedly underfilled Halo Top pints for which the Court can readily conclude that the level of fill could be increased. (*Id.* ¶¶ 52, 56, 59, 83, 85.) Contrary to Defendants' confounding and cursory assertion that these photographs are "irrelevant," (ECF No. 16 at 4), the photographs offer the strongest support for Plaintiffs' contention that the level of fill can be increased. Jumping past the pleadings, Defendants contend that there is simply no way to increase the level of fill in Halo Top pints because, as a factual matter, all Halo Top pints "are full at the time they are manufactured." (ECF No. 14-1 at 8; ECF No. 16 at 3–4 & n.2.) This argument is plainly based on factual matter outside the pleadings and it therefore fails under the standard of review that governs at this stage. Plaintiffs have sufficiently alleged that the underfilled pints are not attributable to an inability of Eden Creamery to increase the level of fill.[5]

### ii. Unavoidable Settling During Shipping and Handling

Defendants also argue that "Plaintiffs fail to provide facts suggesting that Eden Creamery could avoid potential melting and refreezing of the products by third parties" and thus Plaintiffs' claims are preempted. (ECF No. 14-1 at 8; ECF No. 16

---

[5] Defendants argue in the concluding footnote of their slack-fill preemption argument that Plaintiffs' claims are also preempted under the FDCA's allowance under 21 U.S.C. § 343(e) for "reasonable variations" as to the "quantity of the contents" of a product. (ECF No. 14-1 at 9 n.7.) Defendants point to a federal regulation that allows for "reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice[.]" 21 C.F.R. § 101.7(q). According to Defendants, the alleged underfill in Halo Top pints "is within the federally allowable variation for a pint measurement." (ECF No. 14-1 at 9 n.7.) Much like the Court "do[es] not expect to find 'elephants in mouseholes,'" *Gallo v. Moen Inc*., 813 F.3d 265, 269 (6th Cir. 2016) (citation omitted), the Court does not expect to find dispositive arguments in footnotes. Here, the Court easily rejects Defendants' footnote argument. Even accepting that federal law permits reasonable variations in the circumstances Defendants identify, the FAC includes photographs of allegedly underfilled pints that simply do not show "reasonable variations" in fill. (*See* FAC ¶¶ 56, 83, 85.)

at 3.)  Defendants' "unavoidable settling" argument largely rests on a factual premise central to Defendants' motion to dismiss—that all pint-sized containers of Halo Top ice cream are full when made.  (ECF No. 14-1 at 8; ECF No. 16 at 3.)  Anchored in this premise, Defendants contend that any Halo Top pint-sized container with less than a full pint is necessarily a result of melting and freezing of ice cream that occurs when third party distributors handle Halo Top pints.  (ECF No. 14-1 at 8; ECF No. 16 at 3.)  Defendants' argument does not measure up at this stage.

Plaintiffs' allegations do not concern alleged melting and refreezing, but rather attribute alleged underfilling to Eden Creamery.  Plaintiffs allege that Eden Creamery produces Halo Top ice cream pints.  (FAC ¶¶ 18, 29.)  And Plaintiffs further allege that Eden Creamery fails to fully fill a number of Halo Top pints.  (*Id.* ¶¶ 3–4, 45, 88, 102.)  These allegations undermine Defendants' argument that Plaintiffs' claims are preempted on the basis of "unavoidable settling during shipping and handling."

The Court, however, acknowledges that the product at issue is ice cream.  As a matter of common sense, ice cream may "settle" by melting.  It is therefore understandable that Defendants offer melting and refreezing as a reason for allegedly underfilled Halo Top pints.  But notwithstanding this common-sense proposition, the slack-fill regulation asks whether the settling is "unavoidable."   21 C.F.R. § 100.100(a)(2).  Focused on the relevant inquiry under the slack-fill regulation's plain language, the FAC offers allegations that plausibly show that alleged slack-fill in Halo Top pints is not the consequence of "*unavoidable* settling during shipping and handling."

Central to the Court's conclusion are the FAC's allegations regarding standardized statements Halo Top customer representatives made to several Plaintiffs, from which the FAC quotes verbatim.  (FAC ¶¶ 53–54, 57–58, 62, 67–68,

– 19 –

70–72, 76, 79–80, 86, 105–06.)   As an initial matter, the alleged statements do contend that Eden Creamery has "more distribution points" since Halo Top does not own its own ice cream trucks and, as a result, there may be temperature fluctuations in the trucks of some third-party distributors that may cause settling.  (*Id*. ¶¶ 53–54, 57–58, 62, 67–68, 70–72, 76, 79–80, 86, 105–06.)   Whether the content of these statements is accurate or not as a factual matter, the statements plausibly show that settling from melting and refreezing due to truck temperature fluctuations is not "unavoidable."  According to the standardized responses, Eden Creamery is "working on using only the best of our trucking partners," "getting our own trucks," and "[g]etting rid of this issue is number one on our priority list."  (*Id*. ¶¶ 53–54, 57–58, 62, 67–68, 70–72, 76, 79–80, 86, 105–06.)   A Halo Top customer representative allegedly told Plaintiffs Cox and Lichten that "we're actively working on finding a permanent solution to this issue."  (*Id*. ¶¶ 72, 93, 105.)  These alleged statements, if true, plausibly show that there are means to avoid settling during shipping and distribution that purportedly results from melting and refreezing.

