THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN, #160562
BRIAN J. ELLSWORTH, #326756
501 West Broadway, Suite 1490
San Diego, CA  92101
Telephone: (619) 501- 6550
andrewb@thebrownlawfirm.com
brian@bjellsworth.com

*Attorneys for Plaintiffs Individually
and on Behalf All Others Similarly Situated*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUSSIF KAMAL, GILLIAN NEELY, RICHARD LICHTEN, SUSAN COX, NICK TOVAR, MICHELE KINMAN, ASHLEY PETEFISH and TERI BROWN, on their own behalf and on behalf of all others similarly situated, <br><br>                    Plaintiffs, <br><br>     vs. <br><br> EDEN CREAMERY, LLC, dba HALO TOP CREAMERY, and JUSTIN T. WOOLVERTON, <br><br>                    Defendants. | Case No.  18cv1298 BAS AGS <br><br> Assigned to the Hon. Cynthia Bashant and the Hon. Andrew Schopler <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date:  October 13, 2020 <br> Dept:  4B <br><br> **No Oral Argument Unless Requested By The Court** <br><br> Orig. Complaint Filed:  June 15, 2018 <br> Trial Date:  February 9, 2021 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................. 1

II.     FACTUAL BACKGROUND ................................................. 3

III.    LEGAL STANDARD ........................................................... 6

IV.     ARGUMENT ........................................................................ 7

    A.      The Rule 23(a) Requirements Are Satisfied ..................... 8

        1.      Numerosity .............................................................. 8

        2.      Commonality ........................................................... 8

        3.      Typicality ................................................................ 9

        4.      Adequacy of Representation .................................. 10

    B.      Rule 23(b)(2) and (b)(3) Are Also Satisfied in This Case................. 11

        1.      The Classes Should Be Certified Under Rule 23(b)(3) for Monetary Relief ......................................................... 11

            a.      Common Questions of Law and Fact Predominate ....... 11

                (1)     Defendants' Labels Present Predominating, Common Questions of Fact ................................. 12

                (2)     Plaintiffs' Damages Model Presents a Common Question of Fact Supporting Predominance......................................... 14

                (3)     Predominance Is Met for the California State Law Claims ................................................ 14

                (4)     Like the California Statutory Claims, Other State Law Claims Are subject to Common Proof......................................... 17

             b.      A Class Action Is Superior to Other Available Methods of Adjudication................................. 17

        2.      The Classes Should Be Certified Under Rule 23(b)(2) for Injunctive or Declaratory Relief................................. 18

    C.      The Classes Are "Ascertainable"....................................... 20

V.      CONCLUSION .................................................................. 21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allee v. Medrano,*
  416 U.S. 802 (1974) ...................................................................... 19

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ............................................................ 7, 11, 12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455, 133 S. Ct. 1184,
  185 L. Ed. 2d 308 (2013)......................................................... 11, 16

*Brazil v. Dole Packaged Foods, LLC,*
  2014 U.S. Dist. LEXIS 74234
  (N.D. Cal. May 30, 2014)........................................................ 12, 15

*Briseno v. ConAgra Foods, Inc.,*
  844 F. 3d at 1128 ............................................................. 18, 20, 21

*Brown v. Hain Celestial Grp., Inc.,*
  913 F. Supp. 2d 881 (N.D. Cal. 2012) ............................................ 10

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
  917 F.2d 1171 (9th Cir. 1990)........................................................ 9

*Colgan v. Letherman Tool Group, Inc.,*
  135 Cal. App. 4th 663 (2006)........................................................ 14

*Comcast Corp. v. Behrend,*
  569 U.S. 27, 133 S. Ct. 1426,
  185 L. Ed. 2d 515 (2013).................................................... 2, 3, 6

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,*
  4 Cal. App. 4th 963 (1992)...................................................... 19, 20

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ........................................................ 9

*Dewey v. Volkswagen of Am.,*
  909 F. Supp. 2d 373 (D.N.J. 2012)................................................ 13

1

2                                                                          **Page**

3

*Ellis v. Costco Wholesale Corp.*,
4       657 F.3d 970 979-80 (9th Cir. 2011)............................................................... 6

5

*Famular v. Whirlpool Corp.*,
6       2019 U.S. Dist. LEXIS 44907
        (S.D.N.Y. Mar. 18, 2019).............................................................................. 13
7

8   *Fletcher v. Security Pac. Bank*,
        23 Cal. 3d 442 (1979)................................................................................... 14
9

10  *FTC v. Affordable Media, LLC*,
        179 F.3d 1228 (9th Cir. 1999)....................................................................... 19
11

12  *Guido v. L'Oreal, USA, Inc.*,
        2013 U.S. Dist. LEXIS 94031, 2013 WL 3353857
13      (C.D. Cal. July 1, 2013)........................................................................... 13, 17

14  *Hall v. Walter*,
        969 P.2d 224 (Colo. 1998) ........................................................................... 20
15

16  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998)...................................................... 9, 10, 11, 18
17

18  *Harris v. Palm Springs Alpine Estates, Inc.*,
        329 F.2d 909 (9th Cir. 1964)........................................................................... 8
19

20  *In re Mercedes-Benz Tele Aid Contract Litig.*,
        257 F.R.D. 46 (D.N.J. 2009) .................................................................... 13, 17
21

