UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUSSIF KAMAL, GILLIAN NEELY, RICHARD LICHTEN, SUSAN COX, NICK TOVAR, MICHELE KINMAN, and TERRI BROWN, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDEN CREAMERY, LLC, dba HALO TOP CREAMERY; and JUSTIN T. WOOLVERTON,<br><br>Defendants. | Case No.: 18-CV-1298 TWR (MSB)<br><br>**ORDER CONDITIONALLY GRANTING PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE**<br><br>(ECF No. 116) |

Presently before the Court are Defendants Eden Creamery LLC, dba Halo Top Creamery, and Justin T. Woolverton's Opening Brief Regarding Conditions for Voluntary Dismissal Without Prejudice ("OB," ECF No. 147); Plaintiffs Youssif Kamal, Gillian Neely, Richard Lichten, Susan Cox, Nick Tovar, Michele Kinman, and Teri Brown's Response to Defendants' Opening Brief re: Conditions for Voluntary Dismissal Without Prejudice ("RB," ECF No. 150); and Defendants' Reply Memorandum in Support of Request for Conditions for Voluntary Dismissal Without Prejudice ("Reply," ECF No.

151), filed as ordered by the Court, (*see* ECF No. 144), in response to the Ninth Circuit's "remand for the district court to consider whether to impose any conditions on the dismissal of this action without prejudice, such as an appropriate amount of costs and fees." *See Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1287 (9th Cir. 2023). A hearing was held on August 8, 2024. (*See* ECF No. 153.) Having carefully considered the Parties' briefing, the record, and the relevant law, the Court **CONDITIONALLY GRANTS** Plaintiffs' Motion for Voluntary Dismissal Without Prejudice ("Mot.," ECF No. 116) and **CONDITIONALLY DISMISSES WITHOUT PREJUDICE** this action on the following terms: (1) Plaintiffs and their counsel must pay Defendants their attorneys' fees in the amount of $235,240.67 within ninety (90) days of the date this Order is electronically docketed; and (2) any new case filed by Plaintiffs related to the same subject matter ("Refiled Action") must be filed in this District and assigned to the undersigned pursuant to Civil Local Rule 40.1(j).[1]

## BACKGROUND

Because the Parties are familiar with the factual and procedural background underlying this case, the Court incorporates the Ninth Circuit's factual recitation in its entirety and provides a brief summary of the Ninth Circuit's ruling and subsequent procedural developments to provide context for its analysis:

> At the time Plaintiffs filed their initial complaint, Eden Creamery owned and manufactured Halo Top, a low-calorie ice cream sold by the pint. This case arises from complaints that the pints were not completely full when purchased. Several of the named plaintiffs—before filing this lawsuit—complained directly to Defendants about this problem, and Defendants explained that "at some point in the supply chain, the ice cream slightly melts and then refreezes," causing "the ice cream [to] condense[] down, leaving space inside the pint." Defendants maintained this explanation throughout this case and on appeal, asserting that "a pint of Halo Top might appear less than

---

[1] Although Defendants request that this case be "assigned to District Judge Robinson and Magistrate Judge Schopler," (*see* OB at 1), Judge Schopler was elevated to District Judge during the pendency of Plaintiffs' appeal. Accordingly, this case was reassigned to the Honorable Michael S. Berg on August 8, 2024. (*See* ECF No. 152.)

full when opened [because] of a latent chemical reaction known as 'shrinkage' that impacts all ice cream."

Apparently unsatisfied with this explanation, Plaintiffs filed their initial class action complaint against Eden Creamery in June 2018. The theory behind Plaintiffs' complaint was that Eden Creamery "underfills" its pints of Halo Top, so while Plaintiffs "paid for a full pint," they "did not receive a full pint."

After Eden Creamery moved to dismiss, Plaintiffs filed their first amended complaint "as a matter of course" in September 2018, asserting various state law fraud, consumer protection, and unfair business practice claims. *See* Fed. R. Civ. P. 15(a)(1). The first amended complaint included additional factual details, added several causes of action, and named Justin Woolverton, Halo Top's CEO, as a defendant, but its key allegations remained the same, reiterating the "underfilled" theory advanced in the initial complaint.

Defendants again moved to dismiss, arguing, among other things, that Plaintiffs' underfilling theory was factually unsound. Defendants argued that their pints were "filled to maximum capacity" and "the alleged, random product shrinkage, if any, resulted from alleged handling by third parties, such as distributors, retailers, or consumers."

The district court largely denied the motion to dismiss, concluding that Plaintiffs plausibly alleged their underfilling theory. However, the court dismissed any "fraud by omission claim," finding that although Plaintiffs' fraud claim "nominally refer[red] to alleged omissions," Plaintiffs failed to describe any omissions. Shortly thereafter, the court, with input from the parties, entered a scheduling order setting November 1, 2019, as the deadline "to join other parties [or] to amend the pleadings."