\*   \*   \*

In short, Plaintiffs allege conduct that, if true, violates the federal slack-fill standard.[6]   Plaintiffs' state law claims in turn rely on state law duties that are

_____

[6] The Court rejects two other purportedly dispositive and related arguments Defendants consign to footnotes.  Defendants assert that "Plaintiffs' claims are barred by the safe harbor doctrine," because "Eden Creamery's labels comply with federal law."  (ECF No. 14-1 at 6 n.4.)  The "safe harbor doctrine" is a California state law doctrine under which challenged conduct that is affirmatively permitted by statute cannot be the basis of a UCL, CLRA, or FAL claim.  *Ebner v. Fresh, Inc*., 838 F.3d 958, 963 (9th Cir. 2016).  Defendants do not explain in their opening brief how their labels comply with federal law such that they fall within the safe harbor doctrine argument.  The Court's slack-fill analysis, however, renders this argument unavailing.

In their reply brief, Defendants argue in a related vein that Plaintiffs' claims

consistent with the federal standard. As such, the Court rejects Defendants' argument that the FDCA preempts Plaintiffs' claims at this stage. Because the Court's conclusion is based on the pleadings, Defendants are not precluded from raising their preemption arguments at a later stage, based on whatever evidence may come to light during discovery.

## C. Common Law Fraud

Plaintiffs Kamal, Neely, and Lichten assert a common law fraud claim against both Defendants for alleged (1) false and intentional "material misrepresentations and omissions" that the Halo Top pint containers contained a full pint of ice cream "contained on the pint containers," "in correspondence," and "in various public and social media and statements by Defendants directed to consumers," and (2) misrepresentations to Plaintiffs in the alleged responses from Halo Top representatives regarding low fill. (FAC ¶¶ 134–40.)

Defendants move to dismiss on the ground that Plaintiffs' allegations do not satisfy all elements of a fraud claim under California law. (ECF No. 14-1 at 13–14.) Irrespective of the elements of a fraud claim, Defendants also argue that the "economic loss rule" bars Plaintiffs' fraud claim entirely because the claim "improperly recasts an alleged breach of warranty as a fraud claim." (*Id*. at 15–16.) The Court considers and rejects each argument.

---

are preempted because Defendants include pint labels to comply with 21 C.F.R. § 101.7(a)'s net quantity statement requirement. (ECF No. 16 at 4 n.1.) The Court could very well disregard this argument raised for the first time in a reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (observing that a "district court need not consider arguments raised for the first time in a reply brief."). In any event, the defect in this argument is that any "net quantity" statement is not accurate for underfilled pints. Plaintiffs' claims are not inconsistent with the regulation.

## 1. Sufficiency of Plaintiffs' Fraud Allegations

"The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp*., 102 P.3d 268, 274 (Cal. 2004). Rule 9(b) in turn requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys*., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). "[A] pleading satisfies the particularity requirement of [Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987).

Defendants contend that Plaintiffs' fraud claims must be dismissed for (1) failure to plausibly allege a misrepresentation, (2) failure to allege intent to defraud, and (3) failure to allege reliance. (ECF No. 14-1 at 12–15.) Because Defendants' second argument collapses into the first, the Court does not separately address it. The Court rejects Defendants' contentions.

### a. Alleged Misrepresentations

"[T]o qualify as a misrepresentation, the complaint must allege facts sufficient to plausibly establish that the statement was false when made." *Muse Brands, LLC v. Gentil*, No. 15-cv-01744-JSC, 2015 WL 4572975, *4 (N.D. Cal. July 29, 2015) (citing *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994)). A plaintiff

cannot rest a claim of fraud on a statement that later turned out not to be true, but rather must plead and show that an alleged statement was false or misleading when made. *See In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1421 (N.D. Cal. 1995). The two sets of alleged misrepresentations at issue in this case concern the (1) pint label and pint-sized container and (2) statements by Halo Top customer representatives.[7] Defendants argue that Plaintiffs fail to plausibly plead that these alleged misrepresentations were false when made. (ECF No. 14-1 at 13–14.) The Court disagrees.

**Pint Label.** Defendants first argue that Plaintiffs do not provide any facts suggesting that Halo Top pints "were under-filled at the time they were manufactured" and, instead, suggest that underfilling "resulted from alleged handling by third parties." (ECF No. 14-1 at 13.) More bluntly, Defendants contend that Plaintiffs cannot plead or prove that the pint label was false because "Defendants 'pint' labels were accurate when the products were manufactured[.]" (ECF No. 16 at 6.) Based on this factual assertion, Defendants contend that Plaintiffs improperly seek to show that the Halo Top pint label was intentionally false based on a state of affairs that occurred after manufacture, namely underfilled pints attributable to third party conduct. (ECF No. 14-1 at 14.) The Court rejects these arguments at this stage.