22  *In re Pharm. Indus. Average Wholesale Price Litig.*,
        252 F.R.D. 83 (D. Mass. 2008) ................................................................ 13, 17
23

24  *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*,
        267 F.R.D. 291 (N.D. Cal. 2010) .................................................................. 15
25

26  *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
        267 F.R.D. 583 (N.D. Cal. 2010) .................................................................. 21
27

28  *In re Tobacco II Cases*
        (2009) 46 Cal.4th 298............................................................................. 14, 16

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**Page**

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) .............................................................. 20

*In re Wireless Facilities, Inc.*,
   253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................ 9

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ...................................................................... 12

*Johnson v. Gen. Mills, Inc.*,
   276 F.R.D. 519 (C.D. Cal. 2011) ...................................................................... 12

*Johnson v. General Mills, Inc.*,
   275 F.R.D. 282 (C.D. Cal. 2011) ...................................................................... 12

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................ 13, 20

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................. 7, 12

*Laufer v. U. S. Life Ins. Co. in City of N.Y.*,
   385 N.J. Super. 172, 896 A.2d 1101
   (Super. Ct. App. Div. 2006) .............................................................................. 20

*Maddock v. KB Homes, Inc.*,
   248 F.R.D. 229 (C.D. Cal. 2007) ........................................................................ 8

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .............................................................................. 8

*Mirkin v. Wasserman*
   (1993) 5 Cal. 4th 1082 ..................................................................................... 16

*Neale v. Volvo Cars of N. Am., LLC*,
   2013 U.S. Dist. LEXIS 43235
   (D.N.J. Mar. 26, 2013) ..................................................................................... 17

*Nevada v. Bank of Am. Corp.*,
   672 F.3d 661 (9th Cir. 2012) ............................................................................ 20

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**Page**

*Olagues v. Russoniello*,
  770 F.2d 791 (9th Cir. 1985) ................................................................... 19

*Rosado v. Ebay Inc.*,
  2016 U.S. Dist. LEXIS 80760
  (June 21, 2016 N.D. Cal) ......................................................................... 7

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ................................................................. 9

*Siemer v. Associates First Capital Corp.*,
  2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ............................... 5, 13

*Siemer v. Assocs. First Capital Corp.*,
  2000 U.S. Dist. LEXIS 21244
  (D. Ariz. Dec. 13, 2000) ......................................................................... 17

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541 (2011) ....................................... 2, 8, 18

*Wiener v. Dannon Co., Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ................................................... 12, 18

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ............................................................... 14

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................... 18

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
Rule 23 ............................................................................................... 1, 6, 20
Rule 23(a) .......................................................................................... 6, 8, 11
Rule 23(a)(1) ............................................................................................... 8
Rule 23(a)(2) ........................................................................................... 8, 9
Rule 23(a)(3) ............................................................................................... 9
Rule 23(a)(4) ............................................................................................. 10
Rule 23(b)(2) ..................................................................................... *passim*
Rule 23(b)(3) ..................................................................................... *passim*
Rule 23(g)(1) ............................................................................................. 10

California Business & Profession Code
§17203 ...................................................................................................... 14

California Civil Code
§1780(a) .............................................................................................. 14, 15

Colorado Revised Statute
§6-1-101 .................................................................................................... 13

Illinois Compiled Statutes Annotated
§505 .......................................................................................................... 20

New Jersey Statutes Annotated
§56:8-1 ................................................................................................ 13, 20

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Plaintiffs Youssif Kamal, Gillian Neely, Richard Lichten, Susan Cox, Nick Tovar, Michele Kinman, Ashley Petefish and Teri Brown, ("Plaintiffs"), by and through counsel, respectfully request this Court certify this action as a class action and appoint them as class representatives, and appoint their counsel as class counsel pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

## I.    INTRODUCTION

This case presents a textbook example of a lawsuit suitable for class action treatment pursuant to Rule 23.  Defendants engaged – and are engaging – in a course of conduct that harms all consumers in a similar manner by inducing them to pay full retail price for a Halo Top pint of ice cream that may or may not actually contain a full pint.  And while every consumer is not necessarily "shorted" by an underfilled pint, every consumer takes a substantial risk that they may be shorted and therefore pays more for a pint than they otherwise would have paid in a fully-informed market.

Plaintiffs' experiences and Defendants' own documents bear this out.  Some of the Plaintiffs that frequently purchase Halo Top have repeatedly encountered short-filled pints.  For example, Mr. Kamal estimates "most of the pints he has ever bought appeared to be at least a little bit short."  First Amended Class Action Complaint for Damages, Injunctive Relief and Restitution ("FAC") (Dkt. No. 8), ¶50.  And Mr. Lichten "frequently encounters underfilled pints."  FAC, ¶55.

They are not wrong, or even unusual. ████████████████████
████████████████████████████████████████████████████████
███████ ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████.  Declaration of Andrew J. Brown in Support of Motion for Class Certification ("Brown Decl."), Exs. C and D.
████████████████████████████████████████████
████████████████████████████████████████████████████████

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**



1  ████████ .[1] ████████████████████████████

2  ██████████████████████████████████████████

3  ██████████████████████ .  ██████████████████

4  ██████████████████████ ████████████████████

5  ██████████████████████████████████████████

6  ██████ .  ████████████████████████████████

7  ██████████████████████████████████████████

8  ██████████████████████████████████████████

9  ██████████████████████████████████████ . But

10 regardless of the cause, all consumers of the ice cream are cheated.