During discovery, Plaintiffs' theory of liability changed. Plaintiffs shifted from the "underfilled" theory to a "fraud by omission" theory. Under this new theory, the problem with the ice cream was not that the pints were underfilled at the time of manufacturing, but that Halo Top was "inherently defective." According to Plaintiffs, Halo Top's ingredients and production methods render the product extremely vulnerable "to changes in temperature and altitude," such that it cannot "withstand the ordinary distribution and retail practices within the ice cream industry." Under Plaintiffs' new theory, Defendants intentionally concealed this defect and failed to inform their

customers "that there was a substantial risk that the Halo Top ice cream pint would be underfilled" at the time of purchase.

On June 25, 2020, approximately six weeks before the deadline to complete discovery and eight months after the deadline to amend the pleadings, Plaintiffs moved to amend their complaint to incorporate this new theory and to add Wells Enterprises, the company that purchased Halo Top from Eden Creamery, as a defendant. The district court denied the motion in December 2020, concluding that (1) Plaintiffs were not diligent in seeking leave to file their proposed second amended complaint ("PSAC") and therefore failed to show "good cause" to extend the deadline to amend the pleadings, and (2) allowing amendment would prejudice Defendants because discovery would have to be reopened, which would increase the cost of litigation and delay resolution of the case. Shortly after the court denied the motion to file a second amended complaint, Plaintiffs moved to voluntarily dismiss their claims without prejudice under Federal Rule of Civil Procedure 41(a)(2). They candidly acknowledged that they sought dismissal to pursue their new fraud theory "in a separate lawsuit." Defendants did not oppose dismissal, but they requested that the district court dismiss the case with prejudice or impose several conditions for dismissal without prejudice, including barring Plaintiffs from pursuing claims in a new case based on the "underfilling" theory, requiring Plaintiffs to pay some of Defendants' attorney's fees, limiting discovery in the new case, and requiring that the new case be assigned to the same judge.

After a hearing and supplemental briefing, the district court denied the motion for voluntary dismissal without prejudice. The court concluded that dismissing the action without prejudice "would result in legal prejudice to Defendants." In the court's view, Plaintiffs' motion for dismissal without prejudice was "intended to negate" the court's prior denial of leave to amend, and the court reasoned that "[i]f allowing Plaintiffs to file the Proposed Second Amended Complaint in this action would be prejudicial to Defendants, then permitting Plaintiffs to file the Proposed Second Amended Complaint as a new lawsuit would be similarly prejudicial." The court also concluded that Plaintiffs had essentially asked the court "to employ the discretion granted in Rule 41(a)(2) to accomplish indirectly" what the court "held cannot be accomplished directly under Rule 16(b)"—extend the scheduling order's deadline to amend the pleadings without a showing of good cause.

The district court advised Plaintiffs that they could either accept dismissal with prejudice or continue litigating the action in the district court

      based on the first amended complaint. Plaintiffs informed the court that they did "not intend to continue litigating" the action in the district court, and the court dismissed Plaintiffs' individual claims with prejudice and the putative class claims without prejudice. Plaintiffs timely appealed.

*Kamal*, 88 F.4th at 1273–75.

      The Ninth Circuit panel affirmed in part and reversed in part this Court's dismissal of Plaintiffs' complaint alleging that Eden Creamery, LLC underfilled its pints of ice cream. *See generally id.* at 1275–87. Specifically, after confirming that it had jurisdiction, *see id.* at 1275–77, the panel concluded that the Court did not abuse its discretion by denying Plaintiffs leave to file a second amended complaint, *see id.* at 1277–79, but that the Court did abuse its discretion by denying Plaintiffs' motion for voluntary dismissal without prejudice because Defendants had failed to show that they would suffer legal prejudice as a result. *See id.* at 1279–86. Finally, the Ninth Circuit concluded that "the district court had discretion to award attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2)," and "remand[ed] for the district court to consider whether to impose any conditions on the dismissal of this action without prejudice, such as an appropriate amount of costs and fees." *See id.* at 1286–87.

      Plaintiffs filed a petition for rehearing or rehearing en banc regarding the Ninth Circuit's instruction that the Court consider imposing conditions, including an appropriate award of costs and fees, on remand. *See generally* Appellants' Petition for Rehearing or Rehearing en Banc, *Kamal v. Eden Creamery, LLC*, No. 21-56260 (9th Cir. filed Jan. 4, 2024), DE 59. The Ninth Circuit panel denied Plaintiffs' request. *See generally* Order, *Kamal v. Eden Creamery, LLC*, No. 21-56260 (9th Cir. filed Feb. 15, 2024), DE 62.