As the Court has already discussed in its preemption analysis, Plaintiffs have plausibly alleged underfilling of Halo Top pints by Eden Creamery. (FAC ¶¶ 3–4, 18, 29, 45, 88, 102.) Consequently, Plaintiffs have plausibly pleaded that pint labels

---

[7] Plaintiffs' fraud claim nominally refers to alleged omissions. (FAC ¶¶ 134–40.) And Plaintiffs' opposition brief quotes to the standard applicable to fraud by omission claims under Rule 9(b). (ECF No.1 5 at 5.) The FAC, however, does not describe any omissions. To the extent Plaintiffs believe their fraud claim concerns omissions, they have failed to plead as much and thus any fraud by omission claim is dismissed.

on the allegedly underfilled pints were false when manufactured. Plaintiffs have also provided sufficiently detailed allegations regarding their reliance on the pint labels of the underfilled Halo Top pints as well as when and where they purchased the pints. (*Id*. ¶¶ 48–59.) Consistent with Rule 9(b), these allegations provide Defendants with sufficient notice of the charged conduct, including why the alleged pint label was false. At this stage, Defendants cannot rely on factual matter outside the pleadings to show that the labels were accurate when the pints were manufactured. Accordingly, the Court rejects Defendants' dismissal arguments against the pint label representation.

***Customer Service Representative Statements.*** Defendants further challenge Plaintiffs' fraud claim based on alleged misrepresentations by Halo Top customer representatives on the ground that Plaintiffs "include no facts suggesting that the statements were false when made." (ECF No. 14-1 at 13.) Defendants contend, once more, that Plaintiffs point only to later inconsistent statements or conditions to show falsity. (*Id.*) The Court is not persuaded.

California Plaintiffs Neely and Lichten provide allegations of statements made by Halo Top customer representatives when these plaintiffs contacted Eden Creamery about allegedly underfilled pints these Plaintiffs had purchased. (FAC ¶¶ 53–54 (April 2018 statement by representative "Joe" to Plaintiff Neely), 57–58 (January 2017 statement by representative "Joshua Wu" to Plaintiff Lichten).) The alleged statements, quoted verbatim, are standardized responses that attribute alleged underfilling to melting and refreezing during the distribution process. (*Id.* ¶¶ 53–54, 57–58.) Plaintiffs' allegations readily satisfy Rule 9(b) and plausibly show misrepresentations. Because the Court has found that Plaintiffs have plausibly alleged that Eden Creamery underfills Halo Top pints, including at the time of the alleged pint label representations, it follows that a standardized statement from Eden

Creamery representatives attributing underfilling to third parties is plausibly false. The alleged statements also indicate that Eden Creamery is "actively working" on addressing melting and refreezing that occurs as a result of temperature issues in the trucks of Eden Creamery's distributors. (*Id.* ¶¶ 53–54, 57–58.) Plaintiffs contend that these statements were false because consumers continue to receive allegedly underfilled Halo Top pints all while Halo Top consumers who complain continue to receive the same standardized response that Halo Top is working on the issue. The Court is persuaded that the standardized statements from Eden Creamery representatives are plausibly false with respect to these additional representations. The provision of the standardized form response suggests Eden Creamery's knowledge of the issue of alleged underfilling is not isolated and points to a decision to provide a uniform response to consumers who complain. Here, Plaintiffs allege that Woolverton approved the statement. (*Id.* ¶ 26.) The ultimate question whether the alleged standardized response is false is best resolved through discovery, not on a Rule 12(b)(6) motion.

### b.  Alleged Reliance

Defendants argue that Plaintiffs fail to allege that they actually relied on alleged misrepresentations. (ECF No. 14-1 at 14–15; ECF No. 16 at 7.) A "plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance." *Cadlo v. Owens-Illinois, Inc*., 23 Cal.Rptr.3d 1, 5 (Cal. Ct. App. 2004). The sole basis for Defendants' reliance challenge is Defendants' contention that Plaintiffs offer only a collective allegation of reliance. (ECF No. 14-1 at 14 (citing FAC ¶ 47); ECF No. 16 at 7 (citing FAC ¶ 47).) Thus, Defendants contend that Plaintiffs have not offered specific allegations of actual reliance. It is true that Plaintiffs plead a collective allegation of reliance. (FAC ¶ 47.) If this collective allegation were the only thing alleged, then Defendants' argument might be availing. But Plaintiffs also allege the specifics of their purchases of

allegedly underfilled Halo Top pints. (FAC ¶¶ 49, 51–52, 55–56, 59.) Plaintiffs Neely and Lichten offer specific allegations that they complained to Halo Top representatives when they discovered that the pints they purchased were underfilled. (*Id.* ¶¶ 53, 57–58.) Lichten further alleges that he made another purchase of allegedly underfilled pints after communicating with a Halo Top representative who attributed underfilling to non-Eden Creamery forces. (*Id.* ¶ 58.) Against this backdrop, it bears noting that the alleged pint label appears prominently on Halo Top pints as well. (*Id.* ¶ 33.) When coupled with the collective allegation, these specific allegations regarding Plaintiffs' purchases of allegedly underfilled pints plausibly plead that Plaintiffs actually relied on the alleged misrepresentations in the pint labels and the Halo Top customer representative statements. Accordingly, the Court rejects Defendants' actual reliance argument.