11    While Defendants deny much of this, Defendants' denials are of no moment

12 here. Because for class certification purposes, proof (or disproof) of Plaintiffs' claims

13 will undeniably turn on ***common evidence***. That is, according to Plaintiffs' theory of

14 liability, the same Halo Top process that cheats one consumer cheats all consumers.

15 "What matters to class certification . . . is not the raising of common 'questions' –

16 even in droves – but, rather, the capacity of a classwide proceeding to generate

17 common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*

18 *v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, (2011).[2]  In this instance, all of

19 the answers on issues of liability will be driven by common proof – Defendants'

20 business practices.

21    In conjunction with Plaintiffs' theory of liability generating common issues,

22 Plaintiffs offer a theory of damages for the Rule 23(b)(3) classes and subclasses that

23 coincides with and is consistent with that theory of liability. *Comcast Corp. v.*

---

[1]  Plaintiffs' proposed Second Amended Complaint ("SAC") provides additional factual detail of Defendants' fraudulent scheme. However, the FAC also asserts that consumers get shorted in a seemingly random fashion and "simply have no idea how much ice cream they will get each and every time they buy a Halo Top 'pint'." FAC, ¶3.

[2]  All internal citations omitted and emphasis added, unless noted otherwise.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

*Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).  The Expert Report of Stefan Boedeker ("Boedeker Report") proposes a model for measuring the market effects of Defendants' misrepresentations and omissions on the supply and demand of Halo Top ice cream pints, demonstrating a price effect that is measurable on a class-wide basis.[3]  Thus, while individual damages may differ among plaintiffs according to how many pints they purchased or the amount of underfilling in any given pint, the model presented satisfies the requirements of *Comcast* and Rule 23(b)(3).

For each state's law that applies, Plaintiffs therefore seek certification of a Rule 23(b)(3) statewide class of purchasers of Halo Top ice cream pints who paid more for the ice cream pint than the market would require if consumers had been aware of the undeniable and substantial risk of being shorted.  As a subclass for each state, Plaintiffs seek certification of a Rule 23(b)(3) class of people who were actually shorted.  *See* Brown Decl., Ex. E.

Last, because the conduct is ongoing Plaintiffs seek certification of their specific state law classes pursuant to Rule 23(b)(2).  Each state's law at issue here provides for injunctive relief as a remedy, and the same evidence that demonstrates Defendants' liability under Rule 23(b)(3) will serve Rule 23(b)(2).  *Id.*

## II.   FACTUAL BACKGROUND

Defendants labelled and continue to label every ice cream pint as a "pint," market it as a pint, encourage consumers to "eat the whole pint," and sell it in what consumers recognize as a pint container. FAC, ¶¶34-39.  Every person who purchased the ice cream container knew that it was supposed to contain a pint of ice cream.  In fact, it would have been unreasonable for any consumer to think differently.  *See, e.g.*, Defendants Eden Creamery LLC dba Halo Top Creamery and Justin T. Woolverton's Answer to Plaintiffs' First Amended Complaint (the "Answer"), at ¶16 ("Defendants

---

[3]   The Boedeker Report with Exhibits are combined as Exhibit A to the Brown Decl.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1   admit Halo Top's pint containers are labeled as a pint. . . ."); ¶33 ("The labels of the

2   pint containers themselves are the best evidence of their contents.").  Dkt. No. 24.

3         There is nothing subjective or consumer-specific concerning the definition or

4   understanding of what constitutes a "pint."  It is a nationally standardized measure of

5   volume.  FAC, ¶41; Answer, ¶41 ("Defendants admit that a pint is a standardized form

6   of measurement.").  Therefore, on every pint container, and for every class member,

7   the label and misrepresentation and omission is the same.  They are labeled as a pint

8   and recognized and understood as such by consumers.

9         But truly, Defendants had no idea what the actual volume of ice cream would

10  be when it reached the consumer (and after).  What they did know was that huge

11  numbers of pint containers would be underfilled.  As a result, every time a consumer

12  purchased a Halo Top pint they did so unknowingly taking a substantial risk that it

13  would be underfilled.

14        Due to the method of manufacture of the ice cream, it was sometimes

15  underfilled at the co-packer plant.  ████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████.  Brown Decl., Ex. F.[4]

18  Defendants knew this from the beginning, but simply did not care.

19  ████████████████████████████████████████

20  ████████████████████████████.  Brown Decl., Exs. C and D.

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24

25  [4] ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1  Defendants knew that if it happened to one pint, it likely happened to the whole
2  shipment.  FAC, ¶¶58, 72 ("Unfortunately, given the nature of the reason behind why
3  this happens, *if one pint was affected, it's very likely that the entire batch or*
4  *shipment was affected as well*.").

5      Like the labels, the harm suffered by consumers is similarly common, and
6  suffered by all. ████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████
9  █████████████████████████████████. *See, e.g.*, FAC, ¶52 (Plaintiff
10 Neely purchased underfilled pint in April 2018 in San Diego, CA); ¶65 (Plaintiff
11 Petefish purchased underfilled pints in Fall, 2017 in Phoenix, AZ); ¶85 (Plaintiff
12 Tovar purchased underfilled pint in January 2018 in New York, NY).