      Following the Ninth Circuit's remand, the Court held an Appeal Mandate Hearing on March 7, 2024, at which the Court vacated its previous order dismissing the Named Plaintiffs' claims with prejudice and issued a briefing schedule for the Parties to address the Ninth Circuit's direction that the Court consider conditions on the voluntary dismissal of this action without prejudice. (*See* ECF No. 143.) The Court then issued an Order reopening the case and setting a hearing for August 8, 2024. (*See* ECF No. 144.)

## LEGAL STANDARD

"[Federal] Rule [of Civil Procedure] 41(a)(2) permits the district court to dismiss a case "on terms that the court considers proper." *Kamal*, 88 F.4th at 1286 (quoting Fed. R. Civ. P. 41(a)(2)). "[T]he district court ha[s] discretion to award attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2)." *Id.* at 1287; *see also, e.g.*, *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). "[A]lthough 'the expense incurred in defending against a lawsuit does not amount to legal prejudice,' a defendant's interest 'can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees.'" *Id.* at 1286 (quoting *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). "'Imposition of costs and fees as a condition for dismissing without prejudice is not mandatory,' however, and 'a defendant is entitled only to recover, as a condition of dismissal,' attorney's fees or costs for work that 'is not useful in continuing litigation between the parties.'" *Id.* at 1286–87 (first quoting *Westlands*, 100 F.3d at 97; then quoting *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993)).

## ANALYSIS

The Court ordered the Parties "to file supplemental briefing to assist it in its consideration of 'whether any terms should be imposed as a condition of dismissal,' as further instructed by the Ninth Circuit." (*See* ECF No. 144 at 2 (quoting *Kamal*, 88 F.4th at 1287). In their Opening Brief, Defendants ask the Court to impose the following conditions on Plaintiffs' voluntary dismissal without prejudice: (1) an award of attorneys' fees and costs in the amount of $415,825.93, (2) the preclusion in any new lawsuit of claims based on the allegation that Halo Top pints are underfilled at the time of manufacture, (3) the carrying over of all prior discovery and discovery limitations into any new action and a prohibition on any further absent a showing of good cause, and (4) a requirement that any new action be filed in this District and reassigned to the original judges pursuant to Civil Local Rule 40.1(j). (*See* OB at 5, 12-14.) Plaintiffs largely oppose. (*See generally* RB.) The Court addresses each of Defendants' requested conditions in turn.

I.     **Attorneys' Fees and Costs**

First, Defendants seek attorneys' fees and costs in the amount of $415,825.93 for hours expended on two discrete projects that they claim will not be useful in connection with Plaintiffs' anticipated Refiled Action, (*see* OB at 5), which is a fraction of the millions of dollars Defendants have spent to date. (*See id.* at 4; *see also* ECF No. 147-1 ("Borders Decl.") ¶ 20.) Although Plaintiffs attempt to relitigate the issue of whether attorneys' fees and costs can be imposed as a condition for a voluntary dismissal, (*see* RB at 9–11), contrary to Plaintiffs' contention, the Ninth Circuit clearly held that this Court "had discretion to award attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2)" and explicitly remanded to this Court "to consider whether to impose any conditions on the dismissal of this action without prejudice, such as an appropriate amount of costs and fees." *Kamal*, 88 F. 4th at 1286–87. Before analyzing the propriety and reasonableness of Defendants' requested fees and costs, however, the Court addresses Plaintiffs' argument that Mr. Woolverton is "[t]he only defendant in this case" and "is not entitled to reimbursement for fees and costs because he paid no fees and costs and is unlikely to do so in the future." (*See* RB at 4; *see also generally id.* at 1–4, 9–16.)

A.     ***Defendants Entitled to Recover Fees and Costs***

Plaintiffs devote an inordinate amount of time and effort to the argument that, because Eden Creamery was acquired by Wells Enterprises and therefore no longer exists, Mr. Woolverton is the sole remaining defendant. (*See* RB at 1–4, 9–16, 20–22.) What is more, Plaintiffs accuse defense counsel of committing perjury and perpetrating fraud on this Court and the Ninth Circuit by continuing to litigate on behalf of Eden Creamery and claiming in court filings that Eden Creamery incurred certain litigation costs. (*See, e.g.*, *id.* at 6–9.) Defendants respond that "Eden Creamery continues to be a defendant in the case, [and] it enjoys all the privileges and the burdens of being a defendant." (*See* Reply at 2.)