## 2. The Economic Loss Rule Does Not Bar Plaintiffs' Fraud Claims

Defendants argue that Plaintiffs seek to "improperly recast" as a fraud claim what is properly a breach of implied warranty claim, a type of claim that arises from a contract. (ECF No. 14-1 at 15–16.) Defendants anchor this argument in the economic loss rule, a rule that "generally bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.'" *UMG Recordings, Inc. v. Global Eagly Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (quoting *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009)). The Court, however, swiftly disposes of Defendants' argument. "Notwithstanding the economic loss rule, courts in California have allowed misrepresentation claims to proceed." *Augustine v. Talking Rain Bev. Co.*, No. 18-cv-2576-CAB-BGS, —F. Supp. 3d—, 2019 WL 1590469, at *9 (S.D. Cal. Apr. 12, 2019) (citations omitted) (permitting negligent misrepresentation claim pertaining to defendant's alleged misrepresentations in connection with defendant's product to proceed past motion to dismiss stage); *Young v. Neurobrands*, *LLC*, No. C

18-05907 JSW, 2019 U.S. Dist. LEXIS 67905, at *16 (N.D. Cal. Feb. 19, 2019). Courts have similarly allowed fraud claims to proceed. In line with these courts, the Court finds that dismissal of Plaintiffs' fraud claim is not warranted. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' fraud claims under the economic loss rule.

## D.     California UCL, CLRA, and FAL Claims

The gravamen of Plaintiffs' suit lies in their contention that Defendants' labeling, advertising, and marketing of Halo Top pints is deceptive and misleading when Halo Top pints are underfilled. "In order to protect its citizens from unfair, deceptive or fraudulent business practices California has enacted a number of consumer protection statutes." *Augustine*, 2019 WL 1590469, at *6. Plaintiffs Kamal, Neely, and Lichten seek to avail themselves of the statutory protection under California's UCL, CLRA, and FAL. (FAC ¶¶ 120–33.)[8] Defendants argue that Plaintiffs fail to allege conduct by Defendants that violates the statutes. (ECF No. 14-1 at 17–21; ECF No. 16 at 7–8.)[9] The Court disagrees.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. A plaintiff can assert a separate and

_____

[8] Plaintiffs Kamal, Neely, and Lichten's UCL claim incorporates claims under the FAL. (FAC ¶ 121.) Although Plaintiffs assert a separate cause of action for violation of the CLRA, Plaintiffs' UCL claim incorporates in their UCL unlawful prong and unfair prong claim the same CLRA provisions on which Plaintiffs rely in their separately alleged CLRA claim. (*Compare id. with id*. ¶¶ 124–33.)

[9] Defendants also argue that the economic loss rule bars Plaintiffs' statutory UCL and CLRA claims. (ECF No. 14-1 at 18–19.) This argument parrots Defendants' dismissal argument against Plaintiffs' fraud claim, which the Court rejected. (*Id.*) The Court similarly rejects Defendants' argument in the context of Plaintiffs' UCL and CLRA claims.

distinct theory of liability under each of the three prongs.  *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 731 (9th Cir. 2007).  Although Plaintiffs Kamal, Neely, and Lichten raise claims under each UCL prong, their claims reduce to a common contention that Defendants' conduct violates California Civil Code §§ 1709 through 1711, three provisions of the CLRA, Cal. Civ. Code §§ 1770(a)(5),(a)(7), (a)(9), and the FAL, Cal. Bus. & Prof. Code § 17500 *et seq*.—statutory provisions that prohibit fraud and deceit, including in the specific context of consumer goods and marketing and advertising.  (FAC ¶ 121.)  Assessment of the sufficiency of Plaintiffs' claims therefore redounds to the common standard that applies to alleged violations of the FAL, CLRA, and, by extension, the UCL fraudulent prong.[10]  The Court will not separately analyze each and every UCL prong for this reason.

The false advertising law prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. and Prof. Code § 17500.  "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public . . . ."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted). The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a

---

[10] Because Plaintiffs' UCL, CLRA, and FAL claims sound in fraud, Rule 9(b)'s heightened pleading requirements apply to their state law statutory claims and thus Plaintiffs must lay out what is false or misleading about a statement, and why it is false.  *See Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citing *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126–27 (9th Cir. 2009); *Wilson v. Frito-Lay N. Am., Inc*., No. 12-1586 SC, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013)).  The Court, however, has already addressed why Plaintiffs' allegations satisfy Rule 9(b) in its analysis of their California common law fraud claims, which is premised on the same alleged conduct.  Accordingly, the Court does not separately address Rule 9(b) in its analysis of these claims.

transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Generally, a violation of the FAL or the CLRA is also a violation of the fraudulent prong of the UCL." *Hadley*, 243 F. Supp. 3d at 1089 (citing *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)). Courts analyze claims under the FAL, CLRA, and the fraudulent prong of the UCL together "because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014).