13     *Second*, as part of their fraudulent scheme, when a consumer complained of
14 receiving an underfilled pint, Defendants sent the same form letter that misrepresented
15 the Company's complicity in the underfilled pint, and misleadingly promised the
16 problem would be fixed.  *See, e.g.*, FAC, ¶¶53, 57, 70, 79, 86.

17     In truth, and as part of their business practices, Defendants institutionalized
18 both monitoring and responding to consumer "low fill" issues.  They monitored
19 consumer complaints, created a website "low fill" form specifically for that issue, and
20 created a form response to be sent to the tens of thousands of consumers – always
21 blaming others in the distribution process for the defect.  *Id*.; FAC, ¶ 54.  These false
22 and misleading statements were virtually identical for every consumer who
23 complained.  *Id*.  Whether Defendants can be liable for these identical false and
24 misleading statements can also be determined on a class-wide basis.

25     *Last*, damages can be measured on a class-wide basis using a model that is tied
26 to the theory of liability.  *See* Brown Decl., Ex. A (Boedeker Report).  Plaintiffs'
27 damages model permits the calculation of damages on a class-wide basis for each

28

1  state-wide class by determining the price effect of the label's misrepresentation and

2  omission concerning the amount of ice cream in the container.  First, Mr. Boedeker's

3  study will determine a market price difference between what consumers paid, and

4  what they would have paid had they been informed that there was a substantial risk

5  the "pint" they were purchasing was underfilled.  *Id*., ¶¶142-143.  Second, for the

6  subclasses of those that did receive an underfilled pint, Mr. Boedeker's study will

7  determine the price difference for the amount of underfilling. *Id.*, ¶144.

8      In all material respects, Plaintiffs here are no different from the proposed class

9  members.  FAC, ¶16 ("Each of the Halo Top pint containers purchased by plaintiffs

10  appeared to be a pint, was recognizable as such, and was clearly labelled as such.")

11  *See also*, FAC, ¶46 (Each Plaintiff received at least one underfilled pint); ¶47 (Each

12  Plaintiff looked at and relied upon the pint label and container at the time of

13  purchase).

14      The substantial risk of purchasing an underfilled pint was (and is) suffered by

15  all purchasers of Halo Top during the class period and beyond.  It is a result of the

16  methods of production of ice cream, and the inability and failure to protect the pints

17  from elements of shrinkage – or otherwise warn consumers of the known risk. Those

18  that actually received less than a full pint (a subclass of all purchasers) are likewise

19  harmed by Defendants' conduct in a quantifiable amount.

20  **III.  LEGAL STANDARD**

21      A plaintiff seeking class certification must show the class meets the

22  requirements of Rule 23.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426,

23  1432, 185 L. Ed. 2d 515 (2013).  First, Plaintiffs must demonstrate the class meets all

24  four requirements of Rule 23(a), *i.e.*, numerosity, commonality, typicality, and

25  adequacy.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 979-80 (9th Cir. 2011).

26      If these prerequisites are met, the court determines whether the class action is

27  maintainable under one of the three requirements of Rule 23(b).  *United Steel, Paper*

28

1    *& Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir.

2    2010).  Class certification is appropriate under Rule 23(b)(3) when "questions of law

3    or fact common to class members predominate over any questions affecting only

4    individual class members," and "a class action is superior to other available methods

5    for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

6    Class certification is appropriate under Rule 23(b)(2), when "the party opposing the

7    class has acted or refused to act on grounds that apply generally to the class, so that

8    final injunctive relief or corresponding declaratory relief is appropriate respecting the

9    class as a whole."  Fed. R. Civ. P. 23(b)(2).

## IV.  ARGUMENT

11        "Simply stated: Labels matter. The marketing industry is based on the premise

12    that labels matter – that consumers will choose one product over another similar

13    product based on its label and various tangible and intangible qualities they may come

14    to associate with a particular source."  *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 328

15    (2011).   The overriding issue in this case is the false and misleading nature of

16    Defendants' labels which are identical in declaring the container is a "pint."

17        Consumer protection claims such as this one are ideally suited for class

18    certification, because they serve the policy goal of "vindicaton of the rights of groups

19    of people who individually would be without effective strength to bring their

20    opponents into court at all."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

21    Cases such as this where individual recoveries are small are particularly well-suited

22    because "class members would likely pursue litigation only if a class action were

23    instituted."  *Rosado v. Ebay Inc.*, 2016 U.S. Dist. LEXIS 80760, *6 (June 21, 2016

24    N.D. Cal).   As detailed below, Plaintiffs satisfy each of the prerequisites of Rule

25    23(a), (b)(2) and (b)(3).

### A. The Rule 23(a) Requirements Are Satisfied

Plaintiffs meets each of the Rule 23(a) prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Fed. R. Civ. P. 23(a).

#### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964); *see also, e.g.*, *Keegan v. Am. Honda Motor Co*., Inc., 284 F.R.D. 504, 522 (C.D. Cal. 2012) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough."); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 237 (C.D. Cal. 2007) (finding 100 class members satisfied the numerosity requirement).  Here, Defendants sold tens (if not hundreds) of millions of ice cream pints across the country, over a period of several years.  *See, e.g.*, Brown Decl., Ex. G.[5]  And as many as 50% of those pints were underfilled by the time they reached the consumer.  Brown Decl., Ex. D.  This is more than sufficient to satisfy the minimal requirement for numerosity.

#### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality is determined by whether the issues raised have "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350; 131 S. Ct. at 2551.  For purposes of this prerequisite, "even a single question will do."  *Id*. at 359; at 2556 (internal punctuation omitted); *see also Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012)

---

[5]   *See also* FAC, ¶¶30-31 (before the end of 2017 Halo Top was in 19,000 stores nationwide and had sold 50 million pints, outselling Haagen-Dazs and Ben & Jerry's).

(noting plaintiff bears "limited burden" to demonstrate single common question of law or fact).

This prerequisite is readily met, as there are many common issues both factual and legal.  For example, whether Defendant's label and shape of their ice cream containers would cause a reasonable consumer to believe she was receiving a full pint when purchasing it at the store is a common issue; whether Defendants' manufacture, distribution and storage necessarily creates a material risk that the pint will be underfilled is also common to all class members; and whether this conduct violated each state consumer protection statute are all common questions in this litigation. These and myriad other issues are common and satisfy the "commonality" requirement of Rule 23(a)(2).

### 3.   Typicality

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims.  They need not be "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  In other words, typicality is established where the class was injured through an alleged common practice. *Id.*; *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552-53 (6th Cir. 2006); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (focus is on the "defendant's conduct and the plaintiff's legal theory"); *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 611 (S.D. Cal. 2008) (the proof plaintiff would need to establish its claims would also prove the claims of the class; satisfying typicality).

Typicality is met here as Plaintiffs and the proposed Class assert precisely the same claims which arise from the same course of conduct – the same promise Halo Top makes on the label of every pint container of ice cream it sells.

This is true regardless of which flavor each Plaintiff purchased, or in which state they purchased it, or when it was purchased.  All flavors were labeled as a "pint."

- 9 -

Where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012).  For purposes of Defendants' earlier motion to dismiss, the Court already ruled, "At this stage, the Court can discern no reason why allegedly underfilled Halo Top pints Plaintiffs did not purchase fall outside the scope of Plaintiffs' claims regarding allegedly deceptive and misleading labeling, advertising, and marketing of the Halo Top pint." *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the First Amended Complaint, Dkt No. 22 at p. 13.  Typicality is satisfied.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  For adequacy, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon,* 150 F.3d at 1020. The interests of each Named Plaintiff and the absent Class Members they seek to represent are fully aligned here. *See* FAC, ¶¶48-50 (Kamal – California class); ¶54 (Neely – California class); ¶¶55-59 (Lichten – California class); ¶¶64-68 (Petefish – Arizona class); ¶¶69-76 (Cox – New York and New Jersey class); ¶¶77-81 (Kinman – Colorado class); ¶¶82-87 (Brown – Illinois class); ¶¶84-87 (Tovar – New York class). There are no conflicts.

As to counsel's vigorous prosecution of the litigation, there can be no doubt. Moreover, Rule 23(g)(1) also requires the Court to appoint class counsel.  Plaintiffs request the Court appoint Andrew J. Brown and the Law Offices of Andrew J. Brown as Class Counsel.  They have the expertise and experience in complex litigation, including 20 years in class action litigation such as this.  Brown Decl., Ex. B.  And in this case in particular, they have shown themselves to be dedicated advocates for the

class in effectively litigating these claims.  They suffer from no conflicts of interest.
The adequacy requirement is met.

### B.   Rule 23(b)(2) and (b)(3) Are Also Satisfied in This Case

After satisfying the requirements of Rule 23(a), Plaintiff must also show that at
least one of the three requirements of Rule 23(b) is satisfied before the Court can
certify the class. *Amchem*, 521 U.S. at 614-15. Class certification here is appropriate
pursuant to Rules 23(b)(2) and 23(b)(3).

#### 1.   The Classes Should Be Certified Under Rule 23(b)(3) for Monetary Relief

This action also satisfies the requirements of Rule 23(b)(3) because "questions
of law or fact common to class members predominate over any questions affecting
only individual members, and . . . a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).
Plaintiff seeks to certify a class under Rule 23(b)(3) for monetary relief under in
California for the UCL, CLRA and fraud claims.  Plaintiffs seek monetary relief in
each of the other states that allow for it under the applicable consumer protection
statute.  These are:  Arizona, Colorado, New Jersey, and New York.[6]

##### a.   Common Questions of Law and Fact Predominate

"Rule 23(b)(3) requires a showing that questions common to the class
predominate, not that those questions will be answered, on the merits, in favor of the
class." *Amgen*, 133 S. Ct. at 1191; *Hanlon*, 150 F.3d at 1022 ("When common
questions present a significant aspect of the case and they can be resolved for all
members of the class in a single adjudication, there is clear justification for handling
the dispute on a representative rather than on an individual basis [under Rule

---

[6]   There is no monetary relief sought for the Illinois class because the Court
previously held there is no monetary relief available under the Illinois consumer
protection statute alleged in this case.  Dkt. No. 22 at 36.  However, Illinois is
included in the motion for certification of a 23(b)(2) class.