The Court agrees with Defendants. As Defendants note, (*see id.* at 1–2), although Eden Creamery merged with Wells Enterprises and no longer exists as a separate legal entity, it "continue[s] to exist for the purpose of winding up its affairs," including

"defending actions . . . against it." *See* Cal. Corp. Code § 17707.06(a); *see also Def. Supplies Corp. v. Lawrence Warehouse Co.*, 336 U.S. 631, 634–35 (1949) ("[A] corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions."). The Ninth Circuit's unreasoned denial of Defendants' motion for substitution of parties under Federal Rule of Appellate Procedure 43—which Plaintiffs themselves opposed on the grounds that "*Eden Creamery has not provided any reason why it could not continue to litigate the case, as it has done for the past 15 months*," (*see* Reply at 2 (emphasis in original) (quoting 9th Cir. ECF No. 31 at 7))—does not alter the Court's conclusion. The Ninth Circuit, knowing full well that Eden Creamery had merged with Wells Enterprises, remanded to the Court to address "*Defendants'* request for conditions," including an award of partial attorneys' fees and costs. *See Kamal*, 88 F.4th at 1286. Despite the fact that Eden Creamery was entrenched in this litigation, Wells Enterprises saw fit to acquire it, warts and all—including the ongoing costs of this litigation and the potential for future liability. Somebody paid Eden Creamery's defense costs and, in the event that Plaintiffs attempt to reassert claims based on Eden Creamery's manufacture and marketing of Halo Top pints, that party is entitled to reimbursement for any amounts paid that will not be useful in subsequent litigation concerning Eden Creamery's conduct.

### B. Calculation of Recoverable Fees and Costs

#### 1. Scope of Recoverable Attorneys' Fees and Costs

As the Ninth Circuit instructed, this Court may award attorneys' fees and costs "for work that 'is not useful in continuing litigation between the parties[.]'" *See Kamal*, 88 F.4th at 1286–87 (quoting *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993)); *accord Westlands*, 100 F.3d at 97. Factors relevant to this analysis include (i) "any 'excessive and duplicative expense' of a second litigation, [(ii)] the effort and expense incurred by defendant preparing for trial, [(iii)] the extent to which the litigation has progressed, [(iv)] the plaintiff's diligence in moving to dismiss, [(v)] whether awarding costs would discourage plaintiffs from seeking early dismissal of their actions and instead encourage them to take their chances at trial, and [(vi)] whether the imposition of attorneys' fees

would produce an 'anomalous result' where defendants could not recover fees if they prevailed at trial." *See Gonzalez v. Proctor & Gamble Co.*, No. 06cv869 WQH (WMc), 2008 WL 612746, at *4 (S.D. Cal. Mar. 4, 2008) (quoting *Stevedoring Servs.*, 889 F.2d at 920–21) (citing *Williams v. Peralta*, 227 F.R.D. 538, 540 (N.D. Cal. 2005); 8-41 *Moore's Federal Practice, Civil* § 41.40(10)(d) (2005)). Here, Defendants request reimbursement for the fees and costs they expended on two oppositions to motions filed by Plaintiffs that Defendants contend will have no value in future litigation with Plaintiffs: (1) Plaintiffs' motion for leave to amend their complaint, and (2) Plaintiffs' motion for class certification. (*See* OB at 5–8.)

Plaintiffs do not contest that Defendants' efforts opposing their motion for leave to amend will not be useful in litigating the refiled action, (*see generally* RB), nor can they: this Court denied that motion, and that decision was affirmed by the Ninth Circuit. Plaintiffs do challenge, however, Defendants' contention that their opposition to Plaintiffs' motion for class certification in this action will be of no use in any continuing litigation, arguing that Defendants' opposition to the class certification motion "responded to, at least in large part, Plaintiff's Motion for Class Certification based on the [Proposed Second Amended Complaint ("PSAC")]." (*See* RB at 16.) A review of the document itself, however, reveals that Defendants' opposition to Plaintiffs' motion for class certification addressed the allegations and underfilling theory from the then-operative First Amended Complaint. (*See generally* ECF No. 111-1 at 1–18.) Plaintiffs also maintain that "Defendants' opposition was . . . based in part on an alleged failure of Plaintiffs to establish standing, numerosity, or demonstrate the proposed class representatives [we]re typical and adequate pursuant to Fed. R. Civ. Proc. 23(a)(3) and (a)(4)[,]" which "necessarily will be applicable in the next case." (*See* RB at 16–17 (citing ECF No. 111-1 at 10–12).) But these arguments, too, were premised on the mismatch between the arguments for class certification under the Proposed Second Amended Complaint and the operative First Amended Complaint under which Plaintiffs were then proceeding. (*See* ECF No. 111-1 at 10–12.) In short, the first eighteen of twenty-five pages of Defendants' prior class

certification opposition will be of limited use in opposing class certification in any Refiled Action. More troublingly, it was Plaintiffs' lack of diligence in withdrawing their class certification motion—which was premised on the Proposed Second Amended Complaint—after the Court denied their motion to amend that caused Defendants to generate the fees expended on their opposition. (*See* Borders Decl. ¶¶ 11–19.) Accordingly, the *Stevedoring* factors favor permitting Defendants to recover 18/25, which the Court rounds down to 70%, of the reasonable attorneys' fees they expended in preparing the first eighteen pages of their opposition to the class certification motion as a condition of the voluntary dismissal without prejudice.