UCL, CLRA, and FAL claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (citation omitted)); *Augustine*, 2019 WL 1590469, at *6. This test requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citation omitted)). Conduct is not "false and deceptive merely because [it] may be 'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons . . .' that may purchase the product." *Ebner v. Fresh, Inc*., 838 F.3d 958, 966 (9th Cir. 2016) (quoting *Davis v. HSBC Bank Nev., N.A*., 691 F.3d 1152, 1162 (9th Cir. 2012)). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotations omitted).

"[W]hether a practice is 'deceptive, fraudulent, or unfair' is generally a question of fact that is not appropriate for resolution on the pleadings." *Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013). "However, in

certain instances, a court can properly make this determination and resolve claims based on its review of the product packaging." *Brown v. Starbucks Corp*., No. 18cv2286 JM (WVG), 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (quoting *Pelayo v. Nestle USA, Inc*., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)).

Plaintiffs have plausibly shown that a reasonable consumer purchasing a Halo Top pint would expect that the pint would contain a full pint of ice cream. The ice cream comes in a pint-sized container, the label on the container refers to calories per pint, Defendants' website refers to Halo Top pints, and Defendants' advertising and marketing otherwise focuses on the pint-size of Halo Top pints. (FAC ¶¶ 1, 33–34, 36–39, 43.) Plaintiffs have also alleged that there are consumers who do not receive a full pint due to underfilling and this underfilling is known to Defendants. (*Id*. ¶¶ 3–6, 43, 45–47, 52, 56, 59, 61, 66, 75, 78, 81, 83, 85.) At this stage, Plaintiffs have plausibly alleged violations of the UCL, FAL, and CLRA based on this conduct.

As Plaintiffs observe, Defendants conspicuously do not argue that if Halo Top pints are underfilled for reasons attributable to Eden Creamery, then Plaintiffs would be unable to state claims for misleading and deceptive labeling, advertising, and marketing under the UCL, FAL, and CLRA for underfilled pints. Instead, Defendants' dismissal arguments against Plaintiffs' UCL, FAL, and CLRA claims are fundamentally merits arguments that the Court has already rejected, and which necessarily fail here too. For one, Defendants argue that Plaintiffs' UCL, FAL, and CLRA claims must be dismissed because Plaintiffs have failed to plead false statements and actual reliance. (ECF No. 14-1 at 19.) The Court, however, has already rejected these arguments in its analysis of Plaintiffs' common law fraud claim. Second, Defendants argue that Plaintiffs improperly seek to hold Defendants liable for third party conduct. (ECF No. 14-1 at 17–18.) As the Court has already discussed, this is a merits argument not appropriate for resolution at this stage.

Accordingly, the Court denies Defendants' motion to dismiss the UCL, FAL, and CLRA claims on these grounds.

### E. California State Law Claims Against Woolverton

Plaintiffs allege each of their California state law claims against Eden Creamery's founder and CEO, James Woolverton. (FAC ¶¶ 120–40.) Defendants strenuously object to Plaintiffs' assertion of claims against Woolverton on the ground that California law does not permit Plaintiff to hold Woolverton liable "in his individual capacity" merely because he is a corporate executive of Eden Creamery. (ECF No. 14-1 at 9–11; ECF No. 16 at 4–5.) According to Defendants, Plaintiffs fail to offer factual allegations which show Woolverton's involvement in the challenged conduct and thus Plaintiffs' fraud claim and statutory UCL, FAL, and CLRA claims must be dismissed against Woolverton.

"Under California law, the corporate form insulates the corporation's officers, . . . from certain (but not all) liability in their role with the corporation[,]" specifically, "'. . .liability for corporate contracts[.]'" *O'Connor v. Uber Technologies, Inc*., No. C-13-3826 EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (quoting *Frances T. v. Vill. Green Owners Ass'n*, 723 P.2d 573, 583 (Cal. 1986)). The corporate form, however, does not apply to liability for an officer's own tortious conduct. *Frances T*., 732 P.2d at 583. Accordingly, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. C*o., 173 F.3d 725, 734 (9th Cir. 1999) (citation omitted). Cases in which corporate officers have been held personally liable "have typically involved instances where the defendant was the 'guiding spirit behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity.'" *Wolfe Designs, Inc. v. DHR & Co*., 322 F. Supp. 2d

1065, 1072 (C.D. Cal. 2004) (citing *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 n.10 (9th Cir. 1989)). Although a lesser showing of direct participation or active and personal involvement will suffice, "mere knowledge of alleged wrongful acts is insufficient for liability.'" *Consumerinfo.com, Inc., v. Chang*, No. CV 09-3783-VBF(MANx), 2009 WL 10673337, at *3 (C.D. Cal. Dec. 31, 2009) (citing *Wolfe Designs*, 322 F. Supp. 2d at 1072). Similarly, a corporate officer is not liable simply because of the officer's official position, unless the officer participates in the alleged misconduct. *See O'Connor*, 2013 WL 6354534, at *18 (citing *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 775 (Cal. 1970)). "[A]n owner or officer of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice." *Id.* (citation omitted).