23(b)(3)]."); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("The requirement of predominance in Rule 23(b)(3) itself implies that a court may certify a class even though there will, at some point, be issues that must be determined individually.").

### (1) Defendants' Labels Present Predominating, Common Questions of Fact

"The marketing industry is based on the premise that labels matter – that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Kwikset*, 51 Cal. 4th at 328.  Accordingly, cases in which the veracity of a representation made on the product's labeling lend themselves to certification under Rule 23 (b)(3), as the labels are seen by virtually every consumer of the products at the time of purchase.  *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009).

As the Supreme Court noted in *Amchem*, "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." 521 U.S. at 625. In a consumer fraud case, "when plaintiffs are exposed to a common advertising campaign, common issues predominate." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) (certifying a class where subject statement was made on the product's packaging); *see also, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234, at *70 (N.D. Cal. May 30, 2014) (certifying Rule 23(b)(2) and (b)(3) classes challenging "All Natural" representations on label); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011) (certifying a class based on representation about "probiotic" bacteria made on yogurt container label).

Other states' consumer protection statutes similarly permit class actions based on false and misleading labels.  *See* Brown Decl., Ex. E

**Arizona**:  Class certification granted for violations under Arizona Consumer Fraud Act for making false and misleading statements and concealing material facts. *Siemer v. Associates First Capital Corp*., 2001 WL 35948712 (D. Ariz. Mar. 30, 2001).

**Colorado**:  Certifying a class under 23(b)(3), for damages under the Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et. seq.*, for misstating the wholesale prices. *In re Pharm. Indus. Average Wholesale Price Litig*., 252 F.R.D. 83 (D. Mass. 2008).

**New Jersey**:  Certifying Rule 23(b)(3) class for damages for marketing vehicles with emergency response systems without disclosing their impending obsolescence under the New Jersey Consumer Fraud Ac, N.J. Stat. Ann. 56:8-1, *et. seq*.  *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), *see also Dewey v. Volkswagen of Am*., 909 F. Supp. 2d 373 (D.N.J. 2012).

**New York**:  Certifying Rule 23(b)(2) and (b)(3) classes for damages and injunctive relief against manufacturers and retailers of moist wipes, which are labeled and advertised as "flushable" but alleged not to be "flushable." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017).  Class certification is appropriate where consumers allege that they paid a premium for the product based on deceptive advertising.  *Famular v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 18, 2019) (Granting class certification where consumers allege that they paid a premium for washing machines when improperly labeled as 'energy star').  Certifying class based on alleged improper label and warnings on cosmetic products. *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, 2013 WL 3353857, at *12 (C.D. Cal. July 1, 2013).

**(2)   Plaintiffs' Damages Model Presents a Common Question of Fact Supporting Predominance**

Similar to the liability issues, Plaintiffs propose a damages model that likewise can determine damages on a classwide basis.  *See* Boedeker Report, ¶¶142-144.  Although Defendants will undoubtedly contest his methodology, it is undeniably designed to measure damages on a class-wide basis, demonstrating that common issues predominate.

**(3)   Predominance Is Met for the California State Law Claims**

Under the UCL, only the class representative needs to have relied on the representation.  The members of the class do not.  *Stearns*, 655 F.3d at 1020; *Tobacco II*, 46 Cal. 4th at 326-27; *Steroid Hormone*, 181 Cal. App. 4th at 155.  Relief under any of the UCL's prongs is available "without individualized proof of deception, reliance and injury."  *Stearns*, 655 F.3d at 1020.

Plaintiffs purchased the ice cream in reliance on the "pint" label and recognizable pint carton, and would not have paid the price they paid, or bought the ice cream at all, had they known the labels were false.  FAC, ¶¶46-47.

The UCL authorizes courts to make "such orders . . . as may be necessary to restore to any person . . . any money or property, real or personal, which may have been acquired by means" of the unlawful conduct.  Cal. Bus. & Prof. Code §17203.  The CLRA similarly provides for "[r]estitution of property" in addition to "[a]ctual damages" to "[a]ny consumer who suffers any damage as a result of" a prohibited act.  Cal. Civ. Code §1780(a).  A court's analysis regarding "restitution" under the CLRA is, in most cases, the same as that under the UCL.  *Colgan v. Letherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 (2006).  Courts have broad authority in fashioning a restitutionary remedy.  *Id*. at 695 (quoting *Fletcher v. Security Pac. Bank*, 23 Cal. 3d 442, 450 (1979)).  One of its primary purposes is to deter the offender from committing future violations.  *Id*.  Even if individualized damage calculations are

- 14 -

necessary, this generally does not defeat class certification under Rule 23(b)(3). *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

"The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received." *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *77. As plaintiff's expert explains, this is a measure of damages that can be calculated on a class-wide basis. *See* Boedeker Report, ¶¶140-143.

This approach provides "a workable means of calculating" restitution in this case. *Werdebaugh,* 2014 U.S. Dist. LEXIS 71575, at *87; *see also In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 311-12, 314 (N.D. Cal. 2010) (holding that "plaintiffs have met their burden to show that damages can be established using common proof" by employing regression analysis); *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *68 (same).