Defendants also seek to recover for the portion of their opposition to class certification challenging the admissibility of Dr. Stefan Boedeker's July 2, 2020 expert report (the "Boedeker Report"), (*see* ECF No. 111-1 at 18–25), and the $100,000 "in expert witness fees to Dr. Ran Kivetz in connection with his analysis of the expert report prepared by Dr. Stefan Boedeker and the preparation of his rebuttal expert report," (*see* OB at 12), which can be found on the docket as Exhibit J to ECF No. 111-2 (the "Kivetz Rebuttal Report"). Despite Plaintiffs' arguments to the contrary,[2] district courts do have discretion to reimburse expert witness fees as a condition of voluntary dismissal. *See, e.g.*, *Off Lease Only, Inc. v. Lakeland Motors, LLC*, 846 Fed. App'x 772, 776 (11th Cir. 2021) (concluding that the district court did not abuse its discretion in awarding expert witness costs as a condition of voluntary dismissal under Rule 41(a)(1) where "awarding expert witness costs was necessary to mitigate harm to" the defending party caused by dismissing party's litigation decisions); *see also Westlands*, 100 F.3d at 97 (recognizing dismissal may be

---

[2] Plaintiffs unpersuasively rely on cases decided outside the context of voluntary dismissals. (*See* RB at 17–18.) Even in the context of taxing costs, however, trial courts have discretion to order reimbursement of expert witness fees where the expert testimony was "crucial or indispensable" to the litigation at hand. *See, e.g.*, *United States v. City of Twin Falls*, 806 F.2d 862, 864 (9th Cir. 1986), *overruled on other grounds as recognized by Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551–52 (9th Cir.1992); *see also Rodriquez v. Farmers Ins. Co.*, 649 F. App'x 620 (9th Cir. 2016) (citing *Twin Falls*, 806 F.2d at 864; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996)).

conditioned on the payment of "appropriate costs").  The question, therefore, is whether the Rebuttal Kivetz Report and Defendants' motion to exclude the Boedeker Report will not be useful in any Refiled Action.  Not only is this more difficult for the Court to assess, but it is also in tension with Defendants' request that the Court limit the Parties' discovery in any Refiled Action.  (*See* OB at 13–14.)

Dr. Boedeker designed a Choice-Based Conjoint ("CBC") survey "to determine the difference in value (measured in dollars or as a percentage of the purchase price in the actual world) that consumers place on a Pint of ice cream without the Low-fill Issue compared to an otherwise identical Pint that reveals the Low-fill Issue." (*See* ECF No. 81-1 ¶ 50.)  As can be seen from one of the sample choices from the CBC survey, it is unclear to what extent—if any—the cause of the "Low-fill Issue," *i.e.*, underfilling or shrinkage, is material to the Boedeker Report and, consequently, the Kivetz Rebuttal Report:

Please indicate which of the options you would select.

|  | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|---|
| Flavor | Crème Brulee | Strawberry Cheesecake | Rocky Road | Banana Pudding Foster | Rocky Road |
| Sweetener | Concentrated Fruit Juice | No-calorie Stevia Sweetener | Organic Cane Sugar | Organic Cane Sugar | Corn Syrup |
| Inclusions | Caramelized Sugar Bits, Vanilla Bean Flakes | Crunchy Graham Cracker Bits, Glazed Strawberry Chunks | None | None | Chocolate Covered Almonds, Whip Cream Swirl |
| Pint Volume | Some Pints are underfilled by 1/10th due to processing and distribution | Some Pints are underfilled by 1/4th due to processing and distribution | Always a Full Pint | Some Pints are underfilled by 1/2 due to processing and distribution | Always a Full Pint |
| Price | $1.99 | $2.99 | $5.99 | $3.99 | $7.99 |
| Which option would you prefer? | ○ | ○ | ○ | ○ | ○ |

Would you purchase this option?    ○ Yes    ○ No

(*See id.* ¶ 139 Fig. 14.)  Because the Court is not convinced that Defendants' expert witness costs and efforts to exclude the Boedeker Report will not be of use in any Refiled Action and are therefore "necessary to mitigate harm to" Defendants, *see Off Lease Only*, 846 Fed. App'x at 776, the Court declines to award those costs here.

2. *Reasonableness of Requested Attorneys' Fees and Costs*

The bulk of Plaintiffs' arguments regarding Defendants' request for attorneys' fees and costs focuses on the reasonableness of the amount they seek to recover and whether Defendants have properly substantiated their request. (*See* RB at 12–16.) "The lodestar determination has emerged as the predominate element of the analysis" in determining a reasonable attorney's fee award. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. Cnty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995). After making that computation, the district court assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that are not already subsumed in the initial lodestar calculation.[3] *Id.*; *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990). "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (1994); *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992).