Despite Defendants' extended discussion of California principles of liability for corporate executives, Defendants fail to apply the principles to the FAC's allegations regarding Woolverton. (*Compare* FAC ¶¶ 20–26 *with* ECF No. 14-1 at 9–10 *and* ECF No. 16 at 4.) Properly focused on the FAC's allegations regarding Woolverton, Plaintiffs have alleged Woolverton's participation in the alleged misconduct sufficient for the claims against him to survive Defendants' motion.

Plaintiffs allege that Woolverton exercises oversight over production and product distribution, "including control over whether the Company underfills its pint." (FAC ¶ 22.) Plaintiffs further allege that Woolverton exercises control over Eden Creamery's marketing and advertising strategy. (*Id.* ¶ 24.) If this were all the FAC alleged, the Court would agree with Defendants. But Plaintiffs move beyond mere allegations of control and oversight. Woolverton is not just any corporate officer. He allegedly "started what is now Halo Top in his home in Los Angeles in 2011." (*Id.* ¶ 21.) Plaintiffs allege that, as the founder and CEO, Woolverton is "intimately involved in the day-to-day operations of the Company since its

founding[.]" (*Id.* ¶ 22.)  Most critically, Plaintiffs allege that Woolverton "gave final approval" to the design and language found on each Halo Top pint container label as well as the statements and photographs of pints used on the Company's website and its social media sites.  (*Id.* ¶¶ 23, 25.)  And Plaintiffs further allege that Woolverton reviewed and approved the standardized statements that were ultimately disseminated by Halo Top customer representatives to Plaintiffs and other consumers who complained about underfilled pints.  (*Id.* ¶ 26.)  Assuming the truth of these allegations, Plaintiffs have alleged personal participation in the alleged misconduct by Woolverton that suffices for Plaintiffs to proceed with their California state law claims against him.  Whether Plaintiffs are ultimately able to prove their allegations in order to hold Woolverton liable is a matter best resolved through discovery, not on the present motion to dismiss.

## F.    Other States Consumer Protection Laws

Defendants seek to dismiss claims under other the consumer protection statutes for Arizona, Colorado, Illinois, Nevada, New Jersey, and New York, raised by Plaintiffs who allege that they purchased Halo Top pints in these states.  (ECF No. 14-1 at 23.)  The primary basis on which Defendants seek dismissal of claims under these statutes stems from Defendants' contention that the FAC fails to plausibly plead a misrepresentation or deceptive act attributable to Defendants that harmed Plaintiffs.  (*Id.* at 23–24.)  This argument fails for reasons the Court has concluded that Plaintiffs have stated claims under California law for violations of the UCL, FAL, and CLRA— all of which require a showing substantially to the showing required under the other state consumer protection statutes.  Defendants otherwise seek dismissal based on certain features unique to the various statutes.

***Arizona Consumer Fraud Act.***  Plaintiff Ashley Petefish raises a claim under the Arizona Consumer Fraud Act, ("ACFA"), A.R.S. § 12-541(5).  (FAC ¶¶ 14, 64–

68, 141–49.)  To state an ACFA claim, a plaintiff must: (1) the defendant made a false promise or misrepresentation (2) in connection with the sale or advertisement of a product, (3) that plaintiff relied on the representation, and (4) that plaintiff was harmed as a result.  *Lorona v. Arizona Summit Law Sch., LLC*, 188 F. Supp. 3d 927, 933 (D. Ariz. 2016).  The Court rejects Defendants' argument that Petefish's claim must be dismissed for failure to allege "any actual misrepresentation, causation, or reliance."  (ECF No. 14-1 at 23.)  The Court's analysis regarding the UCL, FAL, and CLRA equally applies here.

Defendants otherwise argue that the one-year statute of limitations period for ACFA claims, A.R.S. § 12-541(5), bars Petefish's ACFA claims.  (ECF No. 14-1 at 23.)  Petefish first asserted claims against Defendants on September 8, 2018 and thus Petefish may only pursue claims that occurred on or after September 8, 2017.  Petefish alleges that she began purchasing Halo Top ice cream in "late 2016."  (FAC ¶ 64.)  Any claims Petefish asserts for allegedly underfilled pints during this period up to September 8, 2018 are time-barred.   Petefish, however, also alleges that she purchased underfilled Halo Top ice cream pints in "late fall 2017" and "late April 2018."  (*Id.* ¶¶ 65–66.)  ACFA claims based on such purchases fall within the limitations period.  Defendants' motion to dismiss the ACFA claims based on the statute of limitations is therefore granted in part and denied in part.