Cal. Civil Code §1770(a) of the CLRA sets forth acts and practices deemed to be unlawful. Pursuant to Cal. Civil Code §1780(a), "[a]ny consumer who suffers any damage as a result of . . . a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain" actual damages, an injunction, restitution, punitive damages and "[a]ny other relief that the court deems proper." Plaintiff alleges that all Class Members have suffered damage as a result of Defendant's conduct because that conduct had the effect of increasing the price of the ice cream pints for everyone, regardless of whether a particular individual purchased an underfilled pint or not. Defendant successfully branded the ice cream as a risk-free pint, and therefore was able to charge more for each pint than it otherwise would have. *See, e.g.*, Boedeker Report, ¶¶44-47. Therefore, both the question of whether the representation is likely to deceive and the measure of damages presents common predominating issues.

1    Similar to the UCL and CLRA claims, the California common law fraud claim
2  also supports a finding of predominance.  Aside from the elements of falsity and
3  materiality of the misrepresented and omitted facts – both issues to be decided based
4  on common evidence – in order to demonstrate fraud a Plaintiff must demonstrate
5  "reliance" on the false statement.  But reliance is not required for an *omission*, since
6  an omission is a failure to provide information.[7]

7    Even for a fraud claim based upon affirmative false statements, class-wide
8  reliance is demonstrated by showing the ***materiality*** of the false statement.  Plaintiffs
9  are entitled to an inference of reliance if the misrepresentation is "material" to the
10  consumer's decision to purchase the product: "A misrepresentation is judged to be
11  'material' if a 'reasonable man would attach importance to its existence or
12  nonexistence in determining his choice of action in the transaction in question', and as
13  such materiality is generally a question of fact unless the fact misrepresented is so
14  obviously unimportant that the jury could not reasonably find that a reasonable man
15  would have been influenced by it.'"  *In re Tobacco II Cases*, (2009) 46 Cal.4th 298,
16  327.

17    Because the affirmative misrepresentation turns on the "materiality" of the
18  statement, this too supports a finding of predominance.  Materiality is always a class-
19  wide issue.  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 133 S. Ct.
20  1184, 1197, 185 L. Ed. 2d 308 (2013) (finding that the question of materiality is
21  common to the class, and that the plaintiff was not required to prove materiality at
22  class certification because "[s]uch a question is properly addressed at trial or in a
23  ruling on a summary judgment motion.  The allegation should not be resolved in
24  deciding whether to certify a proposed class.").

25

26  [7]  Because a person cannot "rely" upon information that is never disclosed in the first
27  place, '[o]ne need only prove that, had the omitted information been disclosed one
   would have been aware of it and behaved differently." *Mirkin v. Wasserman* (1993) 5
28  Cal. 4th 1082, 1093.

1
2

**(4)    Like the California Statutory Claims,
Other State Law Claims Are subject to
Common Proof**

3    **Arizona**:    AFCA claims may be established by common proof in cases

4  involving standard procedures and practices, *Siemer v. Assocs. First Capital Corp.*,

5  2000 U.S. Dist. LEXIS 21244 (D. Ariz. Dec. 13, 2000).

6    **Colorado**:  Interpreting claims under the Colorado Consumer Protection Act,

7  and other consumer law claims, the Court noted "when common questions

8  predominate regarding liability, then courts generally find the predominance

9  requirement to be satisfied." *In re Pharm. Indus. Average Wholesale Price Litig.*, 252

10  F.R.D. 83 (D. Mass. 2008).  The Colorado Consumer Protection Act does "not require

11  that plaintiff prove individual reliance as a separate element under all prongs of the

12  statute." *Id.*

13    **New Jersey**:  Consumer fraud claim can be established using common proof,

14  the NJCFA does not require Plaintiffs to demonstrate that they relied on

15  misstatements. *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J.

16  2009).  For consumer fraud claims, the predominance  inquiry focuses on whether the

17  defendant's conduct was common to all class members, which predominates over

18  minor individual differences between plaintiffs. *Neale v. Volvo Cars of N. Am., LLC*,

19  2013 U.S. Dist. LEXIS 43235 (D.N.J. Mar. 26, 2013).

20    **New York**:  As with the California claims, liability under the New York

21  consumer statutes can be established with common proof. Individualized proof of

22  reliance is not necessary. A claim for deceptive business practices pursuant to §349

23  does not require a demonstration of reliance. *Guido v. L'Oreal, USA, Inc.*, 2013 U.S.

24  Dist. LEXIS 94031 (C.D. Cal. July 1, 2013).

25    **b.    A Class Action Is Superior to Other Available
Methods of Adjudication**

26
27    The "superiority" analysis of Rule 23(b)(3) "calls for a comparative assessment

28  of the costs and benefits of class adjudication, including the availability of "other

- 17 -

methods" for resolving the controversy." *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d at 1128.  Rule 23(b)(3) sets forth the relevant factors for determining whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  "'[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

There is no better method for resolving this litigation, and the Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification here.  It is not economically feasible for the Class Members to pursue their claims individually because the value of those individual claims is small.  *Hanlon*, 150 F.3d at 1023; *Dannon*, 255 F.R.D. at 672 ("[T]here is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication.").  Here, there is no other method of adjudicating these claims.