The hourly rates for Defendants' counsel range from $726 to $970 for partners and $463 to $705 for associates. (Borders Decl. ¶¶ 21–27.) Plaintiffs do not appear to oppose these hourly rates, (*see generally* RB), and, as Defendants note, (*see* OB at 9), the rates charged are in line with what other courts have found to be reasonable for attorneys of similar experience and expertise working in this market during the relevant period. *See,*

---

[3] The *Kerr* factors are: "(1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases." *Kerr*, 526 F.2d at 70, *cert. denied*, 425 U.S. 951 (1976). Several of these factors, including "the novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained," are subsumed within the lodestar calculation. *See Blum v. Stenson,* 465 U.S. 886, 898–900 (1984).

*e.g.*, *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv.*, LLC, No. 2:19-CV-07748-CAS (PLAx), 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (approving rates of $895 to $1,295 for litigation partners and between $565 and $895 for litigation associates in Los Angeles); *Herring Networks v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *7 (S.D. Cal. Feb. 5, 2021) (awarding fees based on reasonable rates in San Diego ranging from $1,050 to $1,150 for partners, $470 to $720 for associates, and $265 to $280 for paralegals); *621 Two, LLC v. Leggett & Platt, Inc.*, No. CV 20-4883 PSG (Ex), 2021 WL 4860687, at *4 (C.D. Cal. Aug. 31, 2021) (noting median hourly rate for commercial litigators in Los Angeles was $572 to $1,026 for partners, $425 to $812 for associates, and $239 for paralegals).

As for the hours expended, Defendants "bear[] the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although Plaintiffs do not explicitly challenge the reasonableness of the hours Defendants expended, they do challenge several perceived problems with Defendants' records substantiating those hours, including the use of quarter-hourly increments, block billing, and vague or redacted time entries. (*See* RB at 12).

As for Plaintiffs' first complaint, the Ninth Circuit has concluded that the district court is in the best position to determine whether counsel's practice of billing by the quarter-hour has resulted in a request for compensation for hours not reasonably expended on the litigation. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). The Ninth Circuit will accord considerable deference to the trial court's finding. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000). In *Welch*, for example, the Ninth Circuit affirmed the district court's reduction of a fee request using quarter-hour billing where the time sheets were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." *See* 480

F.3d at 948–49. A review of Defendants' billing records does not reveal an abundance of such entries. (*See generally* Borders Decl. Ex. A.) Accordingly, the Court does not find Defendants' practice of quarter-hour billing problematic.

As for Plaintiffs' concerns regarding Defendants' block billing, district courts also have the authority to reduce hours that are billed in block format. *See, e.g., Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); *see also Hensley*, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing). In *Welch*, for example, the district court noted that "a report by the California State Bar's Committee on Mandatory Fee Arbitration . . . concluded that block billing 'may increase time by 10% to 30%.'" 480 F.3d at 948 (citing State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01 (2003)). When imposing a reduction for block billing, however, the district court should not impose a reduction to all entries across the board, *see id.*; rather, the court should "explain how or why . . . the reduction . . . fairly balance[s]" those hours that were actually billed in block format. *See Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001); *accord Welch*, 480 F.3d at 948 (concluding that district court erred in imposing 20% reduction to all requested hours where "barely more than half of all hours submitted by [the moving party]'s counsel [had been] block billed"). Here, Defendants explain that they seek only a fraction of the block-billed entries they submitted, requesting reimbursement only for time spent on particular tasks, such as "preparing opposition papers, including declarations and other supporting documents; conducting legal research and factual investigation; retaining a rebuttal expert witness and filing a rebuttal expert witness report." (*See* OB at 10–11; *see also* Reply at 4–5.) Because Defendants' reductions appear fair, the Court declines to further penalize them for using block billing.

Finally, Plaintiffs take issue with Defendants' use of redactions, but fees can still be awarded based on redacted billing records. *See, e.g.*, *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (finding redactions such as "Counsel call to discuss [REDACTED]" sufficient); *see also Jones v. Corbis Corp.*, 489 Fed. App'x 155, 157 (9th Cir. 2012). Indeed, all litigants are entitled to "considerable secrecy about what went on between client and counsel, and among counsel." *Reed*, 388 F.3d at 1286. "One often researches issues that may raise problems for one's claim, or problems affecting the relief one will obtain in district court after prevailing on the argument," and Defendants are entitled to keep this "work product" secret. *Id.* Particularly where, as here, Defendants are seeking to recover only for hours expended on certain specific tasks, namely, the preparation of two oppositions occurring in the midst of various of projects, including the completion of discovery, the redactions are not particularly surprising or problematic. Accordingly, Plaintiffs' argument that Defendants' "vague and sometimes redacted" time entries are not compensable is unavailing.

The Court therefore concludes that Defendants have carried their burden of documenting the hours reasonably expended on the two oppositions at issue.

### 3. Conclusion and Calculation

In sum, Defendants have carried their burden of demonstrating that they are seeking to recover for a reasonable number of hours at a reasonable rate for those portions of their oppositions to Plaintiffs' motion to amend and motion for class certification that will not be useful in any Refiled Action. The Court therefore **CONDITIONS** the voluntary dismissal of this action on Plaintiffs' and their counsel's payment of Defendants attorneys' fees as follows: $47,208.38 for Defendants' opposition to Plaintiffs' motion to amend and $188,032.29 (representing 70% of $268,617.55[4]) for Defendants' opposition to Plaintiffs' motion for class certification for a total of **$235,240.67**.

---

[4] Defendants confirmed at the hearing that they expended 352 hours total in opposing Plaintiffs' motion for class certification, as correctly calculated in the tables on pages 11 and 12 of their Opening Brief.

## II. Claim Preclusion

Defendants also request that Plaintiffs be barred from reasserting in their proposed new case any claims based on their prior theory that Halo Top pints are underfilled at the time of manufacture. (*See* OB at 12.) The Court agrees with Plaintiffs that this argument is foreclosed by the Ninth Circuit's explicit directive that the Court "dismiss th[is] action *without* prejudice." *Kamal*, 88 F.4th at 1287 (emphasis added). As the Ninth Circuit explained, "Defendants' argument that they will be prejudiced by the loss of a res judicata defense is merely another form of their unavailing argument that they will suffer legal prejudice because they may have to face future suit on these claims." *Id.* at 1285–86 (citing *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982); 8 Moore's Federal Practice – Civil § 41.40[5][c] (2023)). The Court therefore declines to condition the voluntary dismissal of this action on precluding Plaintiffs from reasserting claims in any Refiled Action based their prior underfill theory.

## III. Discovery Limitations

Courts have imposed terms on discovery as a condition of voluntary dismissal. *See Brown v. Baeke*, 413 F.3d 1121, 1124, 1126 (10th Cir. 2005) (affirming dismissal where "[s]everal conditions were imposed to avoid redundancy of effort should the case be refiled, including carryover of discovery"); *Nichols v. Chesapeake Operating, LLC*, No. CIV-16-1073-PRW, 2020 WL 354751, at *2 (W.D. Okla. Jan. 21, 2020) (dismissing on the condition that "all discovery accomplished in this case shall carry over to the new case"); *Mitchell-Jones v. Menzies Aviation, Inc.*, No. C10-1190JLR, 2011 WL 3273221, at *4 (W.D. Wash. July 28, 2011) (conditioning dismissal on plaintiffs' non-objection to use of old discovery in new litigation and plaintiffs' bearing of costs of discovery from original suit that could not be re-used in new litigation). Defendants request two such conditions here: First, Defendants seek for all discovery and discovery limitations to carry over into the new litigation and that additional discovery in Plaintiff's proposed new lawsuit be prohibited absent a showing of good cause. (*See* OB at 13.) Second, Defendants insist Plaintiffs remain bound by the terms of the Stipulated Protective Order entered in this

action at ECF No. 49 in any subsequent lawsuit. (*See* OB at 14.)  Plaintiffs do not oppose Defendants' requests as to Mr. Woolverton but do object with respect to Wells Enterprises and Ferrero Group. (*See* RB at 20)

Regarding the scope of discovery, the Parties engaged in extensive discovery in this action, with fact discovery closing on August 6, 2020, (*see* ECF No. 59), while Plaintiffs' motion to amend was pending.  Plaintiffs received over 192,000 pages of documents from Defendants, (*see* ECF No. 79-1 at 15; *see also* ECF No. 79-2 ¶ 3, ECF No. 79-5), and the Parties completed 22 depositions.  (Borders Decl. ¶¶ 10, 20.)  The Parties even engaged in discovery concerning Wells Enterprises' due diligence during its acquisition of Eden Creamery.  (*See* ECF No. 79-1 at 12.)  As Defendants note, "all discovery in support of the PSAC has been completed" and it is difficult to imagine what "any new party (Wells of the Ferrero Group) [could] . . . add to the record regarding the actions of Eden Creamery or as to the PSAC."  (*See* Reply at 9–10.)  Clearly the extensive discovery the Parties engaged in previously is relevant to any Refiled Action—if it were not, Defendants would be seeking to recover the substantial funds they surely expended in producing it.  *See supra* Section I.B.1.  Although the Court declines to impose a wholesale restriction on further discovery given that Plaintiffs (or Defendants) could identify new areas of inquiry depending on the ultimate incarnation of the complaint in any Refiled Action, Plaintiffs certainly are not entitled to a wide-scale re-opening of discovery.  Given the Court's directive that any Refiled Action be filed in this Court, however, *see infra* Section IV, the Court believes that this is appropriately addressed by Judge Berg if and when necessary.  The Court therefore declines to condition the voluntary dismissal of this action on any specific discovery limitations in any Refiled Action.

As for the Protective Order, the Court has already concluded that Eden Creamery continues to exist for purposes of this litigation and that its interests have succeeded to Wells Enterprises (and Ferrero Group).  *See supra* Section I.A.  As Plaintiffs themselves acknowledge, (*see* RB at 21–22 (quoting ECF No. 49 ¶ 22)), the Protective Order survives the dismissal of this case and continues to govern certain documents and information

produced pursuant to its terms. (*See* ECF No. 49 ¶ 22). The Parties therefore remain bound by the Protective Order entered in this action pending resolution of any Refiled Action.

## IV. Venue Restriction

Finally, Defendants request that any Refiled Action must be filed in this District with the same judicial assignments "to minimize any redundancies, discourage inefficiencies, and avoid the appearance of forum-shopping."[5] (OB at 14.) In similar situations, courts have conditioned dismissal without prejudice on precisely these grounds. *See Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1328-29 (11th Cir. 2004) (affirming dismissal with condition that new action be filed in same venue); *Nichols*, 2020 WL 354751, at *2 ("In the event counsel for Plaintiff or Plaintiff files any suit seeking to certify substantially the same class against [Defendants], such suit shall be filed in [this court] and assigned to [the same judge]"). Defendants are correct that allowing Plaintiffs to refile in the forum of their choice may result in redundancies, inefficiencies, and the appearance of forum-shopping. (*See* OB at 14.)

Plaintiffs' argument that venue may be improper in this District in the event that Ms. Neely decides not to pursue her claims is not persuasive. (*See* RB at 22–23.) Plaintiffs previously and repeatedly represented to this Court their intention to refile this case in this District.[6] (*See, e.g.*, ECF No. 126 at 3:3–21 ("It is plaintiffs' intention to file [this case]

---

[5] As Defendants note, (*see* OB at 14 n.6), "a saving of judicial effort and other economies" is the rationale underlying this District's Civil Local Rules' related case provisions governing cases "involv[ing] the same or substantially the same parties or property," "call[ing] for determination of the same or substantially identical questions of law," or otherwise "involv[ing] substantial duplication of labor if heard by different judges." S.D. Cal. CivLR 40.1(e)–(g).

[6] Indeed, the Court is deeply troubled that Plaintiffs' counsel made unequivocal representations that he would refile in this District until he realized that Defendants might be awarded their attorneys' fees and costs as a condition of remand. As Plaintiffs' counsel freely admitted at oral argument on August 8, 2024, after discussing this turn of events with his clients, they no longer wished to litigate in this District. As defense counsel noted, this is the very definition of forum shopping. The Court cannot countenance such gamesmanship. *See, e.g., LegalForce, Inc. v. Legalzoom.com, Inc.*, No. 218CV06147ODWGJS, 2018 WL 6179319, at *4 (C.D. Cal. Nov. 27, 2018) ("[Plaintiff]'s attempt to find a new court for claims previously rejected by the Northern District Action is not well taken by this Court."); *see also, e.g.*,

here. . . . [T]his case would be refiled here. That is plaintiffs' intention."), 14:7–9 ("[T]he case is going to be refiled here, and we're going to have the same magistrate and judge[.]").) "A litigation position such as this conveyed to a court becomes binding." *Am. C.L. Union of Nev. v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001); *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)). Moreover, and more importantly, "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) (emphasis in original). Improper venue can be waived, *see* Fed. R. Civ. P. 12(h), and parties may agree to litigate in a specified forum. *See, e.g., Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). Accordingly, so long as Defendants are amenable to litigation in this District, it is of no consequence that venue may be "improper" in any Refiled Action under 28 U.S.C. § 1406(a). In the interests of judicial economy and equity, the Court therefore **CONDITIONS** Plaintiffs' voluntary dismissal on the refiling of any Related Action in this District.

## CONCLUSION

For the foregoing reasons, the Court **CONDITIONALLY GRANTS** Plaintiffs' Motion for Voluntary Dismissal of this action (ECF No. 116) on the following: (1) Plaintiffs and their counsel **SHALL PAY** Defendants their attorneys' fees in the

/ / /

/ / /

/ / /

/ / /

---

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) (noting "the evils of forum shopping").

amount of **$235,240.67** within <u>ninety (90) days</u> of the electronic docketing of this Order; and (2) any Refiled Action **SHALL BE FILED** in this District.

   **IT IS SO ORDERED.**

Dated:  August 16, 2024

               _____
                Honorable Todd W. Robinson
                United States District Judge