***Colorado.***  Colorado Plaintiff Kinman raises a claim under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. State. § 6-1-101 *et seq.*  (FAC ¶¶ 12, 77–81, 150–59.)  The CCPA requires a showing that "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business . . . ; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the

challenged practice caused the plaintiff's injury." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1143 (D. Colo. 2013) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003)). "A deceptive trade practice under Colo. Rev. Stat. § 6-1-105 requires a showing that the defendant knowingly made a false representation that either 'induce[d] a party to act, refrain from acting, or ha[d] the capacity or tendency to attract consumers.'" *Id.* (quoting *Rhino Linings USA, Inc.*, 62 P.3d at 147)). For reasons the Court has already discussed, the Court rejects Defendants' argument that Kinman's CCPA claim must be dismissed for failure to "sufficiently allege any misrepresentation, fraudulent intent, or causation." (ECF No. 14-1 at 23.) The Court further rejects Defendants' cursory argument that the economic loss rule also bars Kinman's CCPA claim. As even Defendants' sole authority for this argument shows, the rule only bars claims "based on duties that [are] not independent of" a contract with the defendant. *Nero v. Am. Family Mut. Ins. Co.*, No. 11-cv-02717-PAB-MJW, 2013 WL 5323147, at *6 (D. Colo. Sept. 23, 2013). Kinman does not allege a contract claim, nor is his CCPA claim dependent on any contract with Defendants.

**Illinois.** Illinois Plaintiff Brown raises claims under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA"), 815 Ill. Comp. Stat. Ann. 505 *et seq.*, for which she requests monetary and non-monetary relief. (FAC ¶¶ 15, 82–83, 160–70.) Defendants raise three arguments against Brown's claim, two of which the Court rejects. First, the Court rejects Defendants' argument that Brown's claim must be dismissed for failure to "sufficiently allege any misrepresentation, fraudulent intent, or reliance." (ECF No. 14-1 at 24.) The elements of an ICFDPA claim are: "(1) a deceptive act or practice; (2) an intent by defendants that the plaintiff rel[y] on the deception; and (3) that the deception occurred in the course of conduct involving a trade and commerce." *In re Albergo*, 656 N.E.2d 97, 105 (Ill. App. Ct. 1995). Brown has adequately alleged these elements for reasons the Court has already

discussed. Second, the Court rejects Defendants' argument that Brown improperly seeks to hold Eden Creamery secondarily liable. Defendants argue that "Eden Creamery cannot be liable under the [ICFDPA] because a defendant cannot be held 'secondarily liable' for the acts of third parties." (ECF No. 14-1 at 24 (citing *In re Laverdue*, 399 B.R. 310, 314 (Bankr. N.D. Ill. 2008)).) Defendants' argument fails because the FAC contains extensive allegations that show direct conduct by Eden Creamery.

Finally, Defendants argue that Brown's claims for damages under the ICFDPA must be dismissed because such relief is unavailable. Defendants are correct. The only relief available under the ICFDPA is injunctive relief. *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 1000 (N.D. Cal. 2010) (citing *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1036 (Ill. App. Ct. 1990)). Thus, the Court dismisses Brown's ICFDPA claim solely insofar as she requests monetary damages.

***Nevada Deceptive Trade Practices Act***. Defendants move to dismiss any claim by Nevada Plaintiff Jacobson for violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. Ann. §§ 598.0903–598.0999, on the ground that there is no private cause of action available under the statute except for elderly or disabled persons. (ECF No. 14-1 at 25.) Defendants are correct. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 163 (E.D. Pa. 2009) ("[D]efendants argue that the [NDTPA] grants a cause of action only to elderly or disabled persons. The defendants are correct. The only provision of this Act providing for a private civil action is limited to suits by 'an elderly person or a person with a disability.'" (citing Nev. Rev. Stat. Ann. § 598.0977)). Plaintiff Jacobson is the only plaintiff who resides in Nevada and alleges that he purchased Halo Top pints in Nevada. (FAC ¶ 13.) Although he raises an NDTPA claim, (*id.* ¶¶ 84–87, 171–79), Jacobson fails to provide any allegations showing that he may pursue a private NDTPA claim.

Accordingly, his NDTPA claim is dismissed with leave to amend for this reason.

*New Jersey*. Plaintiff Cox alleges a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1. (FAC ¶¶ 10, 73, 180–88.) To state a claim under the NJCFA, "a plaintiff must allege three elements: (1) unlawful conduct"; (2) "an ascertainable loss"; and (3) "a causal relationship between the defendant's unlawful conduct and the plaintiffs' ascertainable loss.*" Int'l Union of Operating Eng. Local No. 68 Welfare Fund v. Merck & Co., Inc*., 929 A.2d 1076, 1086 (N.J. 2007) (internal quotation marks omitted). For reasons the Court has discussed, the Court rejects Defendants' argument that Cox "fail[s] to allege any fraudulent conduct by Defendants" that is actionable under the statute. (ECF No. 14-1 at 24.)

The Court also rejects Defendants' argument that Cox cannot satisfy the ascertainable loss requirement of an NJCFA claim because "Eden Creamery provides replacement products." (ECF No. 14-1 at 24.) The ascertainable loss requirement under the NJCFA cannot be met if the plaintiff has been compensated by the defendant for an alleged loss. *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 251 (2005). In April 2017, after she purchased 10 pints at $5 per pint each allegedly "at most half-filled," Cox alleges that a Halo Top representative provided her with a coupon for four pints. (FAC ¶ 71.) The coupon was rejected. (*Id*.) Thus, Cox has not been compensated for the alleged loss she suffered from purchasing an allegedly underfilled pint and she has satisfied the ascertainable loss requirement at this stage. *See Chernus v. Logitech, Inc*., No. 17-673(FLW), 2018 WL 1981481, at *13 (D.N.J. Apr. 27, 2018).

*New York.* New York Plaintiffs Cox and Tovar assert claims under the N.Y. Gen. Bus. Law ("GBL") § 349 *et seq.* on behalf of a nationwide class or an alternative

multi-state class. (FAC ¶¶ FAC ¶¶ 10–11, 60–72, 74–76, 84–87, 189–95.) "To state a claim under Section 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Wright v. Publrs. Clearing House, Inc*., 372 F. Supp. 3d 61, 66 (E.D.N.Y. 2019) (quoting *Koch v. Acker, Merrall & Condit Co*., 967 N.E.2d 675, 675 (N.Y.2012)). Plaintiffs satisfy these requirements and, consequently, the Court rejects Defendants' argument that "Plaintiffs fail to allege any misleading statements or causation." (ECF No. 14-1 at 25.) The Court otherwise rejects Defendants' cursory and undeveloped arguments that the New York statutory claims fail because alleged underfilling is "caused by third parties" and "the claim amounts to nothing more than a breach of warranty." (*Id*.)

### G.    Nationwide Class Claims for State Consumer Protection Statutes

All Plaintiffs' state law claims are asserted on behalf a nationwide class as well as a single-state subclass corresponding to a given state of a named plaintiff. (FAC ¶¶ 120–195.) Defendants seek dismissal of Plaintiffs' nationwide class action claims raised under the California, Arizona, Colorado, Illinois, Nevada, New Jersey, and New York consumer protection statutes. (ECF No. 14-1 at 21–22 & n.16; ECF No. 16 at 9–10 & n.12.) According to Defendants, none of the statutes applies to conduct or individuals outside the respective state.

Defendants fail to provide authority for Arizona and Nevada and thus their argument cannot warrant dismissal of nationwide class claims asserted under the ACFA and NDTPA. As for the authorities Defendants have provided, it is clear to the Court that any nationwide class claims under the New York GBL must be dismissed. *See In re Frito-Lay N. Am., Inc. All Natural Litig*., 2013 WL 4647512, at *17 ("Sections 349 and 350 of the GBL, by their terms, apply only to transactions

occurring in New York State." (citing *Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *12 (S.D.N.Y. Dec.16, 2011)).  Thus, the Court dismisses any such claims from the FAC without leave to amend.  (*See* FAC ¶¶ 189–95.)

Defendants, however, have not shown that dismissal of other nationwide class claims is warranted.  Defendants' authorities regarding the California, Colorado, and Illinois statutes discuss only a presumption against extraterritorial application, the application of which appears to be a fact-intensive process.  *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315 (Ill. App. Ct. 2007); *Peerless Ins. Co. v. Clark*, 487 P.2d 574, 575 (Colo. App. 1971).  Defendants fail to present any arguments regarding how the presumption applies to Plaintiffs' factual allegations.  Defendants also cite a single New Jersey case for the general proposition that New Jersey law does not regulate conduct outside the state.  *See D'Agostino v. Johnson & Johnson*, 133 N.J. 516, 539 (N.J. 1993).  The case says nothing about New Jersey's consumer protection statute.  Given the paltry development of Defendants' arguments with respect to these state consumer protection statutes, the Court finds that resolution of this issue is best left for the class certification stage.  *See Alvarez*, 2017 WL 6059159, at *8 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012)).

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss the FAC.  (ECF No. 14.)  The Court **GRANTS** Defendants' motion as follows:

> 1.  Plaintiff Petefish's AFCA claims that pre-date September 8, 2017 are **DISMISSED WITH PREJUDICE** as barred by the applicable statute of limitations.

2. Plaintiff Brown's request for monetary relief under the ICFDPA is **DISMISSED WITH PREJUDICE** because such relief is not available.

3. Plaintiff Jacobson's NDTPA claim is **DISMISSED WITHOUT PREJUDICE**.  Jacobson is granted leave to amend **no later than July 10, 2019** to allege, with factual allegations, that he is among the class of persons that may assert an NDTPA claim.

4. The New York GBL claims asserted on behalf of a nationwide class are **DISMISSED WITH PREJUDICE**.  (FAC ¶¶ 189–95.) This ruling does not affect any such claims asserted on behalf of a New York single-state putative subclass.

5. Any fraud by omission claim is **DISMISSED**.  (FAC ¶¶ 134–40.)

The Court otherwise **DENIES** Defendants' motion.  Defendants **SHALL ANSWER** the FAC **no later than July 19, 2019**.  Given the length of time this case has been pending since the FAC was filed, the Court will not grant an extension of this deadline absent a particularized showing of extraordinary circumstances.

**IT IS SO ORDERED.**

**DATED:  June 26, 2019**

Hon. Cynthia Bashant
United States District Judge