### 2.    The Classes Should Be Certified Under Rule 23(b)(2) for Injunctive or Declaratory Relief

Rule 23(b)(2) certification is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  The key to a 23(b)(2) class is "'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 131 S. Ct. at 2557.  "In other words, Rule 23(b)(2)

- 18 -

1   applies only when a single injunction or declaratory judgment would provide relief to
2   each member of the class." *Id.*

3          Here, Plaintiff seeks injunctive relief to stop Defendant from marketing and
4   labelling the ice cream pints as a full pint, or otherwise requiring a warning to
5   consumers of the risk of underfill, declaratory relief, and to require Defendant to
6   engage in corrective advertising to educate the public about the true nature of the ice
7   cream as it relates to the promise of a full pint.  Although Defendants may have sold
8   their interest in the Halo Top brand, there has been no change to the label and nothing
9   stops Defendants (or the current owner) from making the claim again.  "It is settled
10  that an action for an injunction does not become moot merely because the conduct
11  complained of was terminated, if there is a possibility of recurrence, since otherwise
12  the defendants 'would be free to return to [their] old ways.'"  *Allee v. Medrano*, 416
13  U.S. 802, 818-811 (1974), superseded by statute on other grounds; *see also FTC v.*
14  *Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999) (same).  The burden on
15  the defendant of demonstrating that the conduct is not likely to reoccur is "heavy."
16  *Olagues v. Russoniello*, 770 F.2d 791, 794 (9th Cir. 1985).

17         Corrective advertising is appropriate when the defendant has branded a product
18  in a way that is not true and a corrective advertising campaign can correct the
19  misperception about the product.  For example, in *Consumers Union of U.S., Inc. v.*
20  *Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972 (1992), the Court of Appeal
21  found that "because false advertising and unfair business practices can take many
22  forms, the Legislature has given the courts the power to fashion remedies to prevent
23  their 'use or employment' in whatever context they may occur."  The Court held that
24  because defendant's advertising campaign "had created a public perception that its
25  [milk product] was safe and nutritionally superior to pasteurized milk . . . [t]he
26  warning statement mandated by the trial court is valid as necessary to correct that
27
28

- 19 -

1    misperception." *Id*. at 972-73. Corrective advertising here is necessary to inform the

2    public of the true nature of the ice cream pints dating back several years.

3       Outside of California, the other states' consumer protection statutes also

4    provide for injunctive relief in this situation.  See, Brown Decl., Ex. E.

5       **Arizona**:  Injunctive relief available for misrepresentations under the Arizona

6    Consumer Fraud Act.  *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012).

7       **Colorado**:  Injunctive relief available under the Colorado Consumer Protection

8    Code to address deceptive practices.  *Hall v. Walter*, 969 P.2d 224 (Colo. 1998).

9       **Illinois**:  Injunctive relief is available under the Illinois Consumer Fraud and

10    Deceptive Practices Act ("ICFDPA"), 815 Ill. Comp. Stat. Ann. §505 *et seq.  In re*

11    *Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 1000 (N.D. Cal. 2010).

12       **New Jersey**:  Class can seek injunctive relief under New Jersey Consumer

13    Fraud Act, N.J. Stat. Ann. §56:8-1.  *Laufer v. U. S. Life Ins. Co. in City of N.Y.*, 385

14    N.J. Super. 172, 896 A.2d 1101 (Super. Ct. App. Div. 2006).

15       **New York**:  Certifying Rule 23(b)(2) classes for injunctive relief against

16    manufacturers and retailers of moist wipes, which are labeled and advertised as

17    "flushable" but alleged not to be "flushable".  *Kurtz v. Kimberly-Clark Corp.*, 321

18    F.R.D. 482 (E.D.N.Y. 2017).

19    **C.    The Classes Are "Ascertainable"**

20       Though not explicitly stated in Rule 23, the Ninth Circuit has held that the class

21    must be adequately defined and "ascertainable" before a class action may proceed. A

22    class is ascertainable if the class is defined with "objective criteria." *Briseno v.*

23    *ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (Upholding the

24    certification of a class defined by "whether class members purchased Wesson oil

25    during the class period.").

26       Here, the Class is defined by the very same objective criteria: those who

27    purchased one or more pints of Halo Top ice cream during the class period, in each

28

state.  Each subclass is further refined as those same persons, and who received less than a full pint.  These class and sub-class definitions "simply identif[y] purchasers of Defendant's products that included the allegedly material misrepresentations." *Astiana*, 291 F.R.D. at 500 (class of purchasers of Kashi products labeled as containing "Nothing Artificial" ascertainable; rejecting that because "Defendant does not have records of consumer purchases, and potential class members will likely lack proof of their purchases, . . . the Court will have no feasible mechanism for identifying class members").  "Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Id*.  And "[t]he fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010).

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their motion to certify this case as a class action, appoint them as Class Representatives, and appoint their counsel as Class Counsel.


DATED:  July 3, 2020                    Respectfully submitted,

                                        LAW OFFICES OF ANDREW J.
                                        BROWN

                                        *s/ Andrew J. Brown*
                                        ANDREW J. BROWN

                                        BRIAN J. ELLSWORTH
                                        501 West Broadway, Suite 1490
                                        San Diego, CA  92101
                                        Tel: (619) 501-6650
                                        andrewb@thebrownlawfirm.com

- 21 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Plaintiffs Individually
and on Behalf of All Others Similarly
Situated

